# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | x | |
| *In re* | : | Chapter 11 |
| | : | |
| WASHINGTON MUTUAL, INC., et al.[1] | : | Case No. 08-12229 (MFW) |
| | : | |
| Debtors. | : | Jointly Administered |
| | x | |
| | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : | No. 1:09-cv-0616-GMS |
| | : | |
| Appellant, | : | Adv. Proc. No. 09-50934 |
| | : | |
| v. | : | |
| | : | |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : | |
| | : | |
| Appellees. | : | |
| | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : | No. 1:09-cv-0617-GMS |
| | : | |
| Appellant, | : | Adv. Proc. No. 09-50551 |
| | : | |
| v. | : | |
| | : | |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : | |
| | : | |
| Appellees. | : | |
| | : | |

**(caption continued on next page)**

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

```
------------------------------------
JPMORGAN CHASE BANK, NATIONAL    :
ASSOCIATION                      :    No. 1:09-cv-0618-GMS
                    Appellant,    :
                                 :    Adv. Proc. No. 09-50934
          v.                     :
                                 :
WASHINGTON MUTUAL, INC. AND      :
WMI INVESTMENT CORP.,            :
                                 :
                    Appellees.    :
                                 :
                                 :
------------------------------------
JPMORGAN CHASE BANK, NATIONAL    :
ASSOCIATION                      :    No. 1:09-cv-0615-GMS
                    Appellant,    :
                                 :    Adv. Proc. No. 09-50551
          v.                     :
                                 :
WASHINGTON MUTUAL, INC. AND      :
WMI INVESTMENT CORP.,            :
                                 :
                    Appellees.    :
                                 :
                                 :
------------------------------------
```

## DEBTORS' OPPOSITION TO REQUEST OF THE FEDERAL DEPOSIT INSURANCE CORPORATION AND JPMORGAN CHASE, NATIONAL ASSOCIATION FOR DIRECT APPEAL TO THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
ELLIOTT GREENLEAF
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone:  (302) 384-9400
Facsimile:  (302) 384-9399

(Additional Counsel Listed on Signature Page)

*Special Litigation and Conflicts Counsel to*
*Washington Mutual, Inc. and WMI Investment Corp*

September 11, 2009

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

NATURE OF PROCEEDINGS .....................................................................................1

SUMMARY OF ARGUMENT......................................................................................1

BACKGROUND ...........................................................................................................3

    A.    The DC Action...............................................................................................3

    B.    The Bankruptcy Proceedings........................................................................4

        1.    The JPMC Adversary Proceeding .................................................4

        2.    The Turnover Action ......................................................................5

    C.    The Bankruptcy Court's Ruling Denying Motions by the FDIC and JPMC to Stay the Adversary Proceedings .........................................5

ARGUMENT..................................................................................................................7

I.    THE REQUEST IS NOT PROPER UNTIL LEAVE TO APPEAL HAS BEEN GRANTED BY THIS COURT ...................................................................8

II.    THE THIRD CIRCUIT HAS RULED ON THE ISSUE OF LAW RAISED IN THE APPEAL – ONE THAT DOES NOT CONCERN A MATTER OF PUBLIC IMPORTANCE .......................................................................................9

    A.    There Exist Controlling Decisions of the Third Circuit Court of Appeals on the Pertinent Question of Law .....................................................9

    B.    The Issue on Appeal is Not One of Public Importance .........................17

III.    THERE ARE NO CONFLICTING DECISIONS WITHIN THE THIRD CIRCUIT ...................................................................................................20

IV.    CERTIFICATION WILL DO NOTHING TO MATERIALLY ADVANCE THE ADVERSARY PROCEEDINGS OR THE DEBTORS' BANKRUPTCY CASES .........20

CONCLUSION ..............................................................................................................22

**Cases**

*In re Am. Home Mortg. Inv. Corp.*,
408 B.R. 42 (D. Del. 2009) ........................................................................ 14

*Auction Co. of Am. v. FDIC*,
141 F.3d 1198 (D.C. Cir. 1998) (section 1821(d)(6) ............................ 18

*In re CPDC Inc.*,
221 F.3d 693 (5th Cir. 2000) ................................................................... 21

*Cf. In re Prosser*,
2008 U.S. Dist. LEXIS 98786 (D.V.I. Dec. 5, 2008) ........................... 12

*Cf. O'Melveny & Myers v. FDIC*,
512 U.S. 79 (1994) .................................................................................... 20

*FDIC Opp'n to Pet. for Writ of Cert. in Henrichs v. Valley View Dev.*,
474 F.3d 609 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 647 (2007) .................. 14, 15

*FDIC v. Shain, Schaffer & Rafanello*,
944 F.2d 129 (3d Cir. 1991) .................................................................... 13

*In re First Republicbank Corp.*,
1990 Bankr. LEXIS 2840 (Bankr. N.D. Tex. June 19, 1990) ............... 20

*In re GMC*,
2009 Bankr. LEXIS 1800 (Bankr. S.D.N.Y. July 7, 2009) .......... 16, 17, 20, 21

*In re Goody's Family Clothing, Inc.*,
2009 U.S. Dist. LEXIS 67011 (D. Del. July 30, 2009) ........................... 9

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) .................................................................................... 12

*In re Harris*,
464 F.3d 263 (2d Cir. 2006) .................................................................... 21

*Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.*,
43 F.3d 843 (3d Cir. 1994) ............................................................... passim

*JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.*,
Adv. Proc. No. 09-50551 (MFW) .............................................................. 4

*Lebos v. Schuette*,
2008 U.S. Dist. LEXIS 76432 (E.D. Cal. Sept. 30, 2008) ..................... 21

*National Union Fire Insurance Co. v. City Savings F.S.B.*,
28 F.3d 376 (3d Cir. 1994) ...................................................................... 15

*Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*,
   947 F.2d 49 (3d Cir. 1991) ................................................................ 13

*In re RNI Wind Down Corp.*,
   369 B.R. 174 (Bankr. D. Del. 2007) .................................................. 12

*Rosa v. RTC*,
   938 F.2d 383 (3d Cir. 1991) .......................................................... passim

*Simon & Schuster, Inc. v. Advanced Mktg. Servs.*,
   360 B.R. 429 (Bankr. D. Del. 2007) .................................................... 8

*Trinsey v. K. Hovnanian at Upper Merion, Inc.*,
   841 F. Supp. 694 (E.D.Pa. 1994) ...................................................... 13

*Vill. of Oakwood v. State Bank & Trust Co.*,
   519 F. Supp. 2d 730 (N.D. Ohio 2007) .............................................. 16

*Village of Oakwood v. State Bank & Trust Co.*,
   539 F.3d 373 (6th Cir. 2008) ............................................................ 16

*WMI and WMI Investment v. FDIC*,
   No. 09-00533 (D.D.C) ........................................................................ 4

*Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.*,
   Adv. Proc. No. 09-50934 (MFW) ........................................................ 5

*Weber v. United States*,
   484 F.3d 154 (2d Cir. 2007) .............................................................. 14

## Statutes

12 U.S.C. § 1821(j) ................................................................................ 13

28 U.S.C. § 158(a)(1) .............................................................................. 8

28 U.S.C. § 158(a)(3) .............................................................................. 8

28 U.S.C. § 158(d)(2) ...................................................................... 1, 3, 7

28 U.S.C. § 158(d)(2)(A)(i)-(iii) .......................................................... 7, 8

12 U.S.C. § 1821(d)(13)(D) ............................................................. passim

H.R. Rep. No. 107-3 ................................................................................ 3

H.R. Rep. No. 109-31, at 148 (2005) ...................................................... 3

## Rules

Fed. R. Bankr. P. 8001 ............................................................................ 8

## NATURE OF PROCEEDINGS

Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (together with WMI, the "Debtors") submit this response in opposition to the Request of the Federal Deposit Insurance Corporation (the "FDIC"), as Receiver, for Certification for Direct Appeal to the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2) ( the "Request") and to the similar request of JPMorgan Chase Bank, N.A. ("JPMC") which incorporates the Request by reference (the "JPMC Request").[2] Both requests should be denied in view of the fact that the rulings of the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") were dictated by controlling precedent issued by the Court of Appeals for the Third Circuit (the "Third Circuit").

## SUMMARY OF ARGUMENT

1.     In issuing its ruling that the jurisdictional bar provided for in section 11(d)(13)(D) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(13)(D), is inapplicable to claims concerning "property that is no longer in the hands of the FDIC as receiver, but [is] in the hands of JPMC", the Bankruptcy Court recognized that the outcome was "clear from the Third Circuit law, which is binding on [the Bankruptcy] Court." (Tr. 6/24/09 at 93.) Notwithstanding the Bankruptcy Court's express acknowledgement of well-regarded, oft-cited Third Circuit decisions squarely on point with the adversary proceedings below,[3] the FDIC, incredibly, asserts that the Third Circuit has not addressed the question of law at issue in its appeal. To justify its position, the FDIC, straining to manufacture

---

[2]     Subject to the Court's approval, the parties have agreed that consolidation of the FDIC's and JPMC's appeals best serves the interests of economy and efficiency. Because JPMC's Request incorporates the FDIC's Request and otherwise asserts the same argument, Debtors have opposed both Requests with this consolidated opposition which is filed in each of the appeals.

[3]     *See Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991); *Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.*, 43 F.3d 843 (3d Cir. 1994).

1

a limitation upon *Rosa's* holding, splices the statute (in a fashion it has not presented thus far in several briefs before the Bankruptcy Court and in its motion for leave to appeal filed before this Court) and parses immaterial facts underlying the controlling Third Circuit decision, arguing that one of the statute's subdivisions was not tested in *Rosa*. These arguments are meritless. The Third Circuit was clear in *Rosa* that assets acquired by a third party purchaser from the FDIC are not "assets of any depository institution for which [the FDIC] has been appointed receiver." Contrary to the FDIC's argument, under *Rosa*, it does not matter whether the claims at issue seek "payment from" such assets, or "seek a determination of rights" with respect to such assets. The FDIC understands this as evinced by its submission in 2007 to the Supreme Court that the jurisdictional bar "applies only in an action against the FDIC." The Third Circuit's decisions in *Rosa,* and thereafter in *Hudson*, are controlling and clear that such claims are not barred by FIRREA.

2.     The FDIC also asserts that its appeal concerns a matter of "public importance," threatening the exclusive nature of FIRREA's administrative claims process. However, where the Third Circuit has already ruled squarely on the relevant issue of law, presenting it to the court again, by definition, cannot meet the "public importance" hurdle and will not advance the development of sound jurisprudence. Moreover, it is well-settled that FIRREA's claims process relates only to claims asserted against the failed institution or against the FDIC. Therefore, the Bankruptcy Court's ruling, concerning claims asserted against JPMC, steers clear of FIRREA's administrative claims process and cannot give rise to a matter of public importance.

3.     The FDIC's statement that the Bankruptcy Court's ruling could "chill" bidding for failed bank assets is a red herring. The sale of Washington Mutual Bank ("WMB") assets in these cases is the best evidence of this. The existence of controlling Third Circuit law that pre-

dated the FDIC's sale of WMB's assets to JPMC and the inclusion of an indemnity provision in the purchase and assumption agreement indicate that JPMC was aware of its exposure. Yet JPMC proceeded with the transaction, unchilled. It knew what it was doing – JPMC has realized a $1.9 billion after-tax extraordinary gain from "merger-related items" in connection with its purchase of the Washington Mutual Bank and has achieved "record firmwide revenue" in 2009.[4] Similarly, the FDIC's statements that resolution of its appeal by the Third Circuit will materially advance the conclusion of the underlying adversary proceedings is unfounded. Whether the appeal is heard by this Court or by the Third Circuit will have no bearing on the underlying proceedings.

4. In providing for a mechanism to certify appeals directly to the Circuit level, Congress sought to increase what has been considered a shortage of bankruptcy decisions that carry *stare decisis* value. *See* H.R. Rep. No. 109-31, at 148 (2005); H.R. Rep. No. 107-3, Prt. 1, at 112 (2001). Here, where the orders being appealed from were dictated by extant, controlling Third Circuit precedent, certification would be a misapplication of 28 U.S.C. § 158(d)(2) and would not serve the interests of the parties or the judicial system. The Request should be denied.

## BACKGROUND

### A. The DC Action

On September 25, 2008, the Director of the Office of Thrift Supervision (the "OTS") placed WMB into receivership and appointed the FDIC as receiver. On the same day, the FDIC sold substantially all of WMB's assets, including the stock of its subsidiary, Washington Mutual Bank fsb ("WMB fsb"), to JPMC for $1.88 billion (the "P&A Transaction"), pursuant to the

---

[4]     JPMorgan Chase & Co., Form 10-K for the fiscal year ended December 31, 2008, at 26; JPMC Press Release, *JPMorgan Chase Reports First-Quarter 2009 Net Income of $2.1 Billion, or $0.40 per Share,* April 16, 2009.

Purchase and Assumption Agreement Whole Bank, dated September 25, 2008 (the "P&A Agreement"). As required by section 11(d) of FIRREA, 12 U.S.C. § 1821(d), the FDIC set December 30, 2008, as the last day to file claims against WMB. Debtors timely filed proofs of claim.

There has been relatively little activity in the DC Action, *WMI and WMI Investment v. FDIC*, No. 09-00533 (D.D.C). On June 11, 2009, the FDIC filed an Answer and Counterclaims, along with a partial motion to dismiss, and, on July 13, 2009, it filed an amended Answer and Counterclaims. The Debtors have moved to dismiss or stay the FDIC's counterclaims. Both motions to dismiss are pending.

## B.    The Bankruptcy Proceedings

On September 26, 2008, Debtors each commenced a voluntary case pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On March 30, 2009, the FDIC and JPMC each filed proofs of claim in the bankruptcy proceedings. There are two adversary proceedings now pending.

### 1.    The JPMC Adversary Proceeding

On March 24, 2009, JPMC filed an action against Debtors, with the FDIC named as an interpleader defendant in a single count, asserting claims to assorted assets that JPMC allegedly purchased pursuant to the P&A Agreement. *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.*, Adv. Proc. No. 09-50551 (MFW) (the "JPMC Adversary Proceeding"). On May 22, 2009, Debtors filed an Answer and Counterclaims asserting, among other things, affirmative claims under the Bankruptcy Code's avoidance powers and under state law for monetary relief through the avoidance of potentially more than $10 billion in Debtors' assets fraudulently or preferentially transferred to JPMC prior to the commencement of the Debtors' chapter 11 cases.

JPMC responded with a motion to dismiss, which was denied by the Bankruptcy Court on August 24, 2009. JPMC has until September 14, 2009 to answer the Debtors' counterclaims.

### 2. The Turnover Action

On April 27, 2009, Debtors filed an action against JPMC, pursuant to section 542 of the Bankruptcy Code, in which Debtors seek to recover approximately $4 billion in deposits belonging to Debtors (the "Deposits"), which JPMC assumed as successor to WMB and WMB fsb. *Washington Mutual, Inc. et al.* v. *JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW) (the "Turnover Action," and with the JPMC Adversary Proceeding, the "Adversary Proceedings"). JPMC's Motion to Dismiss the Turnover Action was denied at a hearing on June 24, 2009 (the "June 24 Hearing"). The Bankruptcy Court found that the Debtors' complaint and accompanying exhibits describe a mature debt owed by JPMC to the Debtors, without any indication of a genuine dispute as to "the title to the . . . deposit accounts." (Tr. 6/24/09 at 117.) Now pending before the Bankruptcy Court is the Debtors' motion for summary judgment, which is supported by an extensive evidentiary submission establishing that the Deposits belong to Debtors and that they are entitled to the prompt return of their funds.

### C. The Bankruptcy Court's Ruling Denying Motions by the FDIC and JPMC to Stay the Adversary Proceedings

On June 1, 2009, the FDIC and JPMC each filed motions with the Bankruptcy Court claiming that it lacks jurisdiction to resolve the Adversary Proceedings (the "Stay Motions"). In the Stay Motions, the FDIC and JPMC argued that Debtors' claims and counterclaims against JPMC, which seek payment from and/or concern assets that are not in receivership, are barred by

FIRREA, 12 U.S.C. § 1821(d)(13)(D).[5] The Debtors and the official committee of unsecured creditors (the "UCC") opposed the Stay Motions.

JPMC and the FDIC argued before the Bankruptcy Court that the Debtors' claims are directed to "the assets of WMB," and are therefore barred as claims to the assets of a "depository institution for which [the FDIC] has been appointed receiver." (*See, e.g.*, FDIC Brief at 18.) At the same time, however, both the FDIC and JPMC acknowledged that the assets at issue in the Adversary Proceedings *are no longer part of the WMB receivership* but were sold to JPMC pursuant to the P&A Agreement. (JPMC Brief at 10; FDIC Brief at 5-6.) The Debtors opposed the Stay Motions on the straightforward ground that Debtors' claims are against JPMC, and not against the receiver, WMB, or assets in any receivership.

After extensive briefing and argument, including by the FDIC, JPMC, Debtors, and the UCC, the Bankruptcy Court denied the Stay Motions at the June 24 Hearing.[6] Relying on the Third Circuit's decisions in *Rosa* and *Hudson*, the Bankruptcy Court held that FIRREA's jurisdictional bar does not apply "to Debtors' claims to property that is no longer in the hands of

---

[5]  According to its express terms, section 1821(d)(13)(D) provides as follows:

Except as otherwise provided in this subsection, no court shall have jurisdiction over – (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to an act or omission of such institution or the Corporation as receiver.

[6]  The Court also granted the FDIC's motion to intervene in the Turnover Action, "for the sole purpose of prosecuting the action for a stay." (Tr. 6/24/09 at 34-35.) In its subsequent written order denying the Stay Motion in the Turnover Action, the Court specified that its ruling had "disposed of all matters for which the intervention of the [FDIC] was granted," and that "no further pleading or response shall be required of the [FDIC] in this Adversary Proceeding." (Order Denying Motions to Stay, Docket No. 62.)

the FDIC as receiver, but [is] in the hands of JPMC." (Tr. 6/24/09 at 93.) The Bankruptcy Court also rejected arguments by the FDIC and JPMC invoking the "first filed rule" as an alternative basis to defer to the DC Action, observing that the DC Action and the Adversary Proceedings involve different parties and different claims. (Tr. 6/24/09 at 94-95.)

On July 10, 2009, the FDIC and JPMC filed motions for leave to appeal (transmitted to this Court), in which they continue to argue that FIRREA bars the Debtors' claims against JPMC, despite the fact that those claims are not asserted against the FDIC and do not involve assets in receivership ("Motions for Leave"). As set forth in the Debtors' response to the Motions for Leave, the Bankruptcy Court's denials of the Stay Motions are not "final" appealable orders, and this is not that rare situation in which interlocutory appeal is warranted. The Bankruptcy Court's decision to deny the Stay Motions was dictated by clear and settled Third Circuit precedent, as well as by the language and statutory structure of FIRREA.

## ARGUMENT

The FDIC filed its Request pursuant to 28 U.S.C. § 158(d)(2) which provides jurisdiction to the Third Circuit upon certification by the bankruptcy or district court before which the appeal is pending. Certification is required only if the court determines that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A)(i)-(iii). The FDIC argues that the first and third prong are met here.

## I. THE REQUEST IS NOT PROPER UNTIL LEAVE TO APPEAL HAS BEEN GRANTED BY THIS COURT

Bankruptcy Rule 8001(f)(2) provides that "a certification that a circumstance specified in 28 U.S.C. § 158(d)(2)(A)(i)-(iii) exists shall be filed in a court in which the matter is pending." Fed. R. Bankr. P. 8001. In an appeal from an interlocutory order, Bankruptcy Rule 8001(f)(2) provides that the matter is pending (1) in the bankruptcy court until leave to appeal under 28 U.S.C. § 158(a)(3) is actually granted and (2) in the district court upon the granting of leave to appeal. *Id.* Bankruptcy Rule 8001(f)(2)(A)(i)-(ii) further provides, in an appeal from an interlocutory order, only the bankruptcy court may make a certification until grant of leave to appeal and only the district court may make a certification upon grant of leave to appeal. *Id.*

Although the FDIC has asserted that it is appealing pursuant to 28 U.S.C. § 158(a)(1), under the rare and narrow exception to the general rule against piecemeal litigation that is the collateral order doctrine, the Debtors have contested this diversion, and the FDIC has also moved for leave to appeal pursuant to 28 U.S.C. § 158(a)(3). Thus, as a threshold matter, it is not clear that the FDIC has filed the Request before the appropriate court, and, in any event, resolution of the Request should await this Court's ruling on the FDIC's Motion for Leave. *See Simon & Schuster, Inc. v. Advanced Mktg. Servs.*, 360 B.R. 429, 432-35 (Bankr. D. Del. 2007) (finding that the bankruptcy court was the court for which the certification request was properly before given that leave was not yet granted by the district court, and determining that the "most sensible use of judicial resources and the course of action most consistent with the hierarchy governing our Federal court system" was to allow the district court to first rule upon appellants' motion for leave before addressing certification). Therefore, the Request should be denied, or stayed, until the Court rules upon the FDIC's Motion for Leave.

II.   **THE THIRD CIRCUIT HAS RULED ON THE ISSUE OF LAW RAISED IN THE APPEAL – ONE THAT DOES NOT CONCERN A MATTER OF PUBLIC IMPORTANCE**

A.   **There Exist Controlling Decisions of the Third Circuit Court of Appeals on the Pertinent Question of Law**

Incredibly, the FDIC argues that the Third Circuit has not "applied [FIRREA's] jurisdictional bar in a case such as this one in which claims that plainly violate the statute are asserted in litigation against the assuming bank under a purchase and assumption agreement." (Request at 10.) In arriving at this contrived conclusion, the FDIC strains to distinguish the claims asserted here and those asserted by plaintiffs in the Third Circuit's decision, *Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991), *cert. denied*, 502 U.S. 981 (1991), which undeniably concerned "the pendency of litigation against an assuming bank." (Request at 10.) *See In re Goody's Family Clothing, Inc.*, 2009 U.S. Dist. LEXIS 67011, at *5 (D. Del. July 30, 2009) ("The Court need not conclude that this case presents a question of first impression merely because [Appellants] have innovated a novel argument"). Moreover, the FDIC's repeated assertion that the jurisdictional bar must be applied by courts "literally" gets it nowhere given that the Third Circuit in *Rosa* and the Bankruptcy Court did just that. *See Hudson.*, 43 F.3d at 847 n.10 ("in *Rosa* we construed § 1821(d)(13)(D) of FIRREA literally").

In *Rosa*, the Third Circuit held that section 1821(d)(13)(D) did not bar an action against a successor bank that had purchased a failed depository institution's assets, and assumed certain liabilities, out of receivership pursuant to a purchase and assumption agreement similar to the P&A Agreement in the case at bar. *Rosa*, 938 F.2d at 394. Plaintiffs in *Rosa* were participants in the pension plan, and therefore, creditors, of a failed bank, City Federal Savings Bank ("City Federal"). *Id.* at 388. After the OTS placed City Federal into receivership, certain of its assets and liabilities were transferred to City Savings Bank, F.S.B. ("City Savings Bank"), pursuant to a

purchase and assumption agreement between the RTC as receiver for City Federal, and City Savings Bank. *Id.* Subsequently, City Savings Bank too was closed, with the RTC being appointed receiver, and certain of its assets and liabilities were transferred to a new, third bank, City Savings F.S.B. ("City Savings"), pursuant to a second purchase and assumption agreement between the RTC, as receiver for City Savings Bank, and City Savings. *Id.* at 390.

The RTC, as the FDIC does here, argued that the district court did not have jurisdiction over plaintiffs' claims based upon FIRREA's jurisdictional bar provided for in section 1821(d)(13)(D). *Id.* at 391. Significantly, the Third Circuit found that plaintiffs' claims seeking monetary relief, based on the failure of the various banks to make contributions to the pension plan, were subject to FIRREA's jurisdictional bar as asserted against *only* City Federal and City Savings Bank, because those entities were "depository institutions for which the RTC had been appointed receiver," – but *not* as to City Savings, because City Savings, like JPMC here, was not a depository institution for which the RTC had been appointed receiver. *Id.* at 394.[7]

Thus, in *Rosa*, the Third Circuit already determined that FIRREA's jurisdictional bar does not apply to claims asserted against a successor bank (such as JPMC) that is not in receivership. *Id.* at 392-93 ("The language of the bar simply states that it applies when there is an institution for with RTC 'has been' appointed receiver. Thus the issue under the bar is whether, at the time the case came before the district court, RTC had been appointed receiver of the institutions . . . . At the time the complaint was filed, [the successor bank] was in conservatorship, not receivership. Thus, [the successor bank] was not then a depository institution for which the Corporation has been appointed receiver.") (internal quotation omitted). In finding that claims

---

[7] The Third Circuit also found that claims seeking nonmonetary relief against all three banks were not barred by section 1821(d)(13)(D).

against City Savings were outside the reach of the jurisdictional bar, the Third Circuit addressed

*each and every* prong of section 1821(d)(13)(D):

> We do not believe [claims against the successor bank] fall under
> [§ 1821(d)(13)(D)(i)] because they seek neither payment from nor a determination
> of rights with respect to the assets of a depository institution for which RTC has
> been appointed receiver . . . . Nor does [§ 1821(d)(13)(D)(ii)] bar these claims.
> This is so because we construe the 'relating' language of that clause to refer to
> claims against the very institution whose acts are challenged, which must be an
> institution for which RTC has been appointed receiver.[8]

Thus, when it denied the Stay Motions, the Bankruptcy Court was faithfully adhering to the

Third Circuit's controlling holding in *Rosa* that FIRREA's jurisdictional bar simply does not

reach claims seeking payment from or a determination of rights with respect to the assets of a

depository institution for which the FDIC has not been appointed receiver.

In a rather transparent attempt to impose artificial limitations upon the Third Circuit's

holding in *Rosa,* the FDIC splices the jurisdictional bar into three rather than two prongs and

argues that the claims asserted in *Rosa* did not test certain of the jurisdictional bar's prongs as

certain of the Debtors' claims supposedly do. (Request at 11.) After altering the statute's

structure, the FDIC asserts that "no part of *Rosa* could be characterized as an action seeking a

determination of rights with respect to the assets of any depository institution for which the

Corporation has been appointed receiver", (Request at 13), and that here, the Debtors "manifestly

seek a determination of rights with respect to a variety of assets of WMB." (Request at 14.) The

FDIC is presumably referencing countervailing claims asserted between JPMC and the Debtors

concerning title to certain disputed assets. However, the FDIC's misdirection fails to escape the

confines of *Rosa's* holding.

---

[8]     *Id.* at 394. Attached as Exhibit A is a copy of the Third Circuit's *Rosa* decision with pertinent
portions highlighted for the Court's convenience.

First, the FDIC cannot even purport to apply this baseless distinction to the majority of the Debtors' claims which are very much akin to the *Rosa* plaintiffs' claims. The Debtors claims include various preference and fraudulent transfer actions, which, if successful, will require payment from JPMC. Similarly, the Debtors' Turnover Action seeks to compel JPMC to pay debts rightfully owed the Debtors, just as the *Rosa* plaintiffs sought to have payment made on pension liabilities. There is no meaningful difference between the Debtors' claims and the plaintiffs' claims in *Rosa*. *Cf. In re Prosser*, 2008 U.S. Dist. LEXIS 98786, *4, 14-15 (D.V.I. Dec. 5, 2008) (finding plaintiffs could not escape holding in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) by asserting "immaterial" distinction concerning remedies sought where the claims in both instances "ultimately seek monetary damages"); *In re RNI Wind Down Corp.*, 369 B.R. 174, 182 (Bankr. D. Del. 2007) ("The distinction is irrelevant for present purposes, however, because, regardless of whether the claim is for advancement or indemnification, the claimant is seeking reimbursement."). In language that applies with equal force here, *Rosa* found that claims seeking payment from City Savings' assets (*i.e.*, former assets of City Federal and City Saving Bank) did not "seek [] payment from . . . the assets of a depository institution for which the RTC has been appointed receiver." *Id.* at 394. With respect to the majority of the Debtors' claims, the FDIC cannot, and does not, argue that *Rosa* is not controlling.

Second, even assuming, *arguendo*, that the *Rosa* court did not face claims such as the Debtors' that purportedly seek "a determination of rights with respect to the assets of a depository institution," the distinction is immaterial to *Rosa's* applicability. There still is no doubt that the Third Circuit's holding – concerning, at its core, claims against successor banks not in receivership – remains controlling. It is indisputable that, in *Rosa*, City Savings – a newly formed entity established by the RTC – purchased the assets of its predecessor-in-interest banks

that had been placed in receivership. *Id.* at 388, 390. And it is clear that the Third Circuit considered the monetary claims seeking payment from City Savings' assets (*i.e.*, former assets of City Federal and City Saving Bank) to "seek neither payment from nor a determination of rights with respect to the assets of a depository institution for which the RTC has been appointed receiver." *Id.* at 394. Therefore, it cannot be seriously questioned that, under *Rosa*, claims asserting title to (rather than payment from) assets of a successor bank not in receivership do not seek "a determination of rights with respect to the assets of a depository institution" and are not barred. This is so even if the successor bank claimed to have taken title of such assets pursuant to a purchase and assumption transaction with the FDIC (as was the case in *Rosa*). Ultimately, the FDIC's attempts to evade *Rosa* are nonsensical.[9]

In the same vein, the FDIC argues that *Rosa* was not tested with a claim that would have triggered the "acts or omissions" prong of the jurisdictional bar as the Adversary Proceedings do here. (Request at 8.) However, in *Rosa*, there were *two* purchase and assumption transactions to which the RTC was party, *id.* at 388, 390, and the RTC assumed the pension plan at least once.

---

[9]   The FDIC cites three cases, *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994), *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49 (3d Cir. 1991), and *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir. 1991) for the proposition that "the Third Circuit recognizes" that claims against a successor bank for assets that a plaintiff asserts ownership rights to would have to be made "through the exclusive receivership claims process." (Request at 13.) Unsurprisingly, none of these cases, each of which cite *Rosa* approvingly, support the FDIC's assertion. In each instance, the language cited by the FDIC simply refers to the exclusive nature of FIRREA's administrative claims procedure with respect to claims asserted against the failed depository institution or against the receiver itself.

The FDIC's citation to *Trinsey v. K. Hovnanian at Upper Merion, Inc.*, 841 F. Supp. 694 (E.D.Pa. 1994) is also misleading. There, the plaintiff sought equitable relief against the RTC. *Id.* at 695. In addition to this critical distinction, the court relied primarily on the FIRREA's anti-injunctive provision, concerning efforts to "restrain or exercise the powers or functions" of the RTC, *see* 12 U.S.C. § 1821(j), which is not the issue here. In any event, the case does not alter the controlling nature of the Third Circuit's decision in *Rosa*, and predates the Third Circuit's decision in *Hudson*.

*Id.* at 389. Yet, the Third Circuit declined to hold that claims against a successor bank related to the pension plan and arising out of two purchase and assumption transactions were captured by the "acts or omissions" prong of the bar. *Id.* at 394. At bottom, the FDIC is plainly incorrect to assert that *Rosa*'s holding was limited in a fashion such that it is not controlling over the cases at bar, and its reconfiguration of the statute's form cannot change that.[10]

Moreover, even if one were to give credence to the FDIC's efforts to distinguish the claims asserted by the Debtors from those asserted in *Rosa*, the purported distinctions are heavily dependent on the particular facts of the cases which do not warrant direct certification. *See Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007) ("Congress believed direct appeal would be most appropriate where we are called upon to resolve a question of law not heavily dependent on the particular facts of a case"); *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (finding "mixed questions that implicate the particular circumstances of this case" do not warrant direct certification).

Perhaps most tellingly, the FDIC's strained factual parsing of *Rosa* belies its prior assessment regarding the applicability of FIRREA's jurisdictional bar. In fact, the FDIC itself previously analyzed FIRREA exactly as the Third Circuit did in *Rosa*. The FDIC explained that position in a brief opposing *certiorari* in the Ninth Circuit decision in *Henrichs v. Valley View Dev.*:

---

[10] The FDIC concedes that, "[i]n *Rosa*, the third bank was not in receivership so [the 'acts and omissions' prong] did not apply." (Request at 15, n.8.) This is true. *Rosa* found that the claims asserted against the successor bank – not in receivership – did not relate to acts or omissions of the second bank or the RTC. *Rosa*, 938 F.2d at 394. This conclusion obtained notwithstanding that the claims related to a pension plan that was assumed by the RTC at least once and was the subject of two purchase and assumption transactions to which the RTC was party. *Id.* at 388-90. In other words, *Rosa* holds that the Debtors' claims against JPMC do not relate to acts or omissions of the FDIC even if they implicate assets that were purportedly transferred under the P&A Transaction.

the jurisdictional bars in FIRREA do not apply to suits . . . that are brought not against the FDIC, but against an assignee of an asset formerly held by the FDIC. . . . As the Court of Appeals correctly concluded, Section 1821(d)(13)(D) applies only in an action against the FDIC. It does not apply in an action . . . against a private party who owns an asset that was formerly held by an FDIC receivership . . . . Once the receivership has transferred an asset to a third party, the asset is no longer an 'asset of the depository institution for which the corporation has been appointed receiver' . . . . Accordingly, the court of appeals correctly held that Section 1821(d)(13)(D)'s jurisdictional bar does not apply to 'assignees of assets once owned by the FDIC.'

*FDIC Opp'n to Pet. for Writ of Cert. in Henrichs v. Valley View Dev.*, 474 F.3d 609, 614

(9th Cir. 2007), *cert. denied*, 128 S. Ct. 647 (2007).[11] The FDIC agreed with the Third Circuit

that the FIRREA jurisdictional bar does not apply to claims against successor banks and that

former assets of failed banks now in the hands of successor bank will not trigger the

jurisdictional bar.

The balance of the Request proceeds in conflict with the FDIC's former position and in

further denial of *Rosa's* holding, asserting that *National Union Fire Insurance Co. v.* City

Saving*s F.S.B.*, 28 F.3d 376 (3d Cir. 1994), unlike *Rosa*, concerned a claim that violated the

"determination of rights subprovision of the jurisdictional bar." (Request at 13-14.) *National*

*Union* is inapposite. In that case, the Third Circuit held that a declaratory judgment action

*against the receiver of a failed bank*, concerning insurance policies that were *assets in*

---

[11]   The FDIC also observed in its *Henrichs* Brief that section 1821(d)(13)(D), by its express terms, applies not only to claims concerning assets currently in receivership, but also to claims concerning assets that, "although no longer owned by the receivership, are still owned by the FDIC in its corporate capacity." (*Henrichs* Brief at 9.) As the FDIC explained, "[i]f section 1821(d)(13)(D) generally applied to assets that the receivership has assigned to others, there would have been no need to specify that the assets assigned to the FDIC in its corporate capacity are also covered." (*Id.*) The Bankruptcy Court made the same observation when it noted that "the last clause of [section 1821(d)(13)(D)(i)]" would be rendered "superfluous" if the jurisdictional bar under FIRREA generally applies to assets that are no longer in receivership. (Tr. 6/24/09 at 52.) The FDIC has provided no explanation as to why it no longer agrees with its own prior assessment.

*receivership*, was governed by FIRREA. That is fully consistent with *Rosa's* holding, and with

the decision in *Hudson* (discussed below, which was rendered subsequent to *National Union*),

that the jurisdictional bar under FIRREA applies only to claims either for assets in receivership

or against the receiver. It is not surprising, therefore, that the Third Circuit in *National Union*,

far from purporting to "overrule" *Rosa*, in fact relied on that decision in support of its holding.

Further, the reasoning behind *National Union's* application of the jurisdictional bar to declaratory

judgment actions against the receiver (*i.e.*, to allow the FDIC to "focus on preserving the failed

bank's assets, without the distraction and substantial cost of defending itself" against costly

litigation), reinforces that its holding does not extend to third parties such as JPMC. 28 F.3d at

388.[12]

If there was any question as to *Rosa's* status as controlling Third Circuit precedent, the

Third Circuit resolved it in its subsequent decision in *Hudson United Bank v. Chase Manhattan*

---

[12]    Although the FDIC strains to unearth immaterial distinctions between *Rosa* and the cases at bar, the FDIC chooses to view *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008), a case from the Sixth Circuit, from a much more distant vantage point, claiming it concerned "similar" claims to the Debtors'. (Request at 14.) Even if *Oakwood* could somehow override the controlling nature of *Rosa* in this circuit – and plainly it cannot – *Oakwood* is inapposite here. The plaintiffs in *Oakwood*, were depositors whose deposits *were not assumed* by the successor bank, and unlike Debtors here, "failed to comply with the administrative claims process" under FIRREA. *Id.* at 386. In an effort to avoid their fate in the receivership, plaintiffs named a successor bank as defendant in an action that was actually *based on an alleged breach of duty by the receiver* in connection with plaintiffs' unassumed deposits. *Id.* at 376; *see also Vill. of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730, 739 (N.D. Ohio 2007). Thus, while the plaintiffs in *Oakwood* ostensibly sued a successor bank, their claim was truly against the receiver and concerned assets that remained in receivership, thus forming the keystone for the court's finding that the claims were subject to FIRREA's exclusive claims process. The FIRREA jurisdictional bar therefore was found to apply. Debtors' claims here are in substance against JPMC, distinct from claims asserted in the receivership. Moreover, even assuming, *arguendo,* that *Oakwood* and *Rosa* comprise a "circuit split," that is insufficient grounds for certification. *In re GMC*, 2009 Bankr. LEXIS 1800, *7-8 (Bankr. S.D.N.Y. July 7, 2009) ("While a circuit split might be an appropriate matter for consideration for the Supreme Court, in deciding whether or not it wishes to grant *certiorari*, it doesn't satisfy §158(d)(2)").

*Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994). The *Hudson* Court repeatedly invoked *Rosa* for the specific proposition that the jurisdictional bar under section 1821(d)(13)(D)(i) "applied only to claims against failed institutions while [section 1821(d)(13)(D)(ii)] applied to claims against the failed institutions specified in (i) as well as to claims against the receiver of such institutions." *Id.* at 847 n.10; *see also id.* at 852 ("[*Rosa*] held that claims against the receiver, as well as claims against the failed institution, were subject to the 'statutory exhaustion requirement' of administrative review").

Thus, the Third Circuit in *Rosa* specifically held that the jurisdictional bar under FIRREA does not apply to claims asserted against a successor bank. *Rosa*, 938 F.2d at 393. Furthermore, in *Hudson,* the Third Circuit reaffirmed this holding, stating repeatedly that the only claims barred under FIRREA are those asserted either against a failed institution or the receivership. 43 F.3d at 852. It is beyond dispute that there already exists Third Circuit precedent on the controlling question of law.

**B.      The Issue on Appeal is Not One of Public Importance**

In support of its argument that the appeal involves an issue of "public importance," the FDIC's argument boils down to: (i) the FDIC should not be bothered by litigation when it must focus on administering FIRREA's exclusive claims process "for the good of the claimants"; and (ii) the Bankruptcy Court's ruling could have a "chilling effect" on potential buyers of failed bank assets in the future. (Request at 16-17.)

As a threshold matter, where an issue has already been decided squarely by the Third Circuit, "deciding it again is not a matter of public importance." *See GMC*, 2009 Bankr. LEXIS 1800, at *9-10 (finding the "already decided" issue of successor liability on purchasers of assets from debtors not a matter of public importance while recognizing it is "hardly a trivial issue as a

matter of bankruptcy law and policy"). Here, the Third Circuit in *Rosa,* and subsequently in *Hudson,* has already resolved the issue that the FDIC would like to have certified. Having the Third Circuit reaffirm its holding once again simply cannot raise to the level of public import contemplated by Congress and certainly cannot be said to "'advance the cause of jurisprudence.'" *Am. Home Mortg.*, 408 B.R. at 44 (quoting 1 *Collier on Bankruptcy* 5.05[A] (15th ed. rev.)).

The FDIC argues that the "exclusive" nature of the administrative claims procedure is being threatened by the Debtors' claims which are "unquestionably, subject to FIRREA's exclusive receivership claims process." (Request at 16-17.) However, the simple fact is that the Debtors' claims are asserted against *JPMC* and the case law holds that Congress intended the "exclusive" nature to extend only to claims against the failed bank or the FDIC. *See Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 386 (3d Cir. 1994) (concerning action brought against the RTC; "the administrative claims procedure of FIRREA contained in § 1821(d)(3), (d)(5) and (d)(6) addresses a debtor-creditor relationship"); *FDIC v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 131 (3d Cir. 1991) ("Congress expressly withdrew jurisdiction from all courts over *any claim to a failed bank's assets* that are made outside [such procedures].") (emphasis added); *Rosa,* 938 F.2d at 394-95 ("The claims procedure provides RTC with the authority to determine claims, to allow and disallow claims, and to pay creditor claims") (internal quotation marks omitted); *Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998) (section 1821(d)(6) "provides for administrative determination of 'any claim against a depository institution for which the Corporation is receiver' and thereafter for adjudication in district court"). Thus, the FDIC's argument that it is being deprived of statutory protection afforded it by Congress is wrong and its citation to *National Union*, a case concerning an action brought against the RTC, is irrelevant. Refusing to acknowledge this simple distinction, the FDIC's

request that the Debtors be required to "pursue claims against the FDIC as receiver in a manner that FIRREA expressly requires" is completely irreconcilable with the fact that the Debtors are not pursuing any claims in the Bankruptcy Court against the FDIC. (Request at 17.)

Concerning the FDIC's argument that it should not be bothered with litigation outside of the administrative claims process, the FDIC overlooks that the Debtors did not name the FDIC as a party to the Adversary Proceedings. Instead, the FDIC chose to intervene. If the Adversary Proceedings are affecting the FDIC's ability to concentrate on "its statutory duties for the good of claimants, the deposit insurance fund and, ultimately, the taxpayers of the United States," it has only itself to blame. (Request at 17.) The fact that the FDIC chose to defend the interests of JPMC, and purportedly to indemnify damages suffered by JPMC, does not operate to extend the reach of FIRREA's jurisdictional bar or the scope of FIRREA's administrative claims procedure as crafted by Congress. Thus, the appeals do not threaten the "exclusive" nature thereof, and cannot raise to the requisite level of public importance. Further, as discussed above, in *Henrichs* the FDIC itself acknowledged and argued this plain truth before the Supreme Court. If a matter of public import was implicated, the FDIC surely would have recognized it in 2007 when it articulated its contrary position to the Supreme Court.

Finally, the FDIC's argument that there will be a chilling effect on potential buyers of failed bank assets is wholly unsubstantiated and should be rejected. The inclusion of an indemnity provision in the P&A Agreement extended by the FDIC to JPMC is evidence that JPMC understood there was a risk of having to defend against claims arising out of the P&A Transaction. *See* P&A Agreement at ¶ 12.1 (indemnification by FDIC, as receiver). Neither that knowledge, nor extant, controlling Third Circuit authority such as *Rosa* and *Hudson*, stopped JPMC from pursuing the very profitable P&A Transaction. Moreover, the FDIC asserts that the

19

Bankruptcy Court's ruling "subjects future purchase and assumption agreements to collateral attack in bankruptcy courts and other courts around the nation." (Request at 17.) But the fact that *JPMC*, as a third-party purchaser of failed bank assets, is not insulated by FIRREA is not the result of the Bankruptcy Court's ruling. Rather, it reflects the law as Congress provided. *Cf. O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994) (holding that title 12 does not protect the FDIC from otherwise applicable legal principles whenever the statutory text does not so provide); *In re First Republicbank Corp.*, 1990 Bankr. LEXIS 2840, at *18 (Bankr. N.D. Tex. June 19, 1990) ("Congress can, but has not provided that Section 548 of the Bankruptcy Code not apply to FDIC bank assistance packages given under Section 13(c) of the Federal Deposit Insurance Act."). In any event, as the Bankruptcy Court has already assessed, "despite the FDIC's predictions, I don't think that it is going to cause institutions not to deal with the FDIC." (Tr. 6/24/09 at 94.). The Bankruptcy Court's ruling will have no "chilling effect" and the FDIC's appeal does not involve an issue of public importance.

## III.     THERE ARE NO CONFLICTING DECISIONS WITHIN THE THIRD CIRCUIT

The FDIC does not assert the existence of conflicting decisions within the Third Circuit. *See Am. Home Mortg.*, 408 B.R. at 44 (denying request for direct appeal where movant did not identify conflicting decisions on the issues involved in the appeal). That is because the FDIC cannot. The Bankruptcy Court's ruling was dictated by the holding in *Rosa* as reaffirmed in *Hudson*. To the extent any exist, conflicting decisions from outside the Third Circuit are not a basis for §158(d)(2) certification. *See GMC*, 2009 Bankr. LEXIS 1800, at *10.

## IV.     CERTIFICATION WILL DO NOTHING TO MATERIALLY ADVANCE THE ADVERSARY PROCEEDINGS OR THE DEBTORS' BANKRUPTCY CASES

The third factor, calling for consideration of whether an immediate appeal "may materially advance the progress of the case," likewise is not satisfied here. The Debtors are

seeking to recover approximately $4 billion of Deposits in the Turnover Action, and billions of dollars in additional assets through avoidance claims asserted in the JPMC Adversary Proceeding. It is impossible for the Debtors to develop a chapter 11 plan, and to administer assets for the benefit of their creditors, until the Adversary Proceedings are resolved. As the Bankruptcy Court surely understood, it is critical to the estates, and to the purposes of the bankruptcy laws generally, that these actions move forward. *See In re Harris*, 464 F.3d 263, 271 (2d Cir. 2006) ("the primary goal of courts as enforcers of the bankruptcy rules should be to ensure the swift and efficient resolution of disputes pertaining to the distribution of the bankruptcy estate" (quoting *In re CPDC Inc.*, 221 F.3d 693, 699-700 (5th Cir. 2000))).

The Adversary Proceedings are going forward whether certification is granted or not. Regardless of whether this Court or the Third Circuit hears a premature interlocutory appeal (and neither should), it will not expedite the Adversary Proceedings or the Debtors' bankruptcy cases in any way. *See Am. Home Mortg.,* 408 B.R. at 44 (denying certification, noting that underlying bankruptcy is proceeding regardless of appeal); *GMC*, 2009 Bankr. LEXIS 1800, at *12 (denying certification where "it makes no difference whether or not the district court looks at these issues first . . . other than the appellants' apparent desire to get a rushed decision out from which they can seek *certiorari*"); *Lebos v. Schuette*, 2008 U.S. Dist. LEXIS 76432, *10 (E.D. Cal. Sept. 30, 2008) ("There is no evidence that a ruling on the sale/compromise from this Court would differ, in relation to a material advancement of the progress of the case, from such a ruling from the Ninth Circuit.").

## CONCLUSION

For the reasons discussed, Debtors respectfully request that the Court deny the Request

and the JPMC Request.


Dated: September 11, 2009
    Wilmington, Delaware

**ELLIOTT GREENLEAF**


_____/s/ Neil R. Lapinski_____
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
E-mail: rxza@elliottgreenleaf.com
E-mail: nrl@elliottgreenleaf.com
E-mail: sak@elliottgreenleaf.com

-and-

QUINN EMANUEL URQUHART OLIVER & HEDGES,
LLP
Peter E. Calamari
Michael B. Carlinsky
Susheel Kirpalani
David Elsberg
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Special Litigation and Conflicts Co-Counsel to Washington Mutual, Inc. and WMI Investment Corp*