## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
In re:                              :    Chapter 11
                                    :
WASHINGTON MUTUAL, INC., et al.,[1]  :    Case No. 08-12229 (MFW)
                                    :
                        Debtors.    :    Jointly Administered
-----------------------------------------------------x
JPMORGAN CHASE BANK,                :
NATIONAL ASSOCIATION,               :
                                    :    Civil Action No. 1:09-cv-615-GMS
           and                      :
                                    :    Bk. Adv. No. 09-50551; 09-50934
FEDERAL DEPOSIT INSURANCE           :
CORPORATION, AS RECEIVER OF         :
WASHINGTON MUTUAL BANK,             :
                                    :
                    Appellants,     :
                                    :
          v.                        :
                                    :
WASHINGTON MUTUAL, INC. AND         :
WMI INVESTMENT CORP,                :
                                    :
                    Appellees.      :
-----------------------------------------------------x
```

## <u>ANSWERING BRIEF OF APPELLEE DEBTORS</u>

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
ELLIOTT GREENLEAF
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399

(Additional Counsel Listed on Signature Page)

*Special Litigation and Conflicts Counsel to*
*Washington Mutual, Inc. and WMI Investment Corp.*

October 19, 2009

---

[1]    The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE ...................................................................................... 1

BANKRUPTCY COURT'S ORDERS ARE NOT IMMEDIATELY APPEALABLE ................ 3

BACKGROUND ........................................................................................................ 5

    A.    The DC Action.................................................................................... 5

    B.    The Bankruptcy Proceedings.............................................................. 7

            1.    The JPMC Adversary Proceeding ............................................ 7

            2.    The Turnover Action ................................................................ 7

    C.    The Bankruptcy Court's Ruling Denying Motions by the FDIC and JPMC to Stay and Dismiss the Adversary Proceedings ..................................... 8

ARGUMENT............................................................................................................ 10

I.    Section 1821(d)(13)(D) of FIRREA Does Not Bar the Debtors' Claims Against JPMC Concerning Assets that are not in Receivership. ..................................... 10

II.    The Appellants' Purported "Plain Language" Reading of Section 1821(d)(13)(D) Has Been Rejected by the Third Circuit and is Unworkable............................................. 18

    A.    The Appellants' Interpretation of Section 1821(d)(13)(D) is in Direct Conflict with the Third Circuit's Interpretation of the Same Provision............... 18

    B.    The Appellants' "Plain Reading," in Addition to Having Been Rejected by the Third Circuit, Would be Constitutionally Unworkable ................................... 22

III.    The Appellants' Attempts to Assert Policy Concerns are Misplaced and Incorrect ........ 24

IV.    The Bankruptcy Court Has Exclusive Jurisdiction over Property of the Debtors' Estates............................................................................................................ 26

V.    The Bankruptcy Court's First Filed Determination is Unappealable and Correct in any Event ...................................................................................................... 27

CONCLUSION ....................................................................................................... 29

i

## TABLE OF AUTHORITIES

<u>Page</u>

### <u>Cases</u>

*In re All Season's Kitchen, Inc.*,
    145 B.R. 391 (Bankr. D. Vt. 1992)..................................................................................25

*American First Fed., Inc. v. Lake Forest Park, Inc.*,
    198 F.3d 1259 (11th Cir. 1999) ...................................................................................15

*American National Insurance Co. v. FDIC*,
    No. 3:09-cv-00044 (slip op.) ..................................................................................16, 17

*Auction Co. v. FDIC*,
    141 F.3d 1198 (D.C. Cir. 1998)...............................................................................22, 25

*Carteret Sav. Bank v. Shushan*,
    919 F.2d 225 (3d Cir. 1990) .........................................................................................4

*Clark v. Suarez Martinez*,
    543 U.S. 371 (2005) ....................................................................................................23

*Disibio v. Mission National Bank*,
    127 Fed. Appx. 950 (9th Cir. 2005) .......................................................................15, 16

*EEOC v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988).....................................................................................27, 28

*FDIC Opp'n to pet. for Writ of Cert. in Henrichs v. Valley View Dev.*,
    474 F.3d 609 (9th Cir.), *cert. denied*, 128 S. Ct. 647 (2007).............................13, 14, 15, 20

*FDIC v. McFarland*,
    243 F.3d 876 (5th Cir. 2001) ......................................................................................14

*Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello*,
    944 F.2d 129 (3d Cir. 1991) .....................................................................................19, 24

*In re First Republicbank Corp.*,
    1990 Bankr. LEXIS 2840 (Bankr. N.D. Tex. June 19, 1990) ................................................25

*Freeman v. FDIC*,
    56 F.3d 1394 (D.C. Cir. 1995).....................................................................................19

*Grider v. Keystone Health Plan Central, Inc.*,
    500 F.3d 322 (3d Cir. 2007) .....................................................................................27, 28

*Gulfstream Aerospace Corp. v. Maycamas Corp.*,
    485 U.S. 271 (1988) ....................................................................................................27

*Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*,
    43 F.3d 843 (3d Cir. 1994) ....................................................................................passim

*Isaacs v. Hobbs Tie & Timber Co.*,
  282 U.S. 734 (1931) ..................................................................................................26

*JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.*,
  Adv. Proc. No. 09-50551 (MFW)..............................................................................7

*Katchen v. Landy*,
  382 U.S. 323 (1966) ..................................................................................................21

*Lauro Lines S.R.L. v. Chasser*,
  490 U.S. 495 (1989) .............................................................................................3, 4, 5

*National Union Fire Insurance Co. v. City Savings F.S.B.*,
  28 F.3d 376 (3d Cir. 1994) ...............................................12, 13, 19, 22, 23, 24

*In re Noletto*,
  244 B.R. 845 (Bankr. S.D. Ala. 2000)......................................................................27

*O'Melveny & Myers v. FDIC*,
  512 U.S. 79 (1994) ....................................................................................................25

*In re Parker N. Am. Corp.*,
  24 F.3d 1145 (9th Cir. 1994) ....................................................................................25

*Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.*,
  947 F.2d 49 (3d Cir. 1991) ....................................................................................4, 5

*Rosa v. RTC*,
  938 F.2d 383 (3d Cir. 1991) .............................................................................passim

*Smith v. United States*,
  508 U.S. 223 (U.S. 1993) ..........................................................................................20

*Team Bank v. Barfield*,
  145 F.R.D. 69 (N.D. Tex. 1992).................................................................................14

*United States v. Pelullo*,
  178 F.3d 196 (3d Cir. 1999) ......................................................................................27

*Village of Oakwood v. State Bank & Trust Co.*,
  39 F.3d 373 (6th Cir. 2008) ................................................................................15, 16

*WMI and WMI Investment v. FDIC*,
  No. 09-00533 (D.D.C.) ..........................................................................................6, 24

*Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.*,
  Adv. Proc. No. 09-50934 (MFW)................................................................................8

## **Statutes**

11 U.S.C. § 541 ................................................................................................................27

11 U.S.C. § 550 ........................................................................................................17, 24

12 U.S.C. § 1821(d)(12) ....................................................................................................4

12 U.S.C. § 1821(d)(5)(A)(i) .............................................................................................6

12 U.S.C. 1821(d)(5)-(11) ...............................................................................................14

12 U.S.C. § 1821(d)(6)(A) .........................................................................................6, 22

28 U.S.C. § 1334(e)(1) ....................................................................................................26

## STATEMENT OF THE CASE

Furthering the ongoing effort of JPMorgan Chase Bank, N.A. ("JPMC") to delay finality with respect to any issues in these cases, JPMC and the Federal Deposit Insurance Corporation (the "FDIC," and together with JPMC, "Appellants") are improperly and prematurely attempting to pursue an appeal from an interlocutory decision of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") refusing to stay two Adversary Proceedings essential to the efforts of Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (together with WMI, the "Debtors") to administer their bankruptcy estates.[2] The Debtors' claims in both proceedings are asserted against JPMC and not the FDIC, and the Appellants acknowledge that none of the assets at issue in either Adversary Proceeding are currently in receivership. The Appellants nevertheless claim that the jurisdictional bar in the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA") somehow requires that both Adversary Proceedings be shut down in favor of a separate action now pending against the FDIC in the United States District Court for the District of Colombia (the "DC District Court") in which distinct claims are being asserted. The Appellants continue to put forth this argument in spite of the remarkable fact that one of the Adversary Proceedings was commenced before the Bankruptcy Court by none other than one of the Appellants – JPMC. The Bankruptcy Court was correct to reject this argument twice now. As discussed below, that ruling was interlocutory and therefore not subject to immediate appeal, but, to the extent this Court nevertheless addresses that ruling, the Bankruptcy Court's ruling should be affirmed.

---

[2]    Subject to the Court's approval, the parties have agreed that consolidation of the FDIC's and JPMC's appeals – to the extent this Court determines they should go forward – best serves the interests of judicial economy. Because the Appellants' briefs assert much of the same argument, the Debtors have filed this consolidated opposition in each of the appeals.

The Third Circuit has already addressed the identical issue that the Appellants seek to pursue here, and it has ruled repeatedly in favor of the Debtors' position. *See Rosa v. RTC,* 938 F.2d 383 (3d Cir. 1991); *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994). Simply stated, FIRREA's jurisdictional bar does not apply to claims asserted against a successor bank concerning assets that are no longer in receivership. That is the precise basis for the Bankruptcy Court's ruling here. The Appellants have no good answer for *Rosa* and *Hudson* in which the Third Circuit interpreted the statute "literally," and largely ignore that binding authority in favor of their own preferred "plain reading" of FIRREA. But the Appellants' reading is flawed. On its face, FIRREA applies only to claims against a failed bank or for assets in receivership, whereas the Debtors' claims in this action are against JPMC, a successor bank that acquired assets that are no longer in receivership. Furthermore, FIRREA identifies the narrow and specific circumstances in which the bar extends to claims concerning assets no longer in receivership – when the assets are owned by the FDIC in its corporate capacity, and that lone exception is entirely inapplicable here. The FDIC understands the foregoing – it was the FDIC's own position in briefing before the United States Supreme Court.

If the Appellants were correct that FIRREA's jurisdictional bar applies broadly even with respect to assets no longer in receivership, it would not only infringe upon the bankruptcy courts' exclusive jurisdiction, but would invite absurd results and raise major Constitutional concerns. The Third Circuit has specifically recognized that an application of FIRREA barring otherwise cognizable claims for monetary relief would violate Due Process. And that is precisely how the Appellants seek to apply FIRREA here. Indeed, the Debtors cannot assert their claims against JPMC through FIRREA's administrative claims process, since that process is available only for claims against the FDIC. Thus, if FIRREA barred the Debtors' claims against JPMC, the

Debtors could have literally no recourse to seek or recover billions of dollars improperly being withheld from their estates.  While that windfall would suit JPMC just fine, such a result threatens to severely harm the Debtors and their creditors and opens the door for JPMC to inflict significant injury upon the millions of other former depositors of Washington Mutual Bank ("WMB") – none of whom hold claims against the receivership.

JPMC has already enjoyed massive profits as a result of its acquisition of WMB's banking operations, and it is simply not entitled to the added benefit of a jurisdictional bar that Congress expressly made inapplicable.  The Bankruptcy Court was correct to permit both Adversary Proceedings to proceed, and JPMC cannot hide behind FIRREA as a basis to deflect the merits of the Debtors' claims.  The Bankruptcy Court decision denying the stay motions should be affirmed.

## BANKRUPTCY COURT'S ORDERS ARE NOT IMMEDIATELY APPEALABLE

The Appellants invoke the "collateral order doctrine" as their basis for appealing the interlocutory orders entered on July 6, 2009 (the "Orders") by the Bankruptcy Court.  The Bankruptcy Court recently considered this issue, however, and determined that such an assertion of appellate jurisdiction is "frivolous":

> It is clear that the appeal of the denial of a motion to dismiss or the denial of a motion to stay a proceeding is not appealable.  The only exception to that that has been cited is the collateral order doctrine.  The Supreme Court has made it clear that this is a narrow exception, and the Supreme Court held in *Lauro Lines* that it does not apply to issues of *where* a party can be sued as opposed to *whether* a party can be sued. . . . The fact that JPMC has continued to appear before me and to continue to proceed with this adversary for the past four months, I think evidences an acknowledgment that really their position is frivolous.  Need I say it, I do say it, the argument is frivolous that the collateral order doctrine applies.

(B40-41 (emphasis added).)[3] The Bankruptcy Court was correct.  For the reasons set forth in the Debtors' Memorandum of Points and Authorities in Opposition to the Motions of JPMC and the FDIC for Leave to Appeal [D.I. 8, 09-cv-615] and the Debtors' Response to Notice of Divestiture of Jurisdiction Pending Appeals of JPMorgan Chase Bank, N.A. [D.I. 10, 09-cv-615], the Orders are not immediately appealable.  JPMC and the FDIC have never claimed that they are immune from suit or that they should be free from suit even for a day; rather, they have claimed, in every instance possible, that they are subject to suit solely in the DC District Court.[4] The Bankruptcy Court Orders rejecting these arguments are precisely the type of orders for which the Supreme Court has specifically held that the collateral order doctrine does not apply. *See Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 501 (1989) (finding collateral order doctrine *is not* applicable "*where a district court has denied a claim, not that the defendant has a right not to be sued at all, but that the suit against the defendant is not properly before the particular court because it lacks jurisdiction*."); *see also Carteret Sav. Bank v. Shushan*, 919 F.2d 225, 230 (3d Cir. 1990) (holding that section 1406(a) transfer for lack of personal jurisdiction was not an appealable collateral order).[5]  Moreover, the Appellants' request for leave to appeal the

---

[3]  This issue arose before the Bankruptcy Court in connection with JPMC's "Notice of Divestiture," in which JPMC announced that it had stripped the Bankruptcy Court of all jurisdiction over both pending adversary proceedings based merely on JPMC's unilateral determination that it was entitled to bring this interlocutory appeal. The Bankruptcy Court correctly rejected that extraordinary and brazen claim, both because JPMC has no proper jurisdictional basis to bring the present appeal and because JPMC's putative appeals are frivolous on the merits.

[4]  In fact, JPMC's motion to stay the JPMC Adversary Proceeding actually sought to transfer the proceeding to the DC District Court. (B49.)

[5]  On September 25, 2009, JPMC attempted to argue to the Bankruptcy Court that *Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.* 947 F.2d 49 (3d Cir. 1991) somehow supported its argument that the Orders were immediately appealable under the collateral order doctrine, notwithstanding *Lauro Lines*. However, *Praxis* is inapplicable as it concerned a separate provision of FIRREA that affords the FDIC a right not be sued *at all* for a fixed period of time. *See* 12 U.S.C. § 1821(d)(12). In fact, the Third Circuit analogized this "statutory right to a short litigation cease-fire" to a category of orders for which the collateral order doctrine is applicable – government official's right to (footnote continued)

Bankruptcy Court's interlocutory orders is baseless given the fact that the issue on appeal does not involve a controlling question of law upon which there is substantial grounds for difference of opinion as to its correctness (in view of clear and controlling Third Circuit Court of Appeals authority dictating that the jurisdictional bar under the FIRREA is not applicable to the Adversary Proceedings), and because an immediate appeal would not materially advance the ultimate termination of the litigation. *See Rosa,* 938 F.2d 383; *Hudson,* 43 F.3d 843. Therefore, the Debtors respectfully submit that the Court should not assert jurisdiction over these putative appeals and deny the Appellants' motions for leave to appeal.

## BACKGROUND

### A.    The DC Action

On September 25, 2008, the Director of the Office of Thrift Supervision (the "OTS") placed WMB into receivership and appointed the FDIC as receiver. On the same day, the FDIC sold substantially all of WMB's assets, including the stock of its subsidiary bank, Washington Mutual Bank fsb ("WMB fsb"), to JPMC for $1.88 billion (the "P&A Transaction"), pursuant to the Purchase and Assumption Agreement Whole Bank, dated September 25, 2008 (the "P&A Agreement," A1-44)[6]. As required by section 11(d) of FIRREA, 12 U.S.C. § 1821(d), the FDIC

---

qualified immunity. *Praxis,* 947 F.2d at 60. Thus, as the Bankruptcy Court correctly found, *Praxis* did not involve the type of right at issue in *Lauro Lines* or with the Orders here, *i.e.,* the "right not to be sued in a particular jurisdiction," and is thus inapplicable and irrelevant to the Orders. (B41) ("*Praxis* is not applicable. It dealt with whether a party can be sued, i.e., whether a 90-day stay applied or a 45-day stay applied, not to an issue of where a party can be sued. So it just is not applicable to this case."). Further, the *Lauro Lines* concurrence forecloses JPMC's baseless argument that the Supreme Court's holding was limited to forum-based restrictions arising out of contract only. *See Lauro Lines,* 490 U.S. at 502 ("We have made that judgment when the right not to be tried in a particular court has been created through jurisdictional limitations established by Congress or by international treaty.") (internal citation omitted).

[6]    Citations to "A_" are cross-referenced to the Appendix In Support of Appellant JPMorgan Chase Bank N.A.'s Opening Brief [D.I. 23 in 09-cv-615].

set December 30, 2008, as the last day to file claims against WMB. The Debtors, in order to preserve their rights, timely filed proofs of claim.

On January 23, 2009, the FDIC disallowed the Debtors' claims in a one-page Notice of Disallowance, partly on the basis that the Debtors "appear to assert claims against a third party" ("Notice of Disallowance," A71). The FDIC further advised that the Debtors had 60 days in which to challenge that disallowance by filing a lawsuit either "in the United States District [] Court for the District within which [WMB's] principal place of business was located or the United States District Court for the District of Columbia."[7] Id. The Notice of Disallowance also cautioned that, if the Debtors did not file suit, their claims would be "FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM." Id. In order to avoid forfeiting rights with respect to WMB, the Debtors filed a Complaint in the DC District Court on March 20, 2009, challenging the FDIC's disallowance of claims.[8]

There has been limited activity in the DC Action. On June 11, 2009, the FDIC filed an answer and counterclaims, along with a partial motion to dismiss, and, on July 13, 2009, it filed an amended answer and counterclaims. The Debtors have moved to dismiss or stay the FDIC's counterclaims. Both motions to dismiss are pending. The DC District Court recently issued orders permitting JPMC and a group of WMB bondholders to intervene.

---

[7]    Once a creditor files a claim with the agency, the FDIC has 180 days to either allow or disallow it. 12 U.S.C. § 1821(d)(5)(A)(i). A claimant who is dissatisfied with the agency's determination then has 60 days either to request administrative review or to file suit on the claim. 12 U.S.C. § 1821(d)(6)(A). As reflected in the Notice, the claimant is authorized to bring suit either in "the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia." Id.

[8]    WMI and WMI Investment v. FDIC, No. 09-00533 (D.D.C.), (the "DC Action").

**B.      The Bankruptcy Proceedings**

On September 26, 2008, the Debtors each commenced a voluntary case pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On March 30, 2009, the FDIC and JPMC each filed proofs of claim in the bankruptcy proceedings. There are two adversary proceedings now pending.

**1.      The JPMC Adversary Proceeding**

On March 24, 2009, JPMC filed an action against the Debtors, with the FDIC named as an interpleader defendant in a single count, asserting claims to assorted assets that JPMC allegedly purchased pursuant to the P&A Agreement.[9] On May 29, 2009, the Debtors filed an answer and counterclaims asserting, among other things, affirmative claims as authorized to do so under the Bankruptcy Code's avoidance powers and under state law for monetary relief through the avoidance of potentially more than $10 billion in the Debtors' assets fraudulently or preferentially transferred to JPMC prior to the commencement of the Debtors' chapter 11 cases, as well as claims for assets that the Debtors contend are rightfully the Debtors and therefore were not transferred to JPMC under the P&A Agreement. (A199-332.) JPMC filed a motion to dismiss, which was denied by the Bankruptcy Court on August 24, 2009. On September 11, 2009, the Debtors amended their counterclaims and JPMC answered on September 21, 2009.

**2.      The Turnover Action**

On April 27, 2009, the Debtors filed an action against JPMC seeking to recover approximately $4 billion in deposits belonging to the Debtors (the "Deposits"), which JPMC

---

[9]      *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.*, Adv. Proc. No. 09-50551 (MFW) (the "JPMC Adversary Proceeding"). (A111-177.)

expressly assumed under the P&A Agreement.[10] JPMC's motion to dismiss the Turnover Action was denied on June 24, 2009 (the "June 24 Hearing"). The Bankruptcy Court found that the Debtors' complaint and accompanying exhibits describe a mature debt owed by JPMC to the Debtors, without any indication of a genuine dispute as to "the title to the . . . deposit accounts." (A478.) Now pending and fully-briefed before the Bankruptcy Court is the Debtors' motion for summary judgment, which is supported by an extensive evidentiary submission establishing that the Deposits belong to the Debtors and that they are entitled to be paid their funds.

### C.    The Bankruptcy Court's Ruling Denying Motions by the FDIC and JPMC to Stay and Dismiss the Adversary Proceedings

On June 1, 2009, the Appellants each filed motions with the Bankruptcy Court claiming that it lacks jurisdiction to resolve the Adversary Proceedings (the "Stay Motions," A353-361), notwithstanding that one of those Adversary Proceedings was actually commenced by JPMC. Appellants argued that the Debtors' claims and counterclaims against JPMC, which seek payment from and/or concern assets that are not in receivership, are barred by FIRREA, 12 U.S.C. § 1821(d)(13)(D) ("Section 1821(d)(13)(D)").[11] After extensive briefing and argument,

---

[10]    *Washington Mutual, Inc. et al.* v. *JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW) (the "Turnover Action," and with the JPMC Adversary Proceeding, the "Adversary Proceedings"). (A178-198.)

[11]    Section 1821(d)(13)(D) provides as follows:

Except as otherwise provided in this subsection, no court shall have jurisdiction over – (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to an act or omission of such institution or the Corporation as receiver.

the Bankruptcy Court denied the Stay Motions at the June 24 Hearing.[12]  As dictated by

controlling Third Circuit precedent, the Bankruptcy Court held that FIRREA's jurisdictional bar

does not apply "to Debtors' claims to property that is no longer in the hands of the FDIC as

receiver, but [is] in the hands of JPMC." (A454.)  The Bankruptcy Court also rejected the

Appellants ' arguments invoking the "first filed rule" as an alternative basis to defer to the DC

Action, observing that the DC Action and the Adversary Proceedings involve different parties

and different claims. (A455-456.)

On July 10, 2009, the Appellants filed motions for leave to appeal (transmitted to this

Court), in which they continue to argue that FIRREA bars the Debtors' claims against JPMC,

despite the fact that those claims are not asserted against the FDIC and do not involve assets in

receivership ("Motions for Leave").  As set forth in the Debtors' response to the Motions for

Leave, the Bankruptcy Court's denial of the Stay Motions are not "final" appealable orders, and

this is not that rare situation in which interlocutory appeal is warranted.  Notwithstanding the

Debtors' opposition, JPMC filed with the Bankruptcy Court a Notice of Divestiture of

Jurisdiction Pending Appeals on September 18, 2009, claiming that for the prior two months –

during which time JPMC participated meaningfully in many facets of the Adversary

Proceedings, including by arguing its own motion to dismiss the Debtors' counterclaims in the

JPMC Adversary Proceeding and taking the deposition of the Debtors' central affiant in

connection with the Debtors' summary judgment motion – the Bankruptcy Court had been

divested of jurisdiction.  On September 25, 2009, the Bankruptcy Court ruled that it was not

---

[12]    The Court also granted the FDIC's motion to intervene in the Turnover Action, "for the sole
purpose of prosecuting the action for a stay." (A395-396.)  In its subsequent written order denying the
Stay Motion in the Turnover Action, the Court specified that its ruling had "disposed of all matters for
which the intervention of the [FDIC] was granted," and that "no further pleading or response shall be
required of the [FDIC] in this Adversary Proceeding." (B53.)

divested of jurisdiction both because JPMC is not entitled to pursue this appeal pursuant to the collateral order doctrine, and because JPMC's appeal is in any event frivolous on the merits. As set forth below, the Bankruptcy Court was correct.

## ARGUMENT

**I.    Section 1821(d)(13)(D) of FIRREA Does Not Bar the Debtors' Claims Against JPMC Concerning Assets that are not in Receivership.**

The Appellants persist with an interpretation of FIRREA that the Third Circuit has specifically and repeatedly rejected. *See Rosa v. RTC,* 938 F.2d 383 (3d Cir. 1991); *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994). In *Rosa*, the Third Circuit held that Section 1821(d)(13)(D) does not bar claims against a successor bank concerning assets purchased out of receivership pursuant to a purchase and assumption agreement. That is the exact situation here. Furthermore, in *Hudson*, the Third Circuit reaffirmed its earlier holding in *Rosa*, reiterating that Section 1821(d)(13)(D) applies only to "claims against failed institutions" or against "the receiver of such institutions." *Id.* at 847 n.10. That is not the nature of the Debtors' claims here. Rather, as the Bankruptcy Court recognized, the Debtors' claims are against JPMC, a successor bank, and not against the receiver or assets in receivership. The FIRREA bar simply does not apply. *Id.*

Plaintiffs in *Rosa* were participants in the failed bank's pension plan, and therefore, creditors of a failed bank, City Federal Savings Bank ("Rosa Bank I"). *Id.* at 388. After the OTS placed Rosa Bank I into receivership, certain of its assets and liabilities were transferred to City Savings Bank, F.S.B. ("Rosa Bank II"), pursuant to a purchase and assumption agreement between the Resolution Trust Corp. (the "RTC") as receiver for Rosa Bank I, and Rosa Bank II. *Id.* Subsequently, Rosa Bank II too was closed, with the RTC being appointed receiver, and certain of its assets and liabilities were transferred to a new, third bank, City Savings F.S.B.

10

("Rosa Bank III"), pursuant to a second purchase and assumption agreement between the RTC, as receiver for Rosa Bank II, and Rosa Bank III. *Id.* at 390. The RTC, as Appellants do here, argued that the district court did not have jurisdiction over plaintiffs' claims based upon Section 1821(d)(13)(D). *Id.* at 391. Significantly, the Third Circuit found that plaintiffs' claims seeking monetary relief, based on the failure of the various banks to make contributions to the pension plan, were subject to FIRREA's jurisdictional bar as asserted against *only* Rosa Bank I and Rosa Bank II, because those entities were "depository institutions for which the RTC had been appointed receiver," but *not* as to Rosa Bank III, because Rosa Bank III, like JPMC here, was not a depository institution for which the RTC had been appointed receiver. *Id.* at 394.

Thus, in *Rosa*, the Third Circuit clearly determined that Section 1821(d)(13)(D) does not apply to claims asserted against a successor bank, such as JPMC, that is not in receivership: "The language of the bar simply states that it applies when there is an institution for with RTC has been appointed receiver. Thus the issue under the bar is whether, at the time the case came before the district court, RTC had been appointed receiver of the institutions . . . . At the time the complaint was filed, [the successor bank, Rosa Bank III] was in conservatorship, not receivership. Thus, [Rosa Bank III] was not then a depository institution for which the Corporation has been appointed receiver." *Id.* at 392-93 (internal quotation omitted).

Furthermore, while appellants ask this Court to entertain the fiction that *Rosa* limited its analysis to a single prong of Section 1821(d)(13)(D), the Third Circuit in fact made clear that its analysis extends to the entire provision:

> We do not believe [claims against Rosa Bank III] fall under [§ 1821(d)(13)(D)(i)] because they seek neither payment from nor a determination of rights with respect to the assets of a depository institution for which RTC has been appointed receiver . . . . *Nor does [§ 1821(d)(13)(D)(ii)] bar these claims. This is so because we construe the 'relating' language of that clause to refer to claims*

11

> *against the very institution whose acts are challenged, which must be an*
> *institution for which RTC has been appointed receiver.*

*Id.* (emphasis added.)  Thus, when it rejected the Appellants' argument, the Bankruptcy Court properly adhered to the Third Circuit's holding that Section 1821(d)(13)(D) applies only to claims "against a receiver or an institution in receivership" (A454-455), and that it does not reach claims seeking payment from, or a determination of rights with respect to the assets of, a depository institution for which the FDIC has not been appointed receiver.[13]

The Third Circuit reached the same conclusion in its subsequent decision in *Hudson.  See Hudson*, 43 F.3d 843.   There, the Third Circuit repeatedly invoked *Rosa* for the specific proposition that the jurisdictional bar under the first prong of Section 1821(d)(13)(D) "applied only to claims against failed institutions while [the second prong] applied to claims against the failed institutions specified in [the first prong] as well as to claims against the receiver of such institutions." *Id.* at 847 n.10; *see also id.* at 852 ("[*Rosa*] held that claims against the receiver, as well as claims against the failed institution, were subject to the 'statutory exhaustion requirement' of administrative review").  The Appellants recognize that their position cannot be reconciled with this language, and they resort therefore to the remarkable argument that the Third Circuit in *Hudson* misunderstood its earlier ruling in *Rosa*.  (FDIC brief at 10, n. 5; JPMC Brief at 15-16.)  The Third Circuit was not confused, it was right (and its holding, in any event, is binding).  As the Court held in *Rosa* and reiterated in *Hudson*, FIRREA does not bar claims against banks that are not in receivership concerning assets that are no longer in receivership.[14]

---

[13]     In view of *Rosa*, it is impossible to reconcile JPMC's statement that "the Third Circuit has not addressed the application of FIRREA's jurisdictional bar to claims against a third-party purchaser of failed bank assets." (JPMC Br. at 13.)

[14]     The Appellants seek to avoid this conclusion based on the Third Circuit's decision in *National Union*, but there is nothing in that decision that undermines the analysis in *Rosa* or in *Hudson* (which was rendered, in any event, after *National Union*).  The Third Circuit in *National Union* held that a declaratory (footnote continued)

Perhaps more remarkable than the fact that the Appellants cannot reconcile their position with *Hudson* is the fact that the FDIC cannot reconcile its position with its own previous submission to the United States Supreme Court. The FDIC's position, set out in its brief opposing certiorari in *Henrichs v. Valley View*, is identical to the Debtors' position here (and to the Third Circuit's analysis in *Rosa* and *Hudson*). (B54-72.) Indeed, the FDIC was clear and unequivocal,

> the jurisdictional bars in FIRREA do not apply to suits . . . that are brought not against the FDIC, but against an assignee of an asset formerly held by the FDIC. . . . As the Court of Appeals correctly concluded, Section 1821(d)(13)(D) applies only in an action against the FDIC. It does not apply in an action . . . against a private party who owns an asset that was formerly held by an FDIC receivership . . . . Once the receivership has transferred an asset to a third party, the asset is no longer an 'asset of the depository institution for which the corporation has been appointed receiver' . . . . Accordingly, the court of appeals correctly held that Section 1821(d)(13)(D)'s jurisdictional bar does not apply to 'assignees of assets once owned by the FDIC.'

*FDIC Opp'n to pet. for Writ of Cert. in Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir.), *cert. denied*, 128 S. Ct. 647 (2007). The FDIC was right, Section 1821(d)(13)(D) does not apply to claims against successor banks.

---

judgment action *against the receiver of a failed bank*, concerning insurance policies that were *assets in receivership*, was governed by FIRREA. Thus, National Union is fully consistent with *Rosa's* holding that Section 1821(d)(13)(D) applies only to claims either for assets in receivership or to claims or actions against the receiver – in fact, the claims in *National Union* met both of those criteria. Further, the reasoning behind *National Union's* application of the jurisdictional bar to declaratory judgment actions against the receiver, *i.e.*, to allow the FDIC to "focus on preserving the failed bank's assets, without the distraction and substantial cost of defending itself" against costly litigation, reinforces that its holding does not extend to claims against third parties such as JPMC. *Nat'l Union,* 28 F.3d at 388. It is also absurd for the Appellants to suggest that *National Union* bars the Debtors' claims here on the basis that certain of those claims (and all of JPMC's claims that it chose to file in and commence an action before the Bankruptcy Court) are for declaratory judgment. The assets at issue in the Debtors' declaratory judgment claims are either the Debtors' or JPMC's (and not, as in *National Union*, receivership assets). They were either the subject of the P&A Agreement and thus sold to JPMC, or they were not.

Thus, the Bankruptcy Court's ruling that the Debtors' claims against JPMC are not barred under FIRREA was dictated by the holding in *Rosa* as reaffirmed in *Hudson*, and it was in keeping with the FDIC's own stated position in *Henrichs*. It was also consistent with decisions rendered by a number of other courts around the country, including the Ninth Circuit decision that the FDIC defended in its *Henrichs* briefing. *See, e.g.*, *Henrichs*, 474 F.3d at 614 (holding that FIRREA does not prevent a state court adjudication of rights to distributed assets of a receivership bank, reasoning that "the statute does not reach assignees of assets once owned by the FDIC"); *FDIC v. McFarland*, 243 F.3d 876, 887 n.42 (5th Cir. 2001) ("It would be absurd for us to interpret section 1821(d)(13)(D) as assignable to the current holder []. The claim procedures articulated in 12 U.S.C. 1821(d)(5)-(11) are predicated on the FDIC's possession of the property in question. When the FDIC relinquishes ownership, the procedures governing its role as a receiver no longer apply to the property. Thus, section 1821(d)(13)(D) did not deprive the [] court of jurisdiction."); *Team Bank v. Barfield*, 145 F.R.D. 69, 72 (N.D. Tex. 1992) (holding that FDIC had no basis to intervene in and remove state court action brought by guarantors of notes against successor bank: "FDIC has no substantial interest in this action. No claim is being made against it.").[15]

---

[15]    The FDIC seeks to distinguish *Henrichs* on the dubious basis that it involved efforts by a private party to invoke Section 1821(d)(13)(D) to bar claims asserted against it for assets acquired out of receivership. Of course, that is exactly what the Appellants are attempting to do here, *i.e.*, they are invoking Section 1821(d)(13)(D) to bar the Debtors' claims against JPMC concerning assets that JPMC acquired out of receivership. The FDIC states further that in *Henrichs*, "no party challenged the validity of the FDIC receiver's assignment of assets." (FDIC Br. at 13, n.8.) But the same is true here. The Debtors assert avoidance actions under the Bankruptcy Code for assets that were transferred to JPMC or assert ownership interests in assets that the Debtors claim were never the subject of the P&A Agreement (because they were never WMB assets). The validity of the FDIC's assignment is not at issue. For its part, JPMC argues that the action in *Henrichs* did not concern an asset of the failed bank because it concerned only the underlying collateral and not the loan that was acquired from the bank. (JPMC Br. at 16, n.6.) This is absurd. The clean title action was brought solely because the plaintiff learned of the lien that the bank note placed on plaintiff's property. 474 F.3d at 612. The action certainly sought "a determination of rights" with respect to former bank asset.
(footnote continued)

Left empty-handed in the Third Circuit (and most everywhere else), the Appellants ask this Court to rely instead on the Sixth Circuit's decision in *Village of Oakwood v. State Bank & Trust Co.*, 39 F.3d 373 (6th Cir. 2008). (JPMC Brief at 27.) Even if *Oakwood* could somehow override the law of this Circuit—and plainly it cannot—the holding in that case is easily reconcilable with the law in the Third Circuit and the Bankruptcy Court's ruling. Unlike here, the *Oakwood* plaintiffs, uninsured depositors of the failed bank, were owed deposits that were not transferred by the purchase and assumption agreement between the FDIC and the successor bank. *Id.* at 375-76. Although the plaintiffs ostensibly brought suit against the successor bank, their claim was in fact based upon a breach of duty *by the receiver*, and they had no viable claim for their deposits against that successor institution. *Id.* at 376, 386 ("Moreover, because the claims that the Uninsured Depositors are attempting to assert are disallowed as a result of their failure to comply with the administrative-claims process, they have no further rights or remedies *with respect to such claims* despite the fact that they purport to bring them against State Bank rather than the FDIC") (emphasis added and internal quotation omitted).[16] Thus, while plaintiff

---

[16]    JPMC's cite to *Disibio v. Mission National Bank*, 127 Fed. Appx. 950 (9th Cir. 2005) similarly concerns plaintiffs whose deposits were not assumed by a successor bank. *Id.* ("The district court properly held that the terms of the receivership contract between RTC and [the successor bank] clearly and unambiguously provided that [the successor bank] would assume only certain, limited obligations . . . ."). Like *Oakwood*, *Disibio*, at best, stands for the proposition that claims that have no basis in law to be brought against the successor bank may be dismissed under FIRREA. These cases, however, certainly do not provide a shield of immunity from suit to assuming banks where distinct and valid claims exist, particularly where the assuming bank expressly assumed *all* of a failed bank's deposit liabilities. Moreover, *Disibio* (which JPMC cites notwithstanding that the Ninth Circuit expressly noted the decision was "not appropriate for publication" or citation), was issued prior to *Henrichs* which is clear that FIRREA does not bar suits against assuming banks.

   *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264 (11th Cir. 1999) also is inapposite. In that case, the plaintiff had acquired a loan from the RTC and commenced a collection action against the creditor who sought to assert a counterclaim. *Id.* at 1261. Not only was the loan held by the RTC, in receivership, for approximately five years prior to assignment, but the putative counterclaim concerned allegedly wrongful acts of the failed bank in connection with the loan. *Id.* at (footnote continued)

15

ostensibly sued a third party bank in an effort to excuse its failure to adhere to the FIRREA

claims process, its claim was truly against the receiver; thus, it was barred. The court applied

Section 1821(d)(13)(D) as a mechanism to bar such claims and rejected plaintiffs' argument that

their claims were not "claims against a depository institution for which the [FDIC] was

receiver." *Id.* at 386.

The Appellants' last resort is to ask this Court to ignore *Rosa* and *Hudson* in favor of the

recent decision by the Southern District of Texas in *American National Insurance Co. v. FDIC,*

No. 3:09-cv-00044 (slip op.). Perhaps most significantly, the court in *American National* was

not bound by, and did not rely upon, the Third Circuit's decision in *Rosa*. Thus, the court's

decision to dismiss an action asserted against JPMC, and not against the FDIC, whether or not

proper in the Fifth Circuit, was plainly inconsistent with the law in this jurisdiction. Indeed, it is

notable that *American National* cites *Hudson* for the unremarkable proposition that FIRREA

contains a limitation on the venues in which suits may be brought against the FDIC, while

ignoring *Hudson's* specific explanation that section 1821(d)(13)(D) is not a bar to claims against

third-parties. *Hudson,* 43 F.3d at 848 n.10 (the jurisdictional bar under section 1821(d)(13)(D)(i)

"applied only to claims against failed institutions while [section 1821(d)(13)(D)(ii)] applied to

claims against the failed institutions specified in (i) as well as to claims against the receiver of

---

1261. Thus, the court determined that the claim should have been brought within the time period
proscribed by FIRREA. During that five-year time period, the loan was clearly an asset of a failed
depository institution to which FIRREA's administrative claims procedure and Section 1821(d)(13)(D)
were applicable, yet the creditor did not file a claim with the RTC. *Id.* at 1263. Thus, the court refused to
allow the transfer of the asset (5 years later) to revitalize the creditor's claim that was previously barred.
the Debtors' Deposits were not held by the FDIC beyond the applicable deadline. Had that been the case,
the Debtors' claim in the DC Action related to their Deposits would not have been prophylactic in nature.
Unlike the plaintiffs in *Oakwood, Lake Forest Park,* and *Disibio,* the Debtors are asserting claims against
JPMC, primarily, because it expressly assumed their deposits and because the Bankruptcy Code provides
for claims against subsequent transferees, not because the Debtors missed FIRREA's deadline or are
unhappy with the prospects of receivership recovery.

such institutions"). Thus, the 5-page *American National* decision was rendered in a jurisdiction where *Rosa* does not control, and the court's reasoning, in any event, failed to address the key consideration that drove the Bankruptcy Court to reach its correct determination that Section 1821(d)(13)(D) is not applicable to the claims at issue.

The Appellants' arguments ultimately rest on the false premise that the Debtors' claims against JPMC before the Bankruptcy Court are identical to their claims against the FDIC in the DC Action. (FDIC Br. at 12.) The Appellants are wrong. The Debtors' claims for their Deposits as assumed by JPMC stand in stark contrast to the proof of claim underlying the DC Action, which was expressly prophylactic in nature.[17] Similarly, the Debtors' avoidance actions are distinct claims as provided by the Bankruptcy Code which provides the Debtors with claims against initial transferees (in this case, WMB) and distinct claims against subsequent transferees (here, JPMC). *See* 11 U.S.C. § 550 (providing for recovery by transferor from "any immediate or mediate transferee of such initial transferee"). Furthermore, as was central to the holding in *Rosa*, the Debtors' claims here are against a successor bank and, unlike its claims in the DC Action, are not against the FDIC. It is plainly not the case that the Debtors have "dressed up" their claims so as to assert them against JPMC. As the Bankruptcy Court recognized, the DC Action is distinct from the Adversary Proceedings, and there is nothing in FIRREA that precludes the Debtors from seeking to recover estate assets from a third-party bank.

---

[17]    The Appellants' understanding of Section 1821(d)(13)(D), even if it were correct, would be entirely irrelevant to the Deposit claims underlying the Turnover Action. Indeed, it appears to be Appellants' position that the FIRREA jurisdictional bar extends for all time to assets that were ever in receivership. As discussed, that is directly contrary to *Rosa* and *Hudson* (and to basic logic). But even if Appellants were correct, the great majority of deposit liabilities at issue in the Turnover Action (> 92%) *never were in receivership*. Indeed, the Debtors are seeking payment of their own Deposits, which are now held in accounts that JPMC administers as successor to WMB and WMB fsb. Thus, the Debtors' claims are not against a depository institution in receivership, and, with respect to the Deposit claims underlying the Turnover Action, those claims do not even involve funds that were *ever* in receivership.

II. **The Appellants' Purported "Plain Language" Reading of Section 1821(d)(13)(D) Has Been Rejected by the Third Circuit and is Unworkable**

A. **The Appellants' Interpretation of Section 1821(d)(13)(D) is in Direct Conflict with the Third Circuit's Interpretation of the Same Provision**

Unable to avoid the holding in *Rosa* as reaffirmed by *Hudson*, the Appellants ask this Court to ignore or discard the Third Circuit's analysis and instead adopt *their* interpretation of a purported "plain language" reading of Section 1821(d)(13)(D). It is not surprising, given the holdings in *Rosa* and *Hudson*, that the Appellants' proposed "plain reading" cannot be sustained. Section 1821(d)(13)(D)(i) provides that, "[e]xcept as otherwise provided . . . no court shall have jurisdiction over – (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver." According to the Appellants, this provision applies here because the Debtors are seeking to recover assets that "*were* the property of WMB." (JPMC Brief at 9 (emphasis added).) It is not difficult to see JPMC's sleight of hand – Section 1821(d)(13)(D)(i) does not bar claims concerning assets formerly in receivership; rather, it bars claims seeking "payment from," or a determination of rights with respect to, the "assets of" an institution *in receivership*. Thus, as the *Rosa* Court explained in its own "literal"[18] interpretation of Section 1821(d)(13)(D)(i), "the issue . . . is whether, at the time the case came before the district court, RTC had been appointed receiver of the [defendant] institutions." *Rosa,* 938 F.2d at 392-93. The Debtors' claims in this action are against JPMC, which is not and never has been an institution in

---

[18]    *See Hudson,* 43 F.3d at 847 n.10 ("in *Rosa* we construed § 1821(d)(13)(D) of FIRREA literally").

receivership, and Section 1821(d)(13)(D)(i), according to its plain terms, does not bar this action.[19]

The Appellants' interpretation of the remaining subsection of Section 1821(d)(13)(D) is also derailed by Third Circuit precedent. Section 1821(d)(13)(D)(ii) applies to claims "relating to any act or omission of such institution [*i.e.*, an institution in receivership] or the [FDIC] as receiver." As discussed, *supra*, the Third Circuit interpreted this provision in *Rosa* in relation to claims seeking monetary damages from an assuming bank, which is exactly the nature of the Debtors' claims here. *See Rosa*, 938 F.2d at 394. Furthermore, the Court addressed the "relating to" language that the Appellants rely upon, and specifically interpreted that language "to refer to claims against the very institution whose acts are challenged, which must be an institution for which RTC has been appointed receiver." *Id.* The Appellants ignore this discussion in *Rosa*, which is plainly dispositive, and attempt instead to distinguish *Rosa* on its facts by arguing that the Debtors' claims here relate to the P&A Agreement and, therefore, to the acts and omissions of the FDIC. In *Rosa*, however, there were no less than *two* purchase and assumption transactions to which the RTC was party, *id.* at 388, 390, and the RTC assumed the failed bank's pension plan at least once. *Id.* at 389. Still, the Third Circuit held the "acts or omissions" prong of Section 1821(d)(13)(D) inapplicable to claims asserted against a successor bank relating to a pension plan that had been the subject of two purchase and assumption transactions. *Id.* at 394.

---

[19]   Much of the Appellants' cited authority is easily distinguished for the simple reason that those cases, unlike this one, concerned claims against assets that were, at the time those claims were asserted, in receivership. *See National Union Fire Insurance Co. v. City Savings F.S.B.*, 28 F.3d 376 (3d Cir. 1994) (concerning a declaratory judgment action against the receiver of a failed bank, concerning insurance policies that were assets in receivership); *Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 130 (3d Cir. 1991) (concerning attempt of law firm to assert a retaining lien against the assets of its former client, a failed federally-insured bank in receivership); *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995) (suit brought against FDIC and failed bank seeking determination with respect to note held by failed bank).

The Appellant's "plain reading" of Section 1821(d)(13)(D) also cannot be squared with the overall structure of the provision. *See Smith v. United States*, 508 U.S. 223, 234 (U.S. 1993) ("Statutory construction . . . is a holistic endeavor"). As the FDIC observed in its own *Henrichs* brief, Section 1821(d)(13)(D), by its express terms, applies not only to claims concerning assets currently in receivership, but also to claims concerning assets that, "although no longer owned by the receivership, are still owned by the FDIC in its corporate capacity." (B66-67.) Specifically, Section 1821(d)(13)(D)(i) expressly encompasses "assets which the [FDIC] may acquire from itself as [] receiver." As the FDIC explained in its briefing to the Supreme Court, "[i]f section 1821(d)(13)(D) generally applied to assets that the receivership has assigned to others, there would have been no need to specify that the assets assigned to the FDIC in its corporate capacity are also covered." (*Id.*) The Bankruptcy Court made the same observation when it noted that "the last clause of [section 1821(d)(13)(D)(i)]" would be rendered "superfluous" if Section 1821(d)(13)(D) generally applies to assets that are no longer in receivership. (A413.) A statute must of course be read to ensure that all of its provisions have meaning, and FDIC provides no explanation as to why, contrary to its former position, it is now prepared to abandon this fundamental tenet of statutory construction.

One clear indication that the Appellants cannot prevail under the two subsections of Section 1821(d)(13)(D), is the fact that the FDIC seeks to invent a third. According to the FDIC, the Court in *Rosa* "focused exclusively on the first of the three subparts of section 1821(d)(13)(D)." (FDIC Brief at 9.) But Section 1821(d)(13)(D) has only two subparts, Sections 1821(d)(13)(D)(i) and Section 1821(d)(13)(D)(ii), and the Court in *Rosa* expressly analyzed both. Moreover, as discussed, *Rosa* held (and *Hudson* agreed) that those subparts apply only to claims against the receiver of for assets in receivership. The FDIC is therefore left

dancing on the head of a pin, claiming that *Rosa* did not reach the "subprovision" of the first subsection of Section 1821(d)(13)(D) concerning a determination of the assets of a failed bank. But *Rosa* addressed that squarely – claims asserted involving assets acquired by a successor bank, and no longer held in receivership, are not subject to the jurisdictional bar. Indeed, the FDIC ignores that the assets of Rosa Bank III were undeniably the former assets of the failed depository institutions. *Id.* at 388, 390. Thus, whether plaintiffs' claims asserted title to, or payment from, such assets, *Rosa* instructs that Section 1821(d)(13)(D) would not apply.[20]

In sum, the Appellants' proposed "plain reading" is not plain at all. Rather, it represents an effort to twist the meaning and scope of Section 1821(d)(13)(D) in a manner that the Third Circuit has already specifically considered and repeatedly rejected. Simply stated, Section 1821(d)(13)(D) applies to claims against the receiver or for assets in receivership. It does not apply to the Debtors' claims against a successor bank, and the Bankruptcy Court was therefore correct to reject the Appellants' stay motions and to proceed with the important work of resolving the Debtors' estates. *See Katchen v. Landy*, 382 U.S. 323, 328-29 (1966) ("[T]his Court has long recognized that a chief purpose of the bankruptcy laws is "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period.") (citations omitted).

---

[20]     The FDIC's argument, in addition to being entirely contrived, does not even apply to the majority of the Debtors' claims, which are just like the *Rosa* plaintiffs' claims. The Debtors' claims include various preference and fraudulent transfer actions, which, if successful, will require payment from JPMC assets. Similarly, the Debtors' Turnover Action seeks to compel JPMC to pay debts rightfully owed the Debtors, just as the *Rosa* plaintiffs sought to have payment made on pension liabilities. In fact, only two of nineteen the Debtors' claims are declaratory judgment actions.

**B.    The Appellants' "Plain Reading," in Addition to Having Been Rejected by the Third Circuit, Would be Constitutionally Unworkable**

When the Appellants' interpretation of Section 1821(d)(13)(D) is placed in the context of surrounding FIRREA provisions, it becomes apparent that the Appellants are seeking to place the Debtors in an untenable position. A party can only assert claims pursuant to the FIRREA claims process "against a depository institution for which the [FDIC] has been appointed receiver." *See* 12 U.S.C. § 1821(d)(6)(A). Thus, if the Appellants are correct that Section 1821(d)(13)(D) bars the Debtors' claims against JPMC, then the Debtors would be potentially unable to assert those claims anywhere, leaving the Debtors without any opportunity to advance billions of dollars in claims on behalf of their estates. The Third Circuit has already determined that an interpretation of FIRREA that would operate to deprive claimants of all recourse in this manner would be unconstitutional and cannot be sustained. *See National Union*, 28 F.3d at 391.

Courts have recognized that it would raise "troubling" issues to apply Section 1821(d)(13)(D), as the Appellants now propose to do, as a complete bar to a claim that a party would not have been able to pursue in the first instance under FIRREA's administrative claims procedure, 12 U.S.C. § 1821(d)(6). *See Auction Co. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998) (describing as "troubling from a constitutional perspective and certainly not the goal of FIRREA" any interpretation that foreclosed judicial jurisdiction altogether). In *National Union*, the Third Circuit recognized these concerns and made clear that FIRREA cannot be invoked as a complete bar to an otherwise available claim for monetary relief. Indeed, the Court in *National Union* applied Section 1821(d)(13)(D) to an action that plaintiffs could not otherwise advance through FIRREA's administrative claims process, but only because that action sought declaratory relief rather than monetary damages. 28 F.3d at 391. The Court was emphatic that it would reach a different result as to a claim for monetary relief:

> [W]here an action is not *merely declaratory* in nature, but rather asserts a *right to payment*, a complete bar to such a right-to-payment action in administrative proceedings and in courts of law would appear to constitute an unconstitutional deprivation of due process, since the holder of the right to payment would never have an opportunity to be heard concerning property allegedly owed her.

*Id.* (emphasis in original).    Subsequently, further addressing this Constitutional concern in *Hudson*, the Third Circuit expanded its interpretation of the administrative claims procedure to include actions against the FDIC to ensure that Section 1821(d)(13)(D) had a "concurrent scope" to "avoid the possibility . . . that Sec. 1821(d)(13)(D) could become an independent and outright bar of jurisdiction rather than a mere exhaustion requirement if Sec. 1821(d)(13)(D) were to have broader reach than the administrative claims procedures." *Hudson*, 43 F.3d at 849-50 ("It is true that FIRREA is awkwardly written and difficult to interpret . . . [but the] purpose was not to immunize certain claims from review"). Together, *National Union* and *Hudson* make it clear that claims against third parties, which cannot be asserted through FIRREA's administrative claims procedure, cannot be precluded under Section 1821(d)(13)(D).

As discussed, *supra*, the Appellants' interpretation of Section 1821(d)(13)(D) is contrary to the holding in *Rosa*, and it is at odds with the statutory language.    It is also apparent that the Appellant's construction of Section 1821(d)(13)(D) would raise substantial Constitutional concerns, and there is no reason that such an interpretation – particularly an interpretation that the Third Circuit has already rejected in any event – should be adopted here. *See Clark v. Suarez Martinez*, 543 U.S. 371, 381 (2005) ("when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail--whether or not those constitutional problems pertain to the particular litigant before the Court"). At bottom, it would be completely anomalous, inequitable, and no less than a violation of the Debtors'

Constitutional Due Process rights for Section 1821(d)(13)(D) to act as a jurisdictional bar of their claims against JPMC.

### III.    The Appellants' Attempts to Assert Policy Concerns are Misplaced and Incorrect

Ironically, the FDIC cites *Hudson* and *National Union* in support of its assertion that the Bankruptcy Court's holding was in conflict with "the very purpose of the jurisdictional bar." (FDIC Br. at 12.)   Those cases held that claims asserted against the *FDIC* should be treated under FIRREA no differently than claims against the failed depository institution.   Neither case concerned claims against third parties, such as JPMC, and as discussed above, the teaching of those cases is that Section 1821(d)(13)(D) must not function as an outright bar of jurisdiction.[21] The FDIC acknowledges this, citing both cases for the policy-based concern that the *FDIC* should not be made to "defend actions at various locations throughout the country."   (FDIC Br. at 12-13 citing *Hudson*, 43 F.3d at 849; *Nat'l Union*, 28 F.3d at 388 (concern for the FDIC being "burdened by complex and costly litigation").)

The Appellants argue that the Bankruptcy Court's ruling allows a "disappointed receivership claimant" to commence suit against an assuming bank in order "to avoid FIRREA's 'exclusive' claims process" if "they so choose."   (FDIC Br. at 13; JPMC Br. at 19.)   This is blatant misdirection.   First, proceeding against the assuming bank does not implicate the policy

---

[21]    JPMC's citation to *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir. 1991) for the proposition that FIRREA is to be the "exclusive framework within which claims to failed bank assets and relating to acts of the FDIC as receiver are adjudicated" is similarly misplaced.   (JPMC Br. at 17-18.) Unsurprisingly, *Shain*, which cites *Rosa* approvingly, simply refers to the exclusive nature of FIRREA's administrative claims procedure with respect to claims asserted against the failed depository institution or against the receiver itself.   Thus, *Shain* does nothing to alter the Third Circuit's interpretation of Section 1821(d)(13)(D) as to third parties, as set forth in *Rosa* and affirmed in *Hudson* – which was issued subsequent to *Shain*.

concerns raised in *Hudson* and *National Union*.[22] Second, this theoretical "disappointed" claimant would (i) forfeit their rights to their share of proceeds paid into the receivership estate by a purchasing bank and any claim to the FDIC's insurance fund by foregoing to file a claim under FIRREA,[23] and (ii) successfully recover against the assuming bank only if it had cognizable, distinct claims, as the Debtors (or the millions of other former WMB depositors) do here. In reality, what the Appellants are requesting is that this Court find a common law jurisdictional bar that would supplement the specific provisions that Congress saw fit to include within "the extensive framework of FIRREA" for JPMC's benefit solely as a result of its role as party to the P&A Agreement. But Congress has provided no such protection and the Supreme Court has expressly held that there is no federal common law that supplements the specific statutory provisions of FIRREA. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994). JPMC would obviously prefer not to pay the Debtors' Deposits and avoid any liability as a subsequent transferee of avoidable transfers. But JPMC assumed WMB's deposit liabilities and Congress has provided the Debtors with claims against subsequent transferees under Section 550 of the Bankruptcy Code. *See In re First Republicbank Corp.*, 1990 Bankr. LEXIS 2840 (Bankr. N.D.

---

[22]     It is worth noting that the FDIC is often required to litigate claims outside of the FIRREA claims process. *See, e.g., Auction Co. of America v. FDIC*, 141 F.3d 1198, 329 (D.C. Cir. 1998) (holding that FIRREA did not bar company's breach of contract claims against the FDIC); *In re Parker N. Am. Corp.*, 24 F.3d 1145, 1154 (9th Cir. 1994) (allowing preference action by the debtor against RTC because the action is "in substance an action to determine whether the RTC actually has an asset rather than an action seeking a determination of rights with respect to the assets of a depository institution") (citations and internal quotation marks omitted); *In re All Season's Kitchen, Inc.*, 145 B.R. 391 (Bankr. D. Vt. 1992) (holding that debtor's complaint attacking the validity of FDIC's lien was properly before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A)). Thus, it is simply not true, as JPMC and the FDIC suggest, that FIRREA spares the FDIC of the burden of such litigation in all circumstances. Rather, as discussed *supra*, the jurisdictional bar under FIRREA applies only to those claims asserted either against the receiver or for assets in receivership, and that is not the nature of the Debtors' claims here. *Hudson*, 43 F.3d at 852.

[23]     JPMC's attachment listing irrelevant purchase and assumption transactions concerning the speed at which bank assets are usually sold is nothing but noise. Evincing this, JPMC's argument ignores completely proceeds paid into the receivership estate by purchasing banks.

Tex. June 19, 1990) ("Congress can, but has not provided that Section 548 of the Bankruptcy Code not apply to FDIC bank assistance packages given under Section 13(c) of the Federal Deposit Insurance Act."). In sum, it is simply not FIRREA's intent to insulate assuming banks from suit, particularly on claims Congress created and preserved for chapter 11 debtors.[24]

## IV.    The Bankruptcy Court Has Exclusive Jurisdiction over Property of the Debtors' Estates

The Appellants assertions concerning the Bankruptcy Court's jurisdiction over property of the Debtors' estates is largely irrelevant given that Section 1821(d)(13)(D) is inapplicable to the Adversary Proceedings. In any event, it is long settled that "the bankruptcy court has exclusive jurisdiction to deal with the property of the bankruptcy estate." *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 737 (1931). While FIRREA provides the framework for asserting claims to the assets "of a [failed] depository institution," it is federal bankruptcy law that governs the determination and disposition of the Debtors' estate assets. *See* 28 U.S.C. § 1334(e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ."). Significantly, section 1334(e) of the Judicial Code provides the Court, and, therefore, pursuant to standing order of reference, the Bankruptcy Court, with this exclusive jurisdiction over the Debtors' property. The bankruptcy estate is comprised of, in pertinent part, "wherever located and by whomever held . . . all legal and equitable

---

[24]    There is no valid policy concern that assuming banks will no longer be interested in purchasing failed-bank assets from the FDIC. JPMC did not assume WMB's deposit liabilities for any reason other than its own pecuniary interest and it has profited handsomely for its part. Further, the inclusion of an indemnity provision in the P&A Agreement extended by the FDIC to JPMC is evidence that JPMC understood there was a risk of having to defend against claims arising out of the P&A Transaction. *See* P&A Agreement at ¶ 12.1 (A29-31) (providing for indemnification with respect to certain claims by FDIC, as receiver). Neither that knowledge, nor controlling Third Circuit authority such as *Rosa* and *Hudson*, stopped JPMC from pursuing the very profitable P&A Transaction.

interests of the debtor in property as of the commencement of the estate." 11 U.S.C. § 541;

*United States v. Pelullo*, 178 F.3d 196, 203 (3d Cir. 1999). Under these provisions, the

Bankruptcy Court has exclusive jurisdiction to resolve the Debtors' claim to estate assets in the

Adversary Proceedings.[25]

## V.   The Bankruptcy Court's First Filed Determination is Unappealable and Correct in any Event

The FDIC includes a section at the end of its brief in which it argues that the Bankruptcy

Court erred by failing to stay the Adversary Proceedings pursuant to the "first filed" doctrine.[26]

(FDIC Br. at 17.) The Third Circuit has held that the first-filed rule applies only where the

"later-filed case" is "truly duplicative" and "materially on all fours" with the preceding action.

*Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007) (rejecting

"first filed rule" as basis for injunction where neither the parties nor the claims in two actions

were "identical"). Even where these criteria are satisfied, moreover, trial courts "have always

had discretion to retain jurisdiction given appropriate circumstances justifying departure from the

first-filed rule." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) (upholding district

---

[25] The FDIC cites *In re Noletto*, 244 B.R. 845, 854 (Bankr. S.D. Ala. 2000) for the proposition that §1334(e) provides the Bankruptcy Court with only a "limited in rem jurisdiction" that may be "shared" with other courts. (FDIC Br. at 16.) However, *Noletto* acknowledges that Congress vests the Bankruptcy Court in the first instance with "the exclusive power to *control* and distribute property of the estate without *requiring* it to determine the extent of property of the estate." *Id.* at 854. *Noletto* thus contemplates shared jurisdiction where the Bankruptcy Court deems it to be in the estate's interests and has lifted the automatic stay or chosen to abstain in the first instance. *See Id.* at 854 ("This Court alone has granted many motions for relief from stay to liquidate claims in state court and has abstained to allow parties to proceed in state court for the same purpose.").

[26] The FDIC fails to address any of the criteria that need to be satisfied for immediate appeal, and is blatantly asking this Court to revisit the Bankruptcy Court's interlocutory "first filed" ruling without offering the Court any explanation as to why it would be appropriate to do so. In fact, interlocutory appeal is plainly not available with respect to the Bankruptcy Court's highly discretionary decision not to stay the Adversary Proceedings in favor of a separate action elsewhere. *See Gulfstream Aerospace Corp. v. Maycamas Corp.*, 485 U.S. 271, 279 (1988) (holding that collateral order doctrine did not authorize appeal from an order denying a motion to stay or dismiss an action on Colorado River abstention grounds).

court's refusal to apply first-filed rule as basis for dismissing EEOC enforcement actions) (citing cases). For instance, "courts have rejected the rule when the second-filed action had developed further than the initial suit." *Id.* at 976 (citing authority).

The Bankruptcy Court correctly determined that the Adversary Proceedings and the DC Action are not "on all fours," and the first-filed rule therefore does not apply. *Grider*, 500 F.3d at 334 n. 6. The Debtors brought the DC Action as specifically prescribed by statute in order to challenge the FDIC's disallowance of claims asserted against *the WMB receivership*. The Debtors have not asserted any claims in the DC Action seeking to recover their Deposits, and there would be no basis to do so. Furthermore, the Debtors have asserted no claims against JPMC in the DC Action. Rather, the DC Action, as prescribed by statute, challenges the FDIC's disallowance of Plaintiffs' proof of claims against the receivership, and, if successful, will result in money damages against the FDIC, including in its role as WMB's receiver. The Adversary Proceedings are fundamentally different. The Debtors seek turnover of their Deposits and recovery of other assets from JPMC, which now administers those accounts and is a transferee of avoidable transfers.

The first-filed rule does not apply for the added reason that the Adversary Proceedings have "developed further" than the DC Action. *Univ. of Pa.,* 850 F.2d at 972. The DC District Court has only recently permitted JPMC and certain WMB bondholders to intervene, and it has yet to render any other rulings in the case. By contrast, the Turnover Action has survived a motion to dismiss; JPMC has conducted a deposition of the Debtors summary judgment affiant; and the Debtors' summary judgment motion is fully-briefed and scheduled for hearing. The Debtors' counterclaims in the JPMC Adversary Proceeding have also survived a motion to dismiss and discovery demands have already been exchanged. Furthermore, the parties have

repeatedly appeared before the Bankruptcy Court for oral argument on assorted motions, whereas the parties have yet to register a single appearance in the DC Action.

## CONCLUSION

For the reasons discussed, in the event that the Court asserts jurisdiction over these appeals, the Debtors respectfully request that the Court affirm the Bankruptcy Court's orders and dismiss these appeals.

Dated: October 19, 2009
Wilmington, Delaware

**ELLIOTT GREENLEAF**

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
Theodore A. Kittila (DE Bar No. 3963)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: nrl@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com
Email: tak@elliottgreenleaf.com

-and-

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Peter E. Calamari
Michael B. Carlinsky
Susheel Kirpalani
David Elsberg
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Special Litigation and Conflicts Co-Counsel to Washington Mutual, Inc. and WMI Investment Corp*