**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
---------------------------------------------------x
```

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | : | Case No. 08-12229 (MFW) |
| | : | |
| Debtors. | : | Jointly Administered |

```
---------------------------------------------------x
```

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | : | |
| | : | |
| | : | Civil Action No. 1:09-cv-615-GMS |
| and | : | |
| | : | Bk. Adv. No. 09-50551; 09-50934 |
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK, | : | |
| | : | |
| | : | |
| | : | |
| Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP, | : | |
| | : | |
| | : | |
| Appellees. | : | |

```
---------------------------------------------------x
```

## APPENDIX TO ANSWERING BRIEF OF APPELLEE DEBTORS

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
ELLIOTT GREENLEAF
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399

(Additional Counsel Listed on Signature Page)

*Special Litigation and Conflicts Counsel to
Washington Mutual, Inc. and WMI Investment Corp.*

October 19, 2009

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

## **TABLE OF CONTENTS**

**Title**                                                                                    **Page**

Transcript from September 25, 2009 Hearing………………………………...……..…………..B1


Response of Plaintiff JPMorgan Chase Bank, National Association,
to Defendant Federal Deposit Insurance Corporation's Motion to
Stay Adversary Proceeding (D.I. 38, 09-50551)…………………………………...…….....B43


Order Denying (A) Motion of Defendant JPMorgan Chase Bank, N.A.
to Stay and (B) Motion of Intervenor-Defendant Federal Deposit
Insurance Corporation, as Receiver, to Stay or Dismiss Adversary
Proceeding (D.I. 62, 09-50934)……………………..……………….……………………...B51


John Henrichs and Anne Henrichs, Petitioners v. Valley View
Development, *et al.* – Brief for the Federal Deposit Insurance
Corporation in Opposition……..……………….…………………………………………..…..B54

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| WASHINGTON MUTUAL, INC., *et al.*, | | Case No. 08-12229(MFW) |
| | . | (Jointly Administered) |
| Debtors. | . | |
| | . | Sept.25, 2009 (10:32 a.m.) |
| | . | (Wilmington) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | | |
|---|---|---|
| | . | |
| JPMORGAN CHASE BANK, | . | |
| NATIONAL ASSOCIATION, | . | |
| | . | |
| Plaintiff, | . | |
| vs. | . | Adv.Pro.No. 09-50551(MFW) |
| | . | |
| WASHINGTON MUTUAL, INC., and | . | |
| WMI INVESTMENT CORP., | . | |
| | . | |
| Defendant for All Claims, | . | |
| | . | |
| -and- | . | |
| | . | |
| FEDERAL DEPOSIT INSURANCE | . | |
| CORPORATION, | . | |
| | . | |
| Additional Defendant | . | |
| For Interpleader Claim | . | |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | | |
|---|---|---|
| WASHINGTON MUTUAL, INC., and | . | |
| WMI INVESTMENT CORP., | . | |
| | . | |
| Plaintiffs, | . | |
| vs. | . | Adv.Pro.No. 09-50934(MFW) |
| | . | |
| JPMORGAN CHASE BANK, | . | |
| NATIONAL ASSOCIATION, | . | |
| | . | |
| Defendant. | . | |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

FORM FED   PENGAD · 1-800-631-6989 · www.pengad.com

**B1**

2

<u>Appearances</u>:

For the Debtors:                    Brian S. Rosen, Esq.
                                    Richards, Layton & Finger
                                    David Elsberg, Esq.
                                    Quinn Emanuel

For JPMorgan Chase:                 Robert Sachs, Esq.
                                    Sullivan & Cromwell
                                    Adam Landis, Esq.
                                    Landis, Rath & Cobb

For the Unsecured                   Lawrence Shiekman, Esq.
Creditors Committee:                Pepper Hamilton

In *Propria Persona*:               Stephen E. Whittaker, Esq.
                                    Stephen E. Whittaker

For Certain Plan                    Laurie Krepto, Esq.
Participants:                       Jeanne L. Bakker, Esq.
                                    Montgomery, McCracken

Audio Operator:                     Brandon McCarthy

<u>Transcriber</u>:                     Elaine M. Ryan
                                    (302) 683-0221

          Proceedings recorded by electronic sound recording;
           transcript produced by transcription service

B3

3

INDEX

Debtors' Evidence:

| WITNESS: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Craig Klinkhammer | 72 | | | |
| | 145 | 149 | 151 | |

Plan Participants' Evidence:

| | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Geoffrey Olsen | 80 | 92 | 96 | |
| Kari Noomen | 98 | 107 | 118 | 120 |
| | | | 122 | 123 |
| Dotti Jensen | 124 | 131 | | |
| Kevin McDonough | 136 | 142 | 144 | |

| Debtors Exhibits: | Marked | Received |
|---|---|---|
| Copies of 9 Trust Agreements and 10 Plan Agreements | | 72 |
| D-23, D-24, and D-25    Copies of emails | | 135 |

| Plan Participants Exhibits: | Marked | Received |
|---|---|---|
| PP-3 Copy of Email | | 128 |

FORM FED  PENGAD · 1-800-631-6989 · www.pengad.com

1    THE COURT: Good morning.

2    MR. ROSEN: Good morning, Your Honor, and I'm going

3    to get it right this time even though it's a different case.

4    Brian Rosen, Weil, Gotshal & Manges on behalf of Washington

5    Mutual, Inc., and with me today is Mr. Mark Collins from

6    Richards, Layton & Finger.

7    THE COURT: Alright.

8    MR. ROSEN: Thank you, Your Honor.  We have a few

9    matters on the agenda this morning, and as we alerted the

10   Court, based upon an extraneous circumstance, travel, we

11   would like to just switch the order in which we are going to

12   be doing them.  So, the first item we would like to take up,

13   Your Honor, would be the additional item, which is the notice

14   of divestiture, and with was the JPMorgan request to talk to

15   the Court.

16   THE COURT: Okay.

17   MR. SACHS: Yes, I'm up, Your Honor.  Good morning.

18   Robert Sachs from Sullivan & Cromwell on behalf of JPMorgan

19   Chase.  Your Honor, we have filed a notice before the Court

20   because we don't believe that this is a matter that requires

21   a decision but simply given the parties have a disagreement

22   on the issue, an indication from the Court that it is

23   divested of jurisdiction while the appeal is pending from

24   Your Honor's orders denying the FDIC's and JPMorgan Chase's

25   motions to dismiss and to stay the adversary proceedings

**B6**

1   under the exclusive claims process under FIRREA.  We are

2   taken to task in the opposition for delaying in bringing this

3   to Your Honor.  For that I apologize.  We, frankly, did not

4   focus on this at the time of the first matter following the

5   initial appeal.  We did focus upon it, and when we focused it

6   upon it brought it immediately to Your Honor's attention.  I

7   would note, however, that subject matter jurisdiction of

8   which this is, is not waive-able and it is all parties'

9   responsibility to alert the Court when there are questions

10  about the Court's subject matter jurisdiction, and that's

11  what this is.  The rule that is applicable is very

12  straightforward, though there's obviously a fundamental

13  dispute as to its application here.  The filing of a notice

14  of appeal divests the Court of jurisdiction over all matters

15  that are encompassed by the appeal.  In this case, we and the

16  FDIC both filed timely notices of appeal.  There's no dispute

17  among the parties.  One of the few matters that's not

18  disputed is that all the matters encompassed by these

19  adversary proceedings are in fact encompassed by the appeal.

20  So if the rule were applicable, it would encompass the entire

21  adversary proceedings pending either the dismissal of the

22  appeals or their disposition by the District Court and/or the

23  Third Circuit, in this case.  There's an exception to this

24  rule.  It's a specific exception and the controlling Third

25  Circuit case is Lepo, and it says, "You don't have to honor

**B7**

FORM FED  ⊛  PENGAD • 1-800-631-6989 • www.pengad.com

1  the divestiture of jurisdiction.  There is no divestiture."

2  It' not an honor, there is no divestiture of jurisdiction in

3  a situation where the Court finds by specific written factual

4  findings that an appeal is frivolous.  That is the exception

5  to that rule.

6        THE COURT: Well, except in bankruptcy cases, the

7  case can proceed while only the matter that is on appeal is -

8        MR. SACHS: We're not suggesting that the Court is

9  divested of jurisdiction over the bankruptcy case.  We're

10  discussing specifically the adversary proceedings, which are

11  adjudicated proceedings between parties.  So in this

12  particular case we're dealing only with those.  Your Honor

13  has complete jurisdiction to continue to adjudicate this

14  bankruptcy.  The issue that you do not have jurisdiction,

15  given the pendency of the appeal, and we've cited bankruptcy

16  cases and adversary proceedings to that effect.  Sacred

17  Heart, for example, is one, and there are numerous other ones

18  cited in our - which is a case that went up in Pennsylvania

19  and was affirmed by the Third Circuit, is one involving

20  adversary proceedings.  It doesn't matter whether the case is

21  pending before the Bankruptcy Court or the District Court,

22  the application of the rule is the same.  It doesn't apply to

23  your case.

24        THE COURT: Does it apply where an appeal is taken

25  of a motion to dismiss the adversary?  Is that interlocutory?

**B8**

1          MR. SACHS: No, it is a collateral order appeal,

2     Your Honor, and I'm going to address that very specifically

3     right now.   Specifically, the rule is, it does apply to

4     collateral order appeals and the cases we have cited to you

5     do involve collateral order appeals.   The _Sacred Heart_ case,

6     for example, is a collateral order appeal.   _Lepo_ is a

7     collateral order appeal.   The Supreme Court has found in

8     these cases and the Third Circuit multiple times has found

9     that the same rule applies when you're dealing with a

10    collateral order appeal as it applies to an appeal from a

11    final judgment.   Indeed, that's what the whole dispute is

12    about, that's what all these cases exist to find, and indeed,

13    Your Honor, courts have found that actions taken by a

14    district court after divestiture of jurisdiction during a

15    collateral order of appeal are nullities, and even where they

16    uphold the Court below, they rule that the actions taken have

17    to be undone even though it's almost a - it's silly in a

18    sense, because the case is going to proceed, but that's the

19    rule.   That's what the Tenth Circuit found in the _Stewart_

20    case, for example, Your Honor, that we cited to you.    But,

21    Your Honor, the rule is applicable to collateral order

22    appeals for all matters encompassed within the appeal, and

23    the distinction, I would say, between a final appeal and a

24    collateral order appeal is obviously a final appeal

25    encompasses the entire case.   In some cases a collateral

**B9**

1  order appeal might not encompass the entire case, it's

2  conceivable, but in this case there is no dispute it

3  encompasses the entire case here.  So, looking here at this,

4  there is a controlling case in the Third Circuit, Your Honor,

5  on this issue, and that is the Praxis case, and surprisingly

6  enough, the debtors do not cite to Your Honor, they do not

7  cite, they do not address the Praxis case in any way, shape,

8  or form.  They give you a generalized argument about why this

9  should not be considered a collateral order appeal, and I

10  would suggest, first of all, they're arguing about the merits

11  not whether our collateral appeal is frivolous, which is the

12  only inquiry here, whether you agree or disagree as to how

13  that should come out.  But in this case, Praxis, a Third

14  Circuit case, has already determined that appeals given

15  FIRREA's importance, the collateral appeals from a refusal to

16  abide by FIRREA's mandatory terms are properly treated as a

17  collateral order.  It's not even mentioned, distinguished, or

18  referenced in any way, shape, or form in the brief filed by

19  the debtors, but it's dispositive here as to whether this is

20  a proper collateral order appeal, but it's at least

21  dispositive as to whether we have a good faith basis to take

22  a collateral order appeal and therefore is inconsistent with

23  any finding that our appeal is in bad faith, taken

24  objectively, frivolous, no reasonable lawyer could believe we

25  have a basis for filing a collateral order appeal, et cetera,

1    which is the scope of the Court's inquiry here.  <u>Praxis</u>, the

2    Third Circuit stresses the importance of FIRREA, and I would

3    add that there's a Tenth Circuit case that comes to exactly

4    the same conclusion as <u>Praxis</u>, the <u>Mark Development</u> case.  We

5    didn't cite it to Your Honor.  Didn't think it was necessary

6    given citing <u>Praxis</u> from the Third Circuit, but the Tenth

7    Circuit, 992 F2d 1503 comes to the same conclusion about the

8    importance of FIRREA in taking a collateral order appeal from

9    a refusal to abide by the mandatory terms of FIRREA.  Now, we

10   understand Your Honor disagrees with us on the underlying

11   merits –

12          THE COURT: Yes.

13          MR. SACHS:  – and I'll address those in a minute.  I

14   don't believe Your Honor would conclude that our position on

15   that is frivolous.  You may disagree, and we respectfully

16   disagree with the conclusion that you reached, but that's

17   litigation.  Sometimes you win and sometimes you lose, and

18   courts agree with you sometimes and they disagree with you

19   other times, but that doesn't mean that we are frivolous in

20   advocating our client's position and indeed the FDIC's

21   position that this matter is properly subject to FIRREA and

22   that FIRREA does apply to claims against third party buyers

23   from the receiver that involve the assets of the receivership

24   estate or the actions of the receiver, which the claims here,

25   in our view, do.

1            THE COURT: Have you filed a notice for leave to

2    appeal or do you feel that the notice of appeal is

3    sufficient?

4            MR. SACHS: We filed both.  We filed a notice of

5    appeal of right as a collateral appeal.  We have

6    alternatively sought leave to appeal.  So, the notice of

7    appeal in this case is the act that divests the Court of

8    jurisdiction.  We understand the Court of Appeal, or in this

9    case, the District Court could disagree with us on that

10   issue, but our position is not frivolous.  This isn't a case,

11   like many of the ones they cite that say a notice of appeal

12   is a nullity where they cite a case where you have to appeal

13   within 30 days and the appeal is filed in 50 days.

14   Objectively, that's a nullity or where you cannot appeal

15   until after something happens and they appeal at a different

16   point in time or they forget to file the appeal or they file

17   the wrong paper, objective acts.  The claim here, this is a

18   subjective issue.  Does this appeal fit within the collateral

19   order appeal doctrine?  If it does, this Court is divested of

20   jurisdiction to entertain matters encompassed by the appeal

21   pending that adjudication, and as I said, the sole issue for

22   this Court is, Is our filing of a notice of appeal under the

23   collateral order doctrine frivolous?  Not that you disagree

24   with it, not how you would decide it, not how some other

25   court would, but is it frivolous, and if you look at Praxis,

**B12**

1  the importance that the Third Circuit ascribes to FIRREA and

2  that was a collateral appeal, Your Honor of far less

3  significance than this one.  That was one as to whether the

4  receiver, in that case the RTC as opposed to the FDIC, was

5  entitled to a 90-day stay as opposed to only the 45-day stay

6  that the Court granted to it, and the Third Circuit went

7  through the critical importance of FIRREA's comprehensive

8  claims process, identified FIRREA as the most sweeping thrift

9  reform legislation in the nation's history, identified the

10  cost and importance of litigation claim handling to the

11  FIRREA comprehensive scheme, and the expressed limits imposed

12  upon parties in attempting to circumvent the exclusive claims

13  process.  That's precisely what this appeal involves.  Again,

14  the substance of that is not before us now.  You've already

15  ruled against us on that.  I don't expect you to agree with

16  me today, but the question of whether we can appeal it is one

17  that Praxis makes very clear that in the Third Circuit this

18  is properly the subject of a collateral order of appeal and

19  the filing of that document divests the Court of

20  jurisdiction.  That's not a surprising result, Your Honor.

21  The debtors cite a lot of Supreme Court cases going into the

22  narrowness of the collateral appeal doctrine, why it's

23  narrow, avoiding the need for piecemeal appeals.  That's been

24  considered by the Third Circuit in looking at FIRREA and the

25  importance of that, but if you look at the case they rely on

1     most, is <u>Lorem</u>, a case that is subsequently discussed by the

2     Supreme Court again in <u>Digital Equipment</u> and the reason that

3     the result in <u>Praxis</u> in the Third Circuit is not surprising

4     is sort of highlighted by the Supreme Court in <u>Digital</u>

5     <u>Equipment</u>, and it's the distinction between the public

6     importance of a statutory or constitutional right as opposed

7     to a private contractual right, and the Court in <u>Digital</u>

8     <u>Equipment</u>, Supreme Court, says, "While there is no need to

9     decide here that a privately conferred right could never

10    supply the basis of a collateral order appeal, but there are

11    surely sound reasons for testing such rights differently than

12    those originating in the constitution or statutes.  When a

13    policy is embodied in a constitutional or statutory provision

14    entitling a party to immunity from suit, a rare form of

15    protection, there is little room for the judiciary to gainsay

16    it's, quote, 'importance', close quote."  And this is a case

17    where, as again, the Third Circuit has spoken on the

18    importance of the comprehensive litigation scheme in FIRREA

19    and the permissibility of a collateral appeal from a decision

20    by a court that addresses whether the court has properly

21    applied that scheme.  Now, again, it's not a unique case.

22    These arise most in the case of immunities from suit and

23    double jeopardy.  I mean it's clear that those are proper

24    collateral appeals, but the original case on the collateral

25    order doctrine appeal, <u>Cohen</u> didn't involve that kind of a

1   case, it involved an appeal of a court not to require the

2   plaintiff in a derivative action to post costs.  We have

3   Praxis.   Moses Cohen is another case.  Mark Development.   So,

4   while this does arise most in the case of absolute

5   constitutional and statutory immunities, in many ways this is

6   like that, but again, the Third Circuit has looked at this

7   issue, spoken on it, and therefore, under the frivolous test,

8   which is the one Your Honor is applying here, we suggest that

9   you cannot properly find that this is frivolous.  Now, let's

10  go spend just a couple of seconds on the substance of the

11  appeal.  The debtors spend most of their time addressing that

12  this is an improper collateral order appeal.  They spend a

13  little time addressing the substance of the appeal, but I

14  would respectfully suggest that again, Your Honor's already

15  disagreed with us on the substance, but you could not

16  properly characterize our position as frivolous on this

17  particular issue.  Indeed, we submitted that to you in a case

18  involving this very set of players here, brought against

19  JPMorgan Chase in Texas.  The Court had Your Honor's

20  decision.  They had before them that decision.  It was

21  submitted in that case by the plaintiffs, reached an entirely

22  contrary decision.  Said, "Absolutely this applies to claims

23  against third parties who purchase from the receiver because

24  the claim is one that's essentially attacking the acts of the

25  receiver."  It's exactly the same as what happened here, and

1  in that case the Court sent the case to D.C. where that is

2  the exclusive forum to do it because that is where the claims

3  process is now lodged.  Your Honor, in light of that, it's

4  directly contrary to Your Honor's decision.  There's no basis

5  to conclude - you'd have to conclude Judge Hoyt was off his

6  rocker and he was frivolous too and for that decision

7  effectively -

8          THE COURT: Well, he was not dealing with bankruptcy

9  jurisdiction, which has the exclusive jurisdiction over

10 property of the estate, a different issue and the basis for

11 my decision is different.

12         MR. SACHS: Well, no, Your Honor, you ruled, and

13 with all due respect, your ruling was - I understand your

14 basis for your ruling.  You were driven by the Bankruptcy

15 Court's jurisdiction, and we suggest that that can't override

16 FIRREA but what you did expressly rule was that FIRREA's

17 jurisdictional provisions do not apply to claims against

18 third parties.  They only apply to the receiver.  Judge Hoyt

19 reached an absolutely contrary decision.  The case in Texas

20 was brought against JPMorgan Chase just like the debtors'

21 claims here were brought against JPMorgan Chase as the

22 purchaser from the receiver.  Judge Hoyt said, "You cannot

23 avoid FIRREA's jurisdictional provisions that apply to claims

24 involving the assets of a receivership estate or the acts of

25 the receiver by suing the purchaser from the receiver."  It's

1    directly contrary to Your Honor's ruling even though I

2    understand your ruling may have been motivated by the scope

3    of Bankruptcy Court jurisdiction over the property of the

4    debtor, and there's a direct conflict there, but Judge Hoyt

5    found exactly the opposite, and, Your Honor, there are cases

6    we cited to you before.  The Sixth Circuit in <u>The Village of</u>

7    <u>Oakwood</u>.  There's a Ninth Circuit case, the Eleventh Circuit

8    case.  They reached a conclusion that is different than Your

9    Honor's that FIRREA's bar applies to, in certain

10   circumstances, claims against third party purchasers from the

11   receiver, and while I'm not asking you today to reconsider

12   your decision or agree with me, you've disagreed with us

13   twice, I understand, that's something that, as you

14   understand, we intend to pursue on appeal, but I am saying

15   that you cannot determine that our position is frivolous,

16   i.e., without any reasonable good faith basis, and with

17   respect to the divestiture of jurisdiction in this particular

18   case, that's the limits of the Court's inquiry.  So, I

19   understand that the debtors don't like this result.  They

20   think it's gamesmanship.  They think we're playing fast and

21   loose.  They think it's tactical.  We think their filing of

22   the claims in this Court while they are simultaneously

23   pursuing their appeal from the denial of the very same claims

24   in the District of Columbia, is tactical.  Litigation is on

25   its own, each party pursuing their own interests with

**B17**

16

1    reasonable arguments to their client's end, but this is a

2    rule.  It is a clear rule.  It is a jurisdictional rule.  It

3    is not a discretionary rule, and we respectfully ask Your

4    Honor to simply state that you regard yourself as divested of

5    jurisdiction to entertain matters in the adversary proceeding

6    until these appeals are either dismissed as improper under

7    the collateral order doctrine or are disposed of on their

8    merits by the District Court and/or the Third Circuit.

9              THE COURT: Thank you.

10             MR. SACHS: Thank you.

11             MR. ELSBERG: Good morning, Your Honor.  David

12   Elsberg, Quinn Emanuel, for the debtors.  Just to put this in

13   context, JPMC made motions asking Your Honor to dismiss or

14   stay these proceedings, and Your Honor considered it and

15   rejected it and said, No, these cases will go forward.  The

16   cases went forward.  They filed notices of appeal.  Two

17   months have passed since they filed the notices of appeal.

18   In that time they've asked for a deposition and taken it.

19   They've negotiated discovery.  They've served motions.

20   They've served discovery.  They argued a motion to dismiss,

21   which they then lost.  After all this happened over the

22   course of the two months, after the filing of the notice of

23   appeal, they turn around and essentially what they're saying

24   is, Guess what, Your Honor, that motion, that relief that we

25   asked for and that you rejected, we're giving it to

1   ourselves, and the way we're doing it is we're simply going

2   to fill out a piece of paper that basically says, Dear Your

3   Honor: This case must stop even though you decided it should

4   go forward.   This is gamesmanship and it shouldn't be

5   tolerated.   Now, Your Honor, there's a fundamental premise

6   which is flawed, which is inherent in their argument, and the

7   premise is that all that matters – I think the language that

8   was used was, "The limit of the inquiry is whether the appeal

9   is frivolous."   The appeal is in fact frivolous on the

10   merits, and I'll get to that, but you don't even need to get

11   to that issue.   Their brief and the presentation today,

12   whether deliberately or not, ignores the controlling legal

13   standard and a threshold issue that they cannot get over in

14   order for them to prevail.   The Third Circuit has said, very

15   clearly along with other circuits, that a case must proceed

16   if the notice of appeal or the putative notice of appeal is

17   of an order that is actually not appealable.   If it's not

18   appealable, you can't just fill out a piece of paper and say,

19   the show stops. You can be in the middle of trial.   I filled

20   out a piece of paper.   Clearly this is not an appealable

21   order, but I unilaterally get to stop the case.   That's now

22   how it works.   If you look at <u>Venon</u>, it's a Third Circuit

23   decision.   It discussed on page 8 of our brief.   What the

24   Third Circuit said there is, "An appeal from a non-appealable

25   judgment or order is sometimes characterized as a nullity."

**B19**

1  And then it goes on to specifically say, "The jurisdiction of

2  the lower court is not lost by the taking of an appeal from

3  an order or judgment which is not appealable." Lepo, a

4  decision that they cite, Third Circuit, on page 8 and 17 of

5  our brief, we discuss it, it likewise says, "A notice of

6  appeal from a non-appealable order does not divest

7  jurisdiction." And by the way, it says that while

8  acknowledging the general rule that a trial court is divested

9  of jurisdiction over a case where a notice of appeal is filed

10  from an order that actually is appealable. The Third Circuit

11  in Lepo, again the case that I'm not sure why they cite, but

12  they did, Lepo relied on a case and quoted approvingly

13  Hitchman from the Fifth Circuit which says the same thing.

14  Ruby from the Second Circuit says the same thing. These are

15  all on page 8 of our brief, and what these cases discuss on

16  page 8 of our brief make clear is that it is this Court's

17  function to look at whether or not the order that is

18  supposedly being appealed actually is appealable, and if it's

19  not appealable, then the show goes on. It's not so easy,

20  otherwise, it would be too easy to abuse this doctrine which

21  is supposed to be a narrow and limited exception, it would

22  come wide open for abuse. Anybody could stop the show

23  whenever they want to. In face Lepo, by the way, I'll get

24  back to this later, but there was a statement made in the

25  briefs and today that, Sorry, Your Honor, we didn't mention

**B20**

 1    it before, we went forward with depositions, we argued the

 2    motion to dismiss, we lost, maybe we should have brought it

 3    up but it's not waive-able.  If you look at Lepo, what Lepo

 4    says is that the divestiture rule is a, quote, "Judge made

 5    rule.  There is not a ritualistic application of it.  A

 6    reasoned choice should be made," I'm quoting, "and that a

 7    contrary rule would leave the Court powerless to prevent

 8    dilatory tactics and disruption."  And that was said in a

 9    case, by the way, and again I'll get to this later, where the

10    order at issue was one that could have been deemed as a

11    collateral order unlike here where you don't even get passed

12    square one.  It is not an appealable order.  It's not a

13    collateral order.  So you don't even get to assessing the

14    merits of the appeal.  So, the question is, the threshold

15    question is, Is this an appealable order?  Absolutely, this

16    is not an appealable order.  The dispute here, Your Honor, is

17    about forum.  What JPMorgan has said over and over again is

18    that this case should be litigated in D.C., and we cite on

19    page 13 of our brief in footnote 7, statements over and over

20    and over again about how it should be, it must be the right

21    place for this litigation to move forward in D.C.  What

22    they're not saying is that they have a right to be free from

23    trial for even a day, for even a second.  What they're

24    saying is, it should move forward, move forward now in D.C.

25    The United States Supreme Court in Lauro Lines (phonetical),

FORM FED  ⊛  PENGAD • 1-800-631-6989 • www.pengad.com

1  Your Honor, has directly and precisely addressed exactly that

2  type of argument.  What happened there is, there was the

3  argument that there was a forum selection clause which said

4  that a case can be heard only in Italy, and the Court denied

5  the motion, and on appeal the argument was, Isn't this a

6  collateral order?  Shouldn't the show stop because the right

7  would be destroyed if it moves forward in the wrong forum,

8  and Lauro Lines said, and I'm quoting, that there's no

9  collateral order where, quote, "The lower court has denied a

10  claim not that the defendant has a right not to be sued at

11  all, but that the suit against the defendant is not properly

12  before the particular court because it lacks jurisdiction."

13  That's exactly the type of claim that's being made here, and

14  Lauro Lines, the Supreme Court in a unanimous decision, goes

15  on to say, quote, "The critical question is whether the

16  essence of the claim is a right not to stand trial."  And it

17  gives us examples: qualified immunity or absolute immunity.

18  This is going to become relevant in a minute when we discuss

19  Praxis, Your Honor, and what the Supreme Court also said is,

20  "An entitlement to avoid suit is different in kind from an

21  entitlement to be sued in only a particular forum."  Which

22  again, is exactly the nature of their argument.  Now, Your

23  Honor, in an attempt to get around the very clear holding of

24  Lauro Lines, which is fatal to their argument, we've heard

25  two things.  We've heard, number one, that Praxis supposedly

**B22**

 1  helps them.  I think they only cited this in a footnote,

 2  although we were taken to task by them for not spending lots

 3  and lots of time in every case on their footnotes.  What

 4  Praxis said, Your Honor, is that a right to be free from

 5  claims for 90 days could count as a collateral order, akin to

 6  what Lauro Lines recognized is a different and narrow type of

 7  cases, if it's immunity, if it's double jeopardy, if it's

 8  something saying that for a period of time you can be

 9  completely free from claims to have a breathing room.  That's

10  a different type of case.  The second argument that we heard,

11  that again gets them absolutely nowhere, is we've heard the

12  argument that, Well, you know, Your Honor, this is about a

13  statute.  This is more important than just a forum selection

14  clause, but if you look at the concurrents in Lauro Lines,

15  what Justice Scalia says clearly is that we have made the

16  same judgment, and I'm quoting, we've applied the same rule,

17  that it's not a collateral order, quote, "When the right not

18  to be tried in a particular court has been created through

19  jurisdictional limitations established by Congress, a

20  statute, or by international treaty."  So, the holding of

21  Lauro Lines applies regardless of whether it's a contract

22  selection clause, a treaty selects it , a statute selects it.

23  So, they don't get past square one and again, their brief in

24  the presentation today, they had said it explicitly and

25  completely incorrectly that the inquiry is limited only to

FORM FED · PENGAD · 1-800-631-6989 · www.pengad.com

1  whether the appeal is frivolous.  Not so.  There is a

2  threshold inquiry, is this an appealable order.  If it is

3  not, what the cases have said including in the Third Circuit,

4  is the so-called appeal is a nullity, and a nullity cannot

5  and does not divest this Court of jurisdiction.  Again,

6  otherwise, this would be wide open for abuse rather than a

7  narrow exception, and I would just note, Your Honor, by the

8  way, that the Third Circuit in Hudson specifically called the

9  FIRREA provision that they're relying on, a quote, "venue

10  provision".  So, just like Lauro Lines, we're talking about a

11  venue or forum provision.  So, let's just put a bookmark

12  there for a second.  That's the key question and they try to

13  hide from Lauro Lines and they can't get past that.  Even if

14  they could get past that, and they can't, only then does Your

15  Honor need to get to the question of assessing the merits of

16  the appeal and whether on the merits it's frivolous, and we

17  believe, Your Honor, that the merits of their appeal don't

18  exist, that it is merit-less, and I believe Your Honor said

19  on the transcript last time that the result was dictated by

20  controlling Third Circuit precedent, Rosa and Hudson.  Now in

21  Lepo, what the Third Circuit said, again, I mentioned this

22  earlier, is that the divestiture rule is a judge-made rule

23  and it should be applied, not ritualistically but with a

24  reasoned choice, and there what you have is an appeal that's

25  frivolous, an appeal that clearly is merit-less, and you can

1   see which way it's going to be decided.  Here it's the Third

2   Circuit that decided <u>Rosa</u> and <u>Hudson</u>, that's going to be

3   receiving this, and I think we know how that's going to turn

4   out, and if there has been delay, if those two things are

5   present, Your Honor, you do have a choice.  This is not a

6   situation, subject matter never waive able.  Delay does mater

7   and the merits and the weakness or absence of the merits does

8   matter, and that's exactly the situation here, and in terms

9   of the Texas case, this five-page decision, that decision

10  does not cite <u>Rosa</u>, it doesn't analyze the <u>Rosa</u> much less

11  does it even mention or analyze Your Honor's decision, and

12  whether or not in this circuit there's any merit or whether

13  or not an appeal is frivolous in this circuit is controlled

14  by what the Third Circuit Court of Appeals has said.  This

15  Court is bound by what the Third Circuit has said not by what

16  a judge in Texas has said, and in our brief we discuss also

17  why we believe that decision doesn't get them anywhere on the

18  analysis.  And just before I conclude, Your Honor, I would

19  just like to point out that JPMorgan's brief when they're

20  making points, supposedly in support of the idea that this

21  could be qualified as a collateral order and that therefore

22  they can get past square one, the cases that they cite do not

23  actually support what they're saying.  These are cases that

24  deal with completely different situations.  So they're the

25  immunity cases that don't help them here.  <u>Griggs</u> is one of

1  the first cases that they cite.  What Griggs says is, quote,

2  "A premature notice of appeal shall have no effect and will

3  be a nullity."  That's one of the leading cases they rely on

4  here.  We agree with that statement, a premature appeal is a

5  nullity and has no effect.  They also cite - Paragraph (13)

6  of their submission is the paragraph where they say, You know

7  what, outside the context of immunity, outside of the right

8  to be free from suit, there are cases that show that just

9  like here, Your Honor, you can say, you should view this as a

10  collateral order, but those cases don't come close to

11  supporting that.  So, for example, the Ehleiter case, that's

12  E-h-l-e-I-t-e-r, I'm not sure how to pronounce it, in that

13  case what the Court said is that the FAA, the Federal

14  Arbitration Act, gave a specific statutory right to bring an

15  appeal.  They never got to the question of whether there

16  could be a collateral order.   To the contrary, Your Honor,

17  in that case it specifically says there is no basis other

18  than the FAA to appeal this.  This could not count as a

19  collateral order.  Similarly, Hallock is quoted in paragraph

20  (13) as supposedly showing that in a situation just like

21  this, it's appropriate to deem it as a collateral order that

22  can be appealed.  Hallock was an immunity case.  Hallock was

23  a case involving 28 U.S.C. 2676, which states, quote, "There

24  can be a, quote, 'complete bar to any action'."   That's what

25  was at issue there was the question of whether there could be

1  a complete bar to any action.  Then there's the <u>Ariove</u>

2  (phonetical) case where the collateral order doctrine isn't

3  even mentioned much less was there any argument there about

4  the proper forum in which a case should proceed.  By contrast

5  here again, the precise nature of the argument, and again, if

6  you look in our brief on page, I believe, 17 of our brief -

7  sorry, page 13 of our brief, footnote 7, over and over and

8  over again JPMorgan has made clear what is the disputed

9  issue.  It's an order where Your Honor said, this case should

10  proceed here, not in D.C. where you, JPMC, wanted to proceed.

11  That's the issue.  The issue is not the issue of whether or

12  not they're to be completely free from trial, and again, in

13  <u>Lorro</u>, the U.S. Supreme Court made clear, that is exactly the

14  kind of case that should proceed, and that's exactly the kind

15  of case that should not stop the show, and as this Court, as

16  the Third Circuit has said in <u>Lepo</u> and in <u>Venon</u>, when it's a

17  non-appealable order like this one is here under <u>Lauro Lines</u>,

18  the show must go on.  Thank you, Your Honor.

19          THE COURT:  Thank you.

20          MR. SHIEKMAN:  Good morning, Your Honor.  Larry

21  Shiekman from Pepper Hamilton, appearing for the Unsecured

22  Creditors Committee.  We filed a joinder in the debtors'

23  paper, and I just wanted to add a couple of points, if I

24  might.  One of them is, I searched the Bankruptcy Rules in

25  vain for a provision that authorized the filing of something

1  called a notice, and I wasn't really sure what JPMorgan

2  wanted the Court to do other than to look at it and say,

3  Well, thank you, I've noticed it, and now I can put it under

4  my desk.  So there's a certain brashness, I think, about the

5  way in which they're trying to proceed here, and if they

6  could have come up with a procedural device that would have

7  given them a third opportunity to argue the same issue to the

8  Court, I'm sure they would have done that, and failing to

9  have found one, they now have called it something which the

10  rules don't describe.  I think beyond that, I just want to

11  echo a point that Mr. Stratton, my partner, made in an

12  earlier iteration of this argument which is, these two

13  adversary proceedings involve virtually all of the assets of

14  this estate, and the prejudice to the creditors by simply

15  having the Court stand down, having these two adversary

16  proceedings await the outcome of either Judge Sleet or the

17  application they've made to the Third Circuit will continue

18  to prejudice the creditors by causing the occurrence of

19  additional costs and imposing delay on the final disposition

20  of this estate.  So we ask that you do what you should do,

21  which is to ignore the notice and let the District Court do

22  whatever it's going to do in response to whatever JPMorgan

23  Chase may dream up next.  Thank you.

24         THE COURT: Thank you.  Reply?

25         MR. SACHS: Again, Robert Sachs on behalf of

1   JPMorgan Chase.  Let me address a few points, Your Honor.

2   First, the point made by the debtors that suggests that Your

3   Honor is permitted to make a wholesale, independent

4   determination as to whether you believe that our appeal is

5   properly a collateral order appeal.  The law is precisely to

6   the contrary.  That is completely incorrect, and I'd cite you

7   simply to Lepo.  This is not a case of a facial nullity of

8   something that is untimely filed or on its face does not

9   comply with the rules when you are asking for a subjective

10  determination, the determination that is required of this

11  Court's, from whose order is being appealed, role is very

12  circumscribed, and it's set forth in Lepo, a Third Circuit

13  case.  We hold - and this is a case on the double jeopardy

14  motion.  "We hold that an appeal from the denial of a double

15  jeopardy motion does not divest the District Court of

16  jurisdiction to proceed with the trial if the District Court

17  has found the motion to be frivolous and supported its

18  conclusions by written findings.  Of course, in the absence

19  of a finding that the motion is frivolous, the trial court

20  must suspend its proceedings once the notice of appeal is

21  filed.  In those instances in which it refuses to do so or

22  when its findings are not supported by the record, the

23  concerns of Avni are sufficiently safeguarded by the

24  availability of a stay pursuant to Federal Rules of Appellate

25  Procedure 8 or a writ of mandamus or prohibition under 28

**B29**

1    U.S.C. 1651.  The fact is that the concerns that are

2    expressed by the debtors about dilatory appeals, interfering

3    with proceedings, et cetera, that has been struck by a

4    balance that says, "The Court disposes of those facially

5    frivolous acts on a standard of frivolousness."  Otherwise,

6    the issue of whether something is properly appealed as a

7    collateral order is in the Court reviewing the appeal, in

8    this case either the District Court or the Third Circuit.

9    That's number one.  So they're entirely incorrect, and Your

10   Honor, again Stewart out of the 10th Circuit, another such

11   case, going through exactly the same thing, the Court

12   explained that it is only after the District Court has

13   determined the defendant's appeal to be frivolous or

14   forfeited that the defendant must seek a stay from the Court

15   of Appeals to prevent the trial from proceeding.  Other

16   courts have similarly emphasized the need for a clear and

17   reasoned finding of frivolousness or forfeiture by the

18   District Court in order to prevent the automatic divestiture

19   of jurisdiction.  It is an automatic divestiture of

20   jurisdiction.  The issue of whether you agree or disagree is

21   not the issue before this Court.  That is an issue for the

22   Court of Appeals to the extent they suggest that this is

23   subject to wholesale, independent, we agree, we don't agree

24   review in this Court.  They are misstating the applicable

25   law.  Lepo could not be clearer on that subject.  Second,

**B30**

1    they rely again entirely on <u>Lauro Lines</u>, however, <u>Praxis</u>

2    itself from the Third Circuit distinguishes <u>Lauro Lines</u>.  The

3    issue here undoubtedly involves JPMorgan Chase's and the

4    FDIC's because the FDIC regards this as a claim against them

5    effectively, right not to be subjected to claim in this Court

6    at all, but it involves more than that.  It involves, as

7    <u>Praxis</u> said, the protection of Congress's mandated claims

8    process, enforcement of that claims process.  That is what is

9    irreparably lost and that is why we believe, that is why

10   <u>Praxis</u> says that an appeal under FIRREA is subject to

11   collateral order review where a court does not honor those

12   strict limits on jurisdiction and protection of the claims

13   process that Congress carefully crafted in the most important

14   piece of thrift legislation in the nation's history.  That's

15   how it was characterized.  It has tremendous public

16   importance, and that's why FIRREA appeals have already been

17   found in this case, a failure to adhere to a FIRREA issue.

18   FIRREA limit on jurisdiction has been found in the Third

19   Circuit to be a proper subject of collateral order appeal.

20   Again, we have a good faith basis even if Your Honor believes

21   that under <u>Lorro</u> or some other case by <u>Praxis</u> should have

22   bene decided differently, might be decided differently today,

23   you would have decided differently, that's not the standard.

24   We have a good faith basis to claim that this is a subject to

25   collateral order review, that is the scope of the inquiry at

1  this point in time, and <u>Lorro</u> is again distinguished by

2  <u>Praxis</u> and there's an explanation of why <u>Lorro</u> is also

3  characterized in <u>Digital Equipment</u>, and so continued

4  reference to <u>Lorro</u>, <u>Lorro</u> is a different case.  It's a

5  private contract case, and undoubtedly, you know, everything

6  is continuum and you can understand why different decisions

7  are reached in different cases.  You can always say they're

8  not consistent with one another.  They are consistent.  Maybe

9  they had something funning for breakfast that day when they

10  decided that one.  It was this justice or that justice, and

11  you rationalize things, but in this case we do have a Third

12  Circuit case and it is specifically on FIRREA, and it does

13  indicate why a collateral order appeal is appropriate.  And

14  they again go back to the notion that collateral order

15  appeals are limited to the complete divestiture of

16  jurisdiction cases, a right never to trial.  As I say, that's

17  part of the argument, but it also begs the question of the

18  importance of FIRREA, the public importance of that, the

19  importance of it to the FDIC, which underlay the stay motion,

20  the complete stay motion in this particular case.  It also

21  ignores the fact that there are many – the first case ever

22  decided, the geneses of the collateral order doctrine is not

23  a complete defense to a jurisdiction no-suit case.  It's

24  <u>Cohen v. Beneficial Life</u>, it involves a case involving a

25  failure to post security in a derivative action.  So there

**B32**

1    are cases that are different than that.  That's one strand,
2    that's undoubtedly where it comes up most often, but it is
3    not the sole issue.  But again, these are debates on the
4    merits as to whether _Praxis_ is going to control, should
5    control, should be reviewed, should be reversed, should be
6    disregarded, can be distinguished in some way, but _Praxis_ is
7    the this Third Circuit decision.  It does find it appropriate
8    for reasons that are equally applicable here.  Finally, Your
9    Honor, with respect to the comments from the Creditors
10   Committee on prejudice, we've heard time and time and time
11   again how these adversary proceedings involve the most
12   significant assets of the estate and we are delaying it.  We
13   are delaying nothing in this case, Your Honor.  The fact is
14   that the debtors filed claims to these very assets in the
15   receivership.  They filed an action in D.C.  They are
16   delaying the resolution of their entitlement to those assets
17   by filing the same claims in this Court, that is our position
18   on this.
19            THE COURT: How does that delay the D.C. action?
20            MR. SACHS: It delays the D.C. action because you
21   are - two Courts are resolving the very same matter, and,
22   Your Honor, the D.C. action is going to have to determine in
23   that Court the effect to be given to the denial of the claims
24   by the receiver in the receivership process, and so, they
25   are, for example, asserting claims here to assets that are

1    the subject of claims that they made in the receivership that

2    were denied by the receiver.  Now it may be that they can

3    convince the District Court in D.C. that those denials were

4    improper and they should be adjudicated *de novo* on their

5    merits, that there was something wrong with the denial, but

6    that is an integral part of the receivership resolution

7    process and I respectfully suggest you can't adjudicate the

8    claims here anew on a clean slate as though those denials

9    never happened, which is what they're trying to do here.

10            THE COURT: They're suing two different parties in

11    two different forums.

12            MR. SACHS: No, Your Honor.  That's where you and we

13    disagree.  Respectfully, they have sued us but as Judge Hoyt

14    recognized while they've named the third-party buyer their

15    claim is based upon whether these were or were not assets of

16    the receivership at the time of receivership.  We are simply

17    a transferee of whether those were assets.  We didn't do

18    anything independently wrong about those assets –

19            THE COURT: Well, that's not quite what they allege

20    in their adversary.

21            MR. SACHS: Well, that's –

22            THE COURT: They allege that you did do something

23    wrong independently of the actions of the FDIC.

24            MR. SACHS: Well, that's not entirely correct, Your

25    Honor.  So, for example, they claim they're entitled to

**B34**

1  certain amounts of money that are on deposit.  Those either

2  were or were not deposits at the time of receivership to

3  which the debtors did or did not have an entitlement.  We

4  simply got what the FDIC had, trust preferred securities.

5  They're claiming that there are certain rights in trust

6  preferred securities.  Again, those either were or were not

7  assets of the receivership estate.  At the time of the

8  receivership, we either got them from the receivership or we

9  didn't get them.  We didn't do anything with respect to

10 those.  They're seeking to rescind the PNA agreement by which

11 we bought the assets and liabilities from the receiver.

12 That's a direct challenge, while it undoubtedly affects us,

13 they say it's an improper contract.  They have a whole bunch

14 of things, but fundamentally, it's a challenge to the acts of

15 the receiver, that the receiver erred in entering into that,

16 not that we are independently liable for that, that it's a

17 contract that the receiver should not have entered into under

18 a variety of theories.  It directly challenges the acts of

19 the receiver.  They have claims to intellectual property –

20          THE COURT: We're rearguing what we've –

21          MR. SACHS: We are.

22          THE COURT:  – heard before.

23          MR. SACHS: But you did raise the issue with me,

24 Your Honor, and I didn't – you raised this one.  I didn't

25 raise this one, but so I would respectfully suggest it is the

**B35**

FORM FED  ⊕  PENGAD • 1-800-631-6989 • www.pengad.com

1    same sort of thing, but my last point was in response to the

2    comments from the Unsecured Creditors Committee which is

3    there are adverse consequences that would befall a delay here

4    due to that.   I'm suggesting they could be mitigated in other

5    ways, but the Third Circuit has made clear in a case we cited

6    for you.   It's Venon, and I believe the other side cited to

7    you where they go specifically into that issue and they say,

8    You know what, that's unfortunate.   We wish it weren't the

9    case, but there are benefits to be accorded to this rule to

10   one court having jurisdiction over an issue at the same time,

11   and there are reasons for having a collateral appeal

12   doctrine, and there are reasons that when an appeal is filed,

13   the lower court is divested of jurisdiction so you don't have

14   two courts considering the same issue.   That's why, Your

15   Honor, a lower court can't even reconsider its order while an

16   appeal is pending even if it suddenly said tomorrow, Oh, my

17   God, you know, I made a – assume you said, Your Honor, You

18   know, I looked at Judge Hoyt, I really messed up.   I made a

19   mistake.   I'd like to change my order.   You don't have the

20   power to do that.   That might be efficient, but you don't

21   have the power to reconsider your order because you're

22   divested of jurisdiction over that order once the notice of

23   appeal is filed.   Now, I know that seems crazy in some sense,

24   but that is the clear rule, and that is the interplay between

25   courts of appeal and lower courts, and it's the impact of the

**B36**

1    divestiture rule which is only one court decides it.  That's

2    why the impact on the lower court is, you review it simply to

3    determine if the appeal is frivolous and as the Third Circuit

4    said, You're inquiry must be one for frivolousness, and you

5    either need to recognize the divestiture or find by written

6    findings that the appeal is one that's frivolous, Your Honor.

7                THE COURT: Thank you.

8                MR. ELSBERG: Your Honor, on the Rosa point that was

9    argued, it's like groundhog day and on the Lepo point, it's

10   like Alice in Wonderland.  I can't understand, Your Honor,

11   and if you haven't, I hope you will look at Lepo.  Why JPMC

12   keeps returning to Lepo as if Lepo supports the notion that

13   this is an appealable order is a mystery.  Lepo is a case

14   that helps us and demonstrates that even if you get past step

15   one, which is to determine that it could be a collateral

16   order, then there's another way that the Court can decide

17   that this proceeding should continue.  Lepo, remember, was

18   about immunity.  It was not a Lauro Lines situation where

19   clearly it was a non-appealable order.  It was a

20   quintessential type of appealable order because it was about

21   immunity, and what the Court said in Lepo is, even in that

22   case, I have to take a practical approach, a reasoned

23   approach, and if this looks strategic, dilatory, and merit-

24   less I can still stop the show, but that is a case where

25   hurdle one had been cleared.  Here they can't get past hurdle

**B37**

FORM FED  ®  PENGAD • 1-800-631-6989 • www.pengad.com

1    one, they can't get past Lauro Lines, and if there's any
2    doubt on that, Your Honor, we filed our brief yesterday.  We
3    had less than a week to file it, and on page 8 of our brief
4    we cite case after case including Venon, and I mentioned it
5    before, which says the Third Circuit does not just go to step
6    two and look at frivolousness which is an independent reason
7    to say that jurisdiction will be kept or shared, but this
8    Court can and should look at, is this a non-appealable order.
9    Again, I'm quoting from the Third Circuit in Venon, "An
10   appeal from a non-appealable judgment or order is sometimes
11   characterized as a nullity."  Again, I'm quoting from Venon,
12   the Third Circuit.  "The jurisdiction of the lower court is
13   not lost by the taking of an appeal from an order or judgment
14   which is not appealable."  Again, there's Lepo which cites to
15   Hitchman, a Fifth Circuit case, which we quote in our brief,
16   and Rubia, a Second Circuit case which is quoted in our brief
17   and what they say is whether you call it a premature appeal,
18   whether you call it a non-appealable order, whether your call
19   it effective appeal, if you can't get past step one and they
20   can't because of Lauro Lines then you don't need to get to
21   step two which is, by the way, is this strategic and dilatory
22   and under this judgment rule, should I still say that this
23   case will move forward.  So that's Lepo.  Again, they went
24   back to Praxis.  Praxis, Your Honor, was about the stay
25   provision, a right to be free from suit for a period of time,

FORM FED ® PENGAD • 1-800-631-6989 • www.pengad.com

1  completely free from claims, again, like immunity, and

2  completely unlike Lauro Lines which is dead on point where

3  the argument is, JPMorgan's argument here, which is, Please,

4  we want to litigate this and now in a different forum which

5  they've said ad nauseam and we quote just some of their clear

6  statements on this point in our brief, and again, they made

7  the pont, Lauro Lines is only about a forum selection clause.

8  Please, Your Honor, take a look at the concurrence, the last

9  sentence I believe in Scalia's concurrence, it says, "By the

10 way, we've applied the identical rule when the issue of forum

11 has to do with an argument about a statute, an act of

12 Congress, or a treaty designating the forum, same result."

13 And, Your Honor, I would just finish with where I started

14 initially, which is to just keep in mind, go back to basics

15 on this doctrine.  The courts have said again and again, this

16 is a narrow doctrine.  It is a narrow exception, and if the

17 interpretation that they're pushing were correct, it would

18 blow it wide open to abuse by anyone at any stage in a

19 proceeding.  It could be right in the middle of a trial and

20 someone could give a notice and say, Your Honor, I previously

21 moved to stay.  I previously moved to stay on exactly the

22 grounds where I am now making this appeal.  Your Honor

23 rejected the motion to stay on solid grounds, I continue to

24 litigate.  How long can they proceed?  Are they saying they

25 could go to trial and benefit if they don't like how it's

FORM FED ⊕ PENGAD • 1-800-631-6989 • www.pengad.com

1   going? They can say, Here's a notice, I'm stopping the show

2   now. Maybe after the trial and before the verdict, if they

3   think it didn't go well. Here they just waited to argue a

4   motion to dismiss, which they lost. They just took a

5   deposition, maybe they didn't like how it went and they're

6   saying, Guess what, here's a piece of paper, Your Honor, you

7   can't even look at this. That would be the most wildly

8   inefficient and a wide-open rule. The exception would

9   swallow the rule. That's not what the case law holds, and

10  just before I finish, Your Honor, just to correct one other

11  thing that was said. I believe it was JPMorgan that filed

12  proofs of claims here and filed the adversary proceedings

13  here, and I think something was said about that that was not

14  completely accurate. Thank you, Your Honor.

15          THE COURT: Okay. Alright, well, let me issue my

16  ruling. Although I'm not quite sure what I'm ruling on,

17  there is no motion before me. There's a notice of a

18  divestiture, but I take it the parties are asking me whether

19  the adversary proceeding will proceed, and in my opinion,

20  yes, it will proceed. It is clear that the appeal of the

21  denial of a motion to dismiss or the denial of a motion to

22  stay a proceeding is not appealable. The only exception to

23  that that has been cited is the collateral order doctrine.

24  The Supreme Court has made it clear that this is a narrow

25  exception, and the Supreme Court held in Lauro Lines that it

```
 1   does not apply to issues of where a party can be sued as
 2   opposed to whether a party can be sued.  Praxis is not
 3   applicable.  It dealt with whether a party can be sued, i.e.,
 4   whether a 90-day stay applied or a 45-day stay applied, not
 5   to an issue of where a party can be sued.  So it just is not
 6   applicable to this case.  The fact that JPMC has continued to
 7   appear before me and to continue to proceed with this
 8   adversary for the past four months, I think evidences an
 9   acknowledgment that really their position is frivolous.  Need
10   I say it, I do say it, the argument is frivolous that the
11   collateral order doctrine applies.  With respect to the
12   merits of the appeal, I've already made my ruling on that
13   numerous times.  I need not issue it again.  I think the
14   decision of JPMC that I do not have jurisdiction is
15   frivolous.  The adversary proceedings will proceed until and
16   unless the Appellate Court decides otherwise, but they need
17   not be held up pending that appeal.
18        MR. ELSBERG: Your Honor, if I might, I was just
19   hoping that I could raise the issue of scheduling a hearing
20   date for the summary judgment motion on the deposit issue,
21   and we would propose, if it works for you -
22        THE COURT: Have I seen - has the briefing been
23   completed?
24        MR. ELSBERG: Yes.
25        THE COURT: When did the notice of completion of
```

1  briefing get filed?

2           MR. ELSBERG: We'll file a notice today.  We're

3  hoping we could just get something on the calendar, if Your

4  Honor is agreeable, for the week of October 12.

5           THE COURT: Is that the week of - that's the week

6  before the NCBJ?

7           MR. ROSEN: I think that's right, Your Honor.  I

8  think it is the following weekend.

9           MR. SHIEKMAN: Your Honor, could I ask . . .

10  (microphone not recording) the following week?

11           THE COURT: The following week I'm out.

12           MR. SHIEKMAN: (Microphone not recording.)

13           THE COURT:  I'm going to ask the parties, I'm going

14  to talk to Ms. Capp, I'm not going to set, but as I

15  understand it, the parties are suggesting then the week of

16  October 25th?

17           MR. ELSBERG: Or, Your Honor, we would prefer

18  October 12 or if it could be October 8 or 9, and if it can't

19  be sooner then, yes, the following week.

20           THE COURT: Well, it can't be the 9th.

21           MR. ELSBERG: Okay.  We can try to work it out

22  together.  We can work it out together.

23           THE COURT: Okay.

24           MR. ELSBERG: Thank you, Your Honor.

25           THE COURT: Get a date from Ms. Capp.  Thank you.

**B42**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : |
| WASHINGTON MUTUAL, INC., *et al.*,[1] | : CHAPTER 11 |
| Debtors. | : Case No. 08-12229 (MFW) |
| | : Jointly Administered |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | : |
| *Plaintiff,* | : |
| v. | : Adv. Proc. No. 09-50551 (MFW) |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : |
| *Defendants for all claims,* | : |
| -and- | : |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : |
| *Additional Defendant for Interpleader Claim.* | : |

### RESPONSE OF PLAINTIFF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, TO DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION'S MOTION TO STAY ADVERSARY PROCEEDINGS

Plaintiff JPMorgan Chase Bank, National Association ("JPMC"), by its undersigned attorneys, files this response ("Response") to the Motion of Defendant Federal

---

[1] Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). Debtors continue to share their principal offices with the employees of JPMorgan Chase, located at 1301 Second Avenue, Seattle, Washington 98101.

{683.001-W0000545.}

Deposit Insurance Corporation ("FDIC") to Stay Adversary Proceedings. In support hereof, JPMC respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    JPMC agrees with the FDIC that the "first-to-file" rule applies in this case. This rule requires that Debtors' first-filed action, *Washington Mutual, Inc. et al.* v. *FDIC*, Civil Action No. 1:09-cv-00533 (RMC) (D.D.C. Mar. 20, 2009) (the "D.C. Action"), be decided first, and empowers this Court to transfer or stay any later-filed proceeding. Here, transfer would be appropriate because this case is "materially on all fours" with the D.C. Action and, at minimum, all of the Debtors' counterclaims in this adversary proceeding ("JPMC's Adversary Proceeding") are subject to Title 12 of the U.S. Code's jurisdictional bar. *See* 12 U.S.C. § 1812(d)(13)(D)(i)–(ii) ("Title 12 Jurisdictional Bar"). More specifically, Debtors' counterclaims challenge the transaction through which the FDIC, as receiver for Washington Mutual Bank, Henderson, Nevada ("WMB"), disposed of assets and/or interests of WMB, and thus (i) concern "a determination of rights with respect to[] the assets of any depository institution for which the Corporation has been appointed receiver" or (ii) "relat[e] to any act or omission of such institution or the Corporation as receiver." *Id.* Therefore, transfer to the D.C. Action is the best way to effectuate both the first-filed rule and the Title 12 Jurisdictional Bar.

2.    Alternatively, JPMC supports a stay of its Adversary Proceeding, at this juncture, on the expectation that the District Court of the District of Columbia will permit its intervention in the D.C. Action and resolve most (if not all) of the parties' claims. The D.C. Court is also the only court with jurisdiction under Title 12 to determine many of the issues raised by the Debtors' counterclaims. Accordingly, although JPMC respectfully urges that transfer is the preferred course, the alternative of a stay would be appropriate, at this juncture,

both under the first-filed rule and under the District Court of Delaware's three-factor test for granting a stay.[2]

## BACKGROUND

3. On September 25, 2008, the Office of Thrift Supervision closed WMB and appointed the FDIC to act as receiver for WMB. Thereafter, JPMC and the FDIC entered into a Purchase & Assumption Agreement (the "P&A Agreement"), whereby JPMC acquired from the FDIC substantially all of the assets and assumed certain liabilities that formerly belonged to WMB.

4. On December 30, 2008, Washington Mutual, Inc. ("WMI"), WMB's former parent holding company, and WMI Investment Corp. (together, "Debtors") submitted claims to the receivership, alleging that the FDIC, among other things, improperly took assets belonging to WMI. On January 23, 2009, the FDIC disallowed those claims. On March 20, 2009, Debtors commenced the D.C. Action, in which Debtors challenge the FDIC's disallowance of their claims and assert an ownership interest in certain assets sold under the P&A Agreement to JPMC. JPMC has moved to intervene in the D.C. Action.

5. On March 24, 2009, JPMC filed the above-captioned adversary proceeding, asserting ownership of, or interests in, certain of the disputed assets at issue in the D.C. Action. For many of these assets, JPMC requested that, as a threshold matter, this Court declare Debtors' D.C. Action the proper forum in which to resolve the parties' competing claims. (*See*, *e.g.*, Complaint, ¶¶ 183, 195, 204, JPMC Adversary Proceeding (Bankr. D. Del. Mar. 24,

---

[2] JPMC reserves all of its additional rights, remedies, and arguments with respect to this Court's jurisdiction over the counterclaims and disputes raised thereby, including, without limitation, arguments that the reference to this Court must be or should be withdrawn.

2009) ("JPMC Compl.") (seeking declaratory judgment that these claims should be resolved in the D.C. Action).)

      6.    Debtors have answered in JPMC's Adversary Proceeding and alleged eighteen counterclaims. (Debtors' Answer & Counterclaims in Response to the Complaint of JPMorgan Chase Bank, N.A., ¶¶93-212, JPMC Adversary Proceeding (Bankr. D. Del. May 29, 2009) ("Debtors' Ans. & Cntrclms")). The counterclaims are entirely duplicative of Debtors' claims in the D.C. Action. (*Compare, e.g.*, Debtors' Ans. & Cntrclms ¶¶ 93-103 *with* Complaint, ¶¶ 25-28, D.C. Action (D.D.C. Mar. 20, 2009) ("D.C. Compl.") (seeking recovery of capital contributions from WMI to WMB); *compare* Debtors' Ans. & Cntrclms ¶¶ 104-38 *with* D.C. Compl. ¶¶ 29-35 (seeking to avoid the transfer of the Trust-Preferred Securities); *compare* Debtors' Ans. & Cntrclms ¶¶ 139-52 *with* D.C. Compl. ¶¶ 36-40 (seeking to avoid allegedly preferential tranfers to WMB by WMI).) Moreover, each counterclaim attacks the FDIC receivership and the subsequent P&A Agreement between the FDIC and JPMC and, therefore, is subject to the Title 12 Jurisdictional Bar.

      7.    Notwithstanding the pendency of the D.C. Action and this adversary proceeding, on April 27, 2009, Debtors filed a complaint for turnover of estate property, Adversary Proceeding No. 09-50934 ("Turnover Action"). The Turnover Action relates to deposit accounts that are the basis of Debtors' "Deposit Claims" in the D.C. Action and the FDIC's counterclaims in the D.C. Action, as well as three counts in this adversary proceeding.

      8.    On June 1, 2009, the FDIC moved to stay JPMC's Adversary Proceeding and to intervene in the Turnover Action, in order to bring an equivalent motion to stay.[3] The

---

[3] For the same reasons asserted in the FDIC's motions to stay and supporting memorandum, JPMC moved to stay the Turnover Action, in the event it is not dismissed. The alternative of a transfer of that action would also be acceptable, but is unnecessary because the Turnover Action is entirely duplicative of claims Debtors have raised in the D.C. Action and JPMC's Adversary Proceeding. The proposed stay of Debtors' Turnover Action is more fully addressed in separate briefing.

FDIC asserts that the stays are appropriate because the claims in these two proceedings seek "a determination of rights with respect to[] the assets" of WMB or relate to an "act or omission of such institution or the Corporation as receiver," *see* 12 U.S.C. § 1812(d)(13)(D)(i)–(ii), and are therefore within the scope of the Title 12 Jurisdictional Bar of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"). The FDIC further asserts that a stay is appropriate so that the claims may be heard in the D.C. Action, the first-filed action brought by Debtors.

## ARGUMENT

9.    JPMC agrees that the "first-to-file" rule applies in this case. Debtors' D.C. Action was the first-filed action of the three, materially related cases. JPMC's Adversary Proceeding (the second-filed action) raises claims to the same disputed assets at issue in the D.C. Action. The Debtors' Turnover Action (the third-filed action) raises claims to the same "Deposits" that are at issue in the D.C. Action and JPMC's Adversary Proceeding.

10.    "The first-to-file rule gives courts the power to stay, enjoin, or transfer a later-filed case." *Allianz Life Ins. Co. of N. America* v. *Estate of Bleich*, Civ. Action No. 08-cv-668 (SDW-MCA), 2008 WL 4852683, at *3 (D.N.J. Nov. 7, 2008); *accord G & G LLC* v. *White*, 535 F. Supp. 2d 452, 466 (D. Del. 2008) (*citing Crosley Corp.* v. *Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)) (the Third Circuit's first-to-file rule grants the court discretion to stay or transfer the second-filed case). In order to "encourage sound judicial administration," the rule requires that, where federal courts have concurrent jurisdiction over "similar cases," "the court which first had possession of the subject must decide it." *Allianz*, 2008 WL 4852683, at *3.

11.    An immediate transfer of JPMC's Adversary Proceeding to the D.C. Action would best "encourage sound judicial administration." *See also* Fed. R. Bankr. P. 1014(a)(1) (bankruptcy court may *sua sponte* transfer venue "in the interests of justice"); *In re*

*Donald*, 328 B.R. 192, 198 (9th Cir. B.A.P. 2005) (bankruptcy court may *sua sponte* transfer venue under its 11 U.S.C. § 105(a) equitable powers).  Not only do the two proceedings materially overlap, but because Debtors counterclaims relate to assets of the WMB receivership, acts or omissions of the FDIC, or both, the Congressional scheme for judicial review of receivership claims, set out in FIRREA and Title 12 of the U.S. Code, further commands which courts may hear Debtors' counterclaims.[4]  *See* 12 U.S.C. § 1821(d)(13)(D)(i)-(ii).  Here, because of how the Debtors elected to pursue their claims, Title 12 of the U.S. Code restricts judicial review of these counterclaims to the action the Debtors initiated in the U.S. District Court for the District of Columbia.  *See, e.g,* 12 U.S.C. §§ 1821(d)(5), (6)(A), (13)(D); *Nat'l Union Fire Ins. Co.* v. *City Sav., F.S.B.*, 28 F.3d 376, 383 (3d Cir. 1994); *see also Village of Oakwood* v. *State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (holding that the Title 12 Jurisdictional Bar encompasses a suit against a bank that purchased assets from the receivership).

        12.     In the alternative, JPMC supports a stay of its Adversary Proceeding, at this juncture, on the expectation that the D.C. Court will permit its intervention in the D.C. Action and resolve most, if not all, of the parties' claims.  A stay would be appropriate under the first-filed rule, as explained above, and additionally, under the Delaware District Court's three-factor test for granting a stay, articulated in *Pegasus Development Corp.* v. *DirecTV, Inc.*, No. Civ.A. 00-1020-GMS, 2003 WL 21105073, at *1 (D. Del. May 14, 2003).

---

[4] The Court need not decide whether Title 12 Jurisdictional Bar does, as the FDIC asserts, encompass all of JPMC's adversary claims because the first-filed rule provides a sufficient basis for stay and/or transfer of all parties' claims.  The first-filed rule applies to all of JPMC's claims in the Adversary Proceeding, Debtors' counterclaims, and the parties' defenses because they are "materially on all fours" in that they arise from the same facts and involve the same core factual and legal disputes already at issue in the D.C. Action. *Grider* v. *Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007) (first-filed rule applies where the cases are "materially on all fours" with each other and where "the issues have such an identity that a determination in one action leaves little or nothing to be determined in the other").

13.    Under *Pegasus*, courts deciding a stay should consider:

(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Id.* at *1; *accord Zoetics, Inc.* v. *Yahoo!, Inc.*, No. Civ.A. 06-108-JJF, 2006 WL 1876912, at *1 (D. Del. July 6, 2006). Here, if the Court does not transfer the JPMC Adversary Proceeding, a stay of this case and the Turnover Action (if it is not dismissed) would be appropriate, at this juncture. The stay would in no way prejudice the Debtors, as the FDIC seeks only to prioritize the action that the Debtors chose to file first. The stay would also greatly simplify the issues before this Court by resolving non-bankruptcy questions of federal regulatory law in a court of undoubted jurisdiction. Lastly, no trial date has been set, and no discovery has begun in this Court.

## CONCLUSION

14.    For the foregoing reasons, Plaintiff JPMC respectfully submits that JPMC's Adversary Proceeding should be transferred to the U.S. District Court for the District of Columbia or, in the alternative, stayed.[5]

---

[5]In the event the Court grants a stay, JPMC further requests that any action by the Debtors, the Committee, or any party in interest with respect to the assets that are the subject of the D.C. Action and/or the JPMC Adversary Proceeding, including JPMC's proofs of claim with respect to those assets, also be stayed, except for the consensual resolution of issues between JPMC and the Debtors that are jointly submitted to the Court for approval after appropriate notice to parties in interest.

Dated: June 15, 2009
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Bruce E. Clark
Stacey R. Friedman
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Robert A. Sacks
Hydee R. Feldstein
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

*Counsel for JPMorgan Chase Bank, National Association*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
                                                           :
*In re:*                                                   :     **Chapter 11**
                                                           :
**WASHINGTON MUTUAL, INC., et al.,[1]**                    :     **Case No. 08-12229 (MFW)**
                                                           :
                                                           :     **(Jointly Administered)**
         **Debtors.**                                      :
                                                           :
-----------------------------------------------------------x
                                                           :
**WASHINGTON MUTUAL, INC. AND**                            :
**WMI INVESTMENT CORP.,**                                  :     **Adv. Pro. No. 09-50934 (MFW)**
                                                           :
         **Plaintiffs,**                                   :
                                                           :
                                                           :
         **v.**                                            :
                                                           :     Re: 31460
                                                           :
**JPMORGAN CHASE BANK, N.A.,**                             :
                                                           :
                                                           :
         **Defendant.**                                    :
-----------------------------------------------------------x

**ORDER DENYING (A) MOTION OF DEFENDANT
JPMORGAN CHASE BANK, N.A. TO STAY
AND (B) MOTION OF INTERVENOR-DEFENDANT
FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER, TO STAY OR DISMISS ADVERSARY PROCEEDING**

Upon (a) the motion, dated June 1, 2009 (the "JPMC Motion") [Docket No. 31], of

JPMorgan Chase Bank, National Association ("JPMorgan") for an order staying, in the event

it is not dismissed in its entirety, the above-captioned adversary proceeding (the "Adversary

Proceeding") commenced by Washington Mutual, Inc. and WMI Investment Corp.

(collectively, the "Debtors"), and (b) the motion of intervenor-defendant Federal Deposit

---

[1]  The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver") to stay, or in the alternative, dismiss the Adversary Proceeding [Docket Entry No. 29, Exhibit A] (the "FDIC-R Motion", and together with the JPMC Motion, the "Motions"), all as more fully set forth in the Motions; and the Washington Mutual, Inc. Noteholders Group [Docket No. 38] and the Debtors [Docket No. 39] having each filed an opposition to the Motion on June 15, 2009; and a joinder in the Debtors' opposition having been filed by the Official Committee of Unsecured Creditors on June 15, 2009 [Docket No. 40] (collectively, the "Opposition Papers"); and the Court having jurisdiction to consider the Motions, the Opposition Papers, and all related filings in connection therewith and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having granted by separate Order the motion of the FDIC-Receiver to intervene in the Adversary Proceeding; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409 to consider the Motions; and due and proper notice of the Motions and the Opposition Papers having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held before the Court with respect to the Motions, the Opposition Papers, and related filings on June 24, 2009 (the "Hearing"); and upon the record of the Hearing and for the reasons set forth on the record of the Hearing, it is hereby

ORDERED that the Motions and the relief requested therein are denied in their entirety; and

ORDERED that this Order having resolved all matters for which the intervention of

the FDIC-Receiver in this Adversary Proceeding was granted, no further pleading or response

shall be required from the FDIC-Receiver in this Adversary Proceeding.

Dated: Wilmington, Delaware
         July 16 , 2009

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

No. 07-76

# In the Supreme Court of the United States

JOHN HENRICHS AND
ANNE HENRICHS, PETITIONERS

*v.*

VALLEY VIEW DEVELOPMENT, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

## BRIEF FOR THE FEDERAL DEPOSIT INSURANCE CORPORATION IN OPPOSITION

SARA A. KELSEY
  *General Counsel*
RICHARD J. OSTERMAN, JR.
  *Acting Deputy General
  Counsel*
COLLEEN J. BOLES
  *Acting Assistant General
  Counsel*
KATHLEEN. GUNNING
  *Counsel
  Federal Deposit Insurance
  Corporation
  Washington, D.C. 20429*

PAUL D. CLEMENT
  *Solicitor General
    Counsel of Record
  Department of Justice
  Washington, D.C. 20530-0001
  (202) 514-2217*

## QUESTIONS PRESENTED

1.  Whether the court of appeals correctly held that 12 U.S.C. 1821(d)(13)(D) and (j), which limit a court's jurisdiction over claims against the Federal Deposit Insurance Corporation (FDIC), do not restrict suits against assignees of assets that were formerly owned by an FDIC receivership that has been terminated.

2. Whether the court of appeals correctly dismissed petitioners' claim against the FDIC receivership, which had been terminated, with all its assets distributed, three years before petitioners filed their claim with the FDIC.

(I)

## TABLE OF CONTENTS

Page

Opinions below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

Cases:

*Cadle Co.* v. *1007 Joint Venture*, 82 F.3d 102 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cedano-Viera* v. *Ashcroft*, 324 F.3d 1062 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*FDIC* v. *Bernstein*, 944 F.2d 101 (2d Cir. 1991) . . . . . . . . . . 6

*FDIC* v. *Scott*, 125 F.3d 254 (5th Cir. 1997) . . . . . . . . . . . . . 8

*First Ind. Fed. Sav. Bank* v. *FDIC*, 964 F.2d 503 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Goldblatt* v. *FDIC*, 105 F.3d 1325 (9th Cir. 1997) . . . . . . . 12

*Henderson* v. *Bank of New England*, 986 F.2d 319 (9th Cir.), cert. denied, 510 U.S. 995 (1993) . . . . . . . . . . 7

*Heno* v. *FDIC*, 20 F.3d 1204 (1st Cir. 1994) . . . . . . . . . . . . 8

*Homeland Stores, Inc.* v. *RTC*, 17 F.3d 1269 (10th Cir.), cert. denied, 513 U.S. 928 (1994) . . . . . . . . . . . . . . . 8

*Hudson United Bank* v. *Chase Manhattan Bank*, 43 F.3d 843 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Maher* v. *FDIC*, 441 F.3d 522 (7th Cir. 2006), cert. denied, 127 S. Ct. 1327 (2007) . . . . . . . . . . . . . . . . . . 10, 11

*Martinez-Serrano* v. *INS*, 94 F.3d 1256 (9th Cir. 1996), cert. denied, 522 U.S. 809 (1997) . . . . . . . . . . . . . 11

(III)

IV

Cases—Continued                                    Page

*McCarthy* v. *FDIC*, 348 F.3d 1075 (9th Cir. 2003) . . . . . . . . 8

*National Collegiate Athletic Ass'n* v. *Smith*, 525 U.S.
    459 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Newton* v. *Uniwest Fin. Corp.*, 967 F.2d 340 (9th Cir.
    1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Office & Prof'l Employees Int'l Union, Local 2* v.
    *FDIC*, 962 F.2d 63 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . 8

*Porras* v. *Petroplex Sav. Ass'n*, 903 F.2d 379 (5th Cir.
    1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rosa* v. *RTC*, 938 F.2d 383 (3d Cir.), cert. denied,
    502 U.S. 981 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stamm* v. *Paul*, 121 F.3d 635 (11th Cir. 1997) . . . . . . . . . . 8

*Tahoe-Sierra Pres. Council, Inc.* v. *Tahoe Reg'l
    Planning Agency*, 535 U.S. 302 (2002) . . . . . . . . . . . . . . 14

*United States* v. *Bowen*, 172 F.3d 682 (9th Cir. 1999) . . . . 13

*United States* v. *Lewis*, 787 F.2d 1318 (9th Cir. 1986) . . . 13

Statutes:

Federal Deposit Insurance Reform Conforming
    Amendments of 2005, Pub. L. No. 109-173,
    119 Stat. 3601:
        § 8(a)(11)(C), 119 Stat. 3612 . . . . . . . . . . . . . . . . . . . . 12
        § 8(b), 119 Stat. 3616 . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V

Statutes—Continued:                                     Page

Financial Institutions Reform, Recovery, and
   Enforcement Act of 1989, Pub. L. No. 101-73,
   103 Stat. 183:
       § 211, 103 Stat. 218 (12 U.S.C. 1821(a)):
           12 U.S.C. 1821(a)(1)(A) ...................... 6
           12 U.S.C. 1821(a)(7)(C)(i) ............. 11, 12, 13
       § 212(a), 103 Stat. 222 (12 U.S.C. 1821(c)-(j)):
           12 U.S.C. 1821(c)(1) ......................... 6
           12 U.S.C. 1821(d)(3)-(6) ..................... 8
           12 U.S.C. 1821(d)(3)(B) .................... 3, 10
           12 U.S.C. 1821(d)(5)(C) ...................... 4
           12 U.S.C. 1821(d)(5)(C)(i) ................ 10, 12
           12 U.S.C. 1821(d)(5)(C)(ii)(II) ................ 10
           12 U.S.C. 1821(d)(10) ........................ 8
           12 U.S.C. 1821(d)(13)(D) ............. 5, 6, 7, 8, 9
           12 U.S.C. 1821(d)(20) ....................... 11
           12 U.S.C. 1821(g)(4) (103 Stat. 242) ........... 12
           12 U.S.C. 1821(i)(2) ...................... 10, 13
           12 U.S.C. 1821(j) ........................ 5, 6, 9
   Cal. Fin. Code § 3119.5(a)(1) (West 1999) .............. 12

# In the Supreme Court of the United States

No. 07-76

JOHN HENRICHS AND
ANNE HENRICHS, PETITIONERS

*v.*

VALLEY VIEW DEVELOPMENT, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

BRIEF FOR THE FEDERAL DEPOSIT INSURANCE
CORPORATION IN OPPOSITION

## OPINIONS BELOW

The opinion of the court of appeals (Pet. App. 1a-14a) is reported at 474 F.3d 609. The order of the district court (Pet. App. 15a-31a) is unreported.

## JURISDICTION

The judgment of the court of appeals was entered on January 16, 2007. A petition for rehearing was denied on April 19, 2007 (Pet. App. 32a-33a). The petition for a writ of certiorari was filed on July 18, 2007. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

## STATEMENT

This case arises from a dispute between petitioners and respondent Valley View Development (Valley View)

(1)

2

about whether a deed of trust owned, in part, by petitioners encumbered a parcel of real property (the Balboa lot) owned by Valley View. The dispute had been fully litigated in state court before petitioners filed this federal court action and added the Federal Deposit Insurance Corporation (FDIC or Corporation) as a party. Pet. App. 3a-7a, 9a, 107a, 109a.

1. In 1990, Valley View owned two plots of land, the Balboa lot and the Chatsworth lot, in Granada Hills, California. Petitioner John Henrichs and respondents Michael Blaha and Marc Gelman formed Granada Plaza Associates, Ltd. (GPA) to purchase and to develop the Chatsworth lot. GPA could not purchase that lot separately until a tract map subdividing it from the Balboa lot had been recorded, so GPA purchased both lots from Valley View. Pet. App. 4a.

GPA leased the Balboa lot to Valley View for one dollar per year and granted it an option to repurchase the lot for one dollar after the tract map was recorded. The ground lease provided that, if Valley View exercised the repurchase option, GPA would convey the Balboa lot to Valley View in fee simple, free of all liens and encumbrances. Pet. App. 4a.

GPA obtained a construction loan from Capital Bank of California to develop the Chatsworth lot. The loan was guaranteed by Gelman and Blaha and secured by a deed of trust on both the Chatsworth and Balboa lots. Pet. App. 4a, 17a.

After the tract map was recorded in 1992, Valley View exercised its option to repurchase the Balboa lot. Valley View believed that it obtained title free and clear of the lien created by the deed of trust. Pet. App. 5a.

In June 1993, the FDIC was appointed receiver of Capital Bank and succeeded to Capital Bank's interest

3

in the construction loan and deed of trust. Pet. App. 5a. As required by statute, the FDIC published notice to creditors that they must submit any claims against the receivership for resolution by the FDIC's administrative claims process no later than October 8, 1993. See 12 U.S.C. 1821(d)(3)(B).

In 1994, GPA's loan was in default. The FDIC entered into a settlement agreement (FDIC Settlement Agreement) with GPA and the two loan guarantors (Gelman and Blaha) under which they agreed to pay the FDIC $300,000, and the FDIC agreed to cancel or to assign the loan and the deed of trust to any party designated by GPA. Pursuant to GPA's instructions, the FDIC assigned its interest in the loan and deed of trust, "without recourse, representation or warranty, expressed or implied" (Pet. App. 43a), to various parties, including petitioners, who received a 22.38% interest. *Id.* at 5a, 18a-19a, 41a-43a.

2. In 1996, a dispute arose concerning whether the Balboa lot was subject to a lien based on petitioners' interest in the deed of trust, and Valley View filed a state court action to quiet title to the property. In December 2001, Valley View amended its complaint, requesting a reformation of the FDIC Settlement Agreement to reflect the contracting parties' intent to release any lien on the Balboa Lot. The state court granted that request and ordered petitioners to execute a release of their interest in the lien on the Balboa Lot. The California Court of Appeal affirmed that judgment, and the California Supreme Court denied a petition for further review. Pet. App. 5a-6a, 18a-19a, 43a-49a.

3. The FDIC receivership was never made a party to the state court action, and petitioners did not file any claim with the receivership. On January 1, 2001, before

4

Valley View had amended its complaint in the state court litigation, the receivership was terminated, because all available assets to pay outstanding and approved claims had been distributed. On March 31, 2004, more than three years after the receivership had been terminated, petitioners sent a letter to the FDIC claiming damages for the FDIC's purported breach of the agreement assigning the loan and deed of trust. The FDIC took no action on that claim, which was untimely. Pet. App. 9a, 11a, 109a-110a; 12 U.S.C. 1821(d)(5)(C) (claims not filed within the time limit specified by the FDIC in its notice to creditors to present their claims shall be disallowed unless they are filed in time to permit payment).

4. In June 2004, petitioners filed the instant suit in the United States District Court for the Central District of California against Valley View and others, including the FDIC. Pet. App. 15a. Petitioners sought, among other things, a declaration that the state court judgment in favor of Valley View was void because the state court lacked jurisdiction over Valley View's claims. *Id.* at 6a, 8a, 15a; Pet. 10. Alternatively, petitioners sought damages from the FDIC based on a claim that the state court judgment rendered the FDIC in breach of the assignment agreement. *Ibid.* The district court held that the *Rooker-Feldman* doctrine barred petitioners' attempt to seek federal review of a state court judgment, and the district court dismissed the suit for lack of subject matter jurisdiction. Pet. App. 15a-31a.

5. The court of appeals affirmed the dismissal. Pet. App. 1a-14a. The court held that petitioners' attempt to void the state court judgment was barred by the *Rooker-Feldman* doctrine, which precludes federal district courts from exercising appellate review over final state

5

court judgments. *Id.* at 7a-10a. The court rejected petitioners' argument that the *Rooker-Feldman* doctrine did not apply on the theory that federal law deprived the state court of jurisdiction. *Id.* at 8a-9a. The court concluded that 12 U.S.C. 1821(j), which bars courts from awarding equitable relief against the FDIC, did not apply to the state court action because the FDIC was not a party to that action and the state court ordered relief only against petitioners. Pet. App. 9a.   The court also concluded that 12 U.S.C. 1821(d)(13)(D) did not apply to the state court action. Pet. App. 9a-10a. Section 1821(d)(13)(D) requires the exhaustion of administrative remedies as a jurisdictional prerequisite to any action for payment from the assets of a depository institution for which the FDIC has been appointed receiver or any claim relating to any act or omission of such institution or the FDIC as receiver. The court of appeals held that "the statute does not reach assignees of assets once owned by the FDIC" as receiver but no longer owned by the FDIC. *Id.* at 10a.

The court of appeals also affirmed the dismissal of petitioners' claim that the FDIC had breached the assignment agreement. Pet. App. 10a-11a. The court concluded that, although the claim was not necessarily barred by the *Rooker-Feldman* doctrine, dismissal was nonetheless appropriate because the claim is moot. *Id.* at 10a. The court explained that petitioners could look only to the assets of the Capital Bank receivership to satisfy the claim, and the receivership had distributed all of those assets and been terminated in January 2001, more than three years before petitioners raised the claim. *Id.* at 10a-11a. Because "[n]o assets remain in the receivership to satisfy a late-filed claim," the court concluded that the claim is moot. *Id.* at 11a (citing deci-

6

sions from other courts of appeals reaching similar results).

## ARGUMENT

The court of appeals correctly affirmed the dismissal of petitioners' suit. The court's decision does not conflict with any decision of this Court or any other court of appeals. This Court's review is therefore not warranted.

1. Petitioners mistakenly contend (Pet. 11-18, 26-27) that two jurisdictional provisions, 12 U.S.C. 1821(d)(13)(D) and (j), which were enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, § 212(a), 103 Stat. 222, deprived the state court of jurisdiction over Valley View's claim seeking the release of the lien on the Balboa lot. As the court of appeals correctly held, the jurisdictional bars in FIRREA do not apply to suits, such as Valley View's, that are brought, not against the FDIC, but against an assignee of an asset formerly held by the FDIC. Pet. App. 9a-10a. That issue does not warrant further review.

By statutory mandate, the FDIC functions in two separate capacities—a receivership capacity and a corporate capacity. 12 U.S.C. 1821(a)(1)(A) and (c)(1); *FDIC v. Bernstein*, 944 F.2d 101, 106 (2d Cir. 1991). Section 1821(j) limits the relief that a court may award against the FDIC in its receivership capacity. It provides, in pertinent part, that "no court may take any action * * * to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C. 1821(j). As the court of appeals explained (Pet. App. 9a), Section 1821(j) limits only a court's authority to award relief against the FDIC itself. A court does not take action "to restrain or affect the exercise" of the FDIC's powers unless it awards relief

7

against the FDIC. The state court did not do that here, because the FDIC was not a party to the litigation. *Ibid.* As the court of appeals observed, "[i]t was [petitioners], not the FDIC, who [were] ordered to reconvey the note and deed referencing the Balboa lot." *Ibid.*

Section 1821(d)(13)(D) also did not deprive the state court of jurisdiction over Valley View's claim. That provision states that, unless the FDIC's administrative claims process has been exhausted, no court shall have jurisdiction over "(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver." As the court of appeals correctly concluded, Section 1821(d)(13)(D) applies only in an action against the FDIC. Pet. App. 10a. It does not apply in an action, such as Valley View's state court suit, against a private party who owns an asset that was formerly held by an FDIC receivership, particularly when the receivership has since terminated. See *ibid.*

Section 1821(d)(13)(D) is designed to preserve the integrity of the administrative claims process established by FIRREA. It therefore "bars judicial review of any non-exhausted claim * * * which is 'susceptible of resolution through the claims procedure.'" *Henderson* v. *Bank of New England*, 986 F.2d 319, 321 (9th Cir.) (quoting *Rosa* v. *RTC*, 938 F.2d 383, 394 (3d Cir.), cert. denied, 502 U.S. 981 (1991)), cert. denied, 510 U.S. 995 (1993). But Section 1821(d)(13)(D) does not apply to claims that are not susceptible of resolution through the administrative procedure, such as claims against a pri-

8

vate party who holds an asset that was once held by an FDIC receivership, particularly when the receivership has terminated. In that circumstance, there is no administrative claims procedure to exhaust, because that procedure governs only claims against the FDIC receivership. See 12 U.S.C. 1821(d)(3)-(6) and (10).[1]

Petitioners argue (Pet. 15-16) that, if Congress intended to limit the application of Section 1821(d)(13)(D) to assets in the possession of the FDIC, it would have done so more explicitly, by modifying the statute's reference to "assets" with the phrase "in the possession of the receiver." But that limitation is inherent in the phrase "assets of any depository institution for which the Corporation has been appointed receiver." 12 U.S.C. 1821(d)(13)(D). Once the receivership has transferred an asset to a third party, the asset is no longer an "asset[] of [the] depository institution for which the Corporation has been appointed receiver." *Ibid.* For that reason, Congress expressly provided that Section

---

[1] Petitioners mistakenly suggest in passing (Pet. 18) that the administrative process applies only to claims based on the pre-closing actions of the failed institution and not to claims based on the conduct of the receiver itself. As almost every court of appeals that has addressed the issue has concluded, the administrative process applies to both categories of claims. See *McCarthy* v. *FDIC*, 348 F.3d 1075, 1080 (9th Cir. 2003); *FDIC* v. *Scott*, 125 F.3d 254, 259 (5th Cir. 1997); *Stamm* v. *Paul*, 121 F.3d 635, 642 (11th Cir. 1997); *Hudson United Bank* v. *Chase Manhattan Bank*, 43 F.3d 843, 851 (3d Cir. 1994); *Heno* v. *FDIC*, 20 F.3d 1204, 1208-1210 (1st Cir. 1994); *Office & Prof'l Employees Int'l Union, Local 2* v. *FDIC*, 962 F.2d 63, 66 n.7 (D.C. Cir. 1992); but see *Homeland Stores, Inc.* v. *RTC*, 17 F.3d 1269, 1272-1275 (10th Cir.), cert. denied, 513 U.S. 928 (1994). This case does not present an opportunity to resolve the disagreement among the courts of appeals on that issue, because the court below did not base its decision on a failure by petitioners to exhaust administrative remedies.

9

1821(d)(13)(D) also applies to assets that, although no longer owned by the receivership, are still owned by the FDIC in its corporate capacity. See *ibid.* (stating that the jurisdictional bar applies to suits regarding "assets which the Corporation may acquire from itself as such receiver"). If Section 1821(d)(13)(D) generally applied to assets that the receivership has assigned to others, there would have been no need to specify that the assets assigned to the FDIC in its corporate capacity are also covered. Accordingly, the court of appeals correctly held that Section 1821(d)(13)(D)'s jurisdictional bar does not apply to "assignees of assets once owned by the FDIC." Pet. App. 10a.[2]

Petitioners have not identified any decision by another court of appeals that has addressed the question whether FIRREA's jurisdictional limitations apply to suits against private party assignees of FDIC receivership assets, much less a decision that conflicts with the decision below. Because the issue has not arisen fre-

---

[2] Petitioners note (Pet. 18-19) that courts of appeals have allowed assignees of receivership assets to invoke some of the FDIC's special defenses, such as the *D'Oench, Duhme* doctrine. See Pet. 18-19 (citing, *e.g.*, *Newton* v. *Uniwest Fin. Corp.*, 967 F.2d 340, 347 (9th Cir. 1992), and *Porras* v. *Petro Plex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir. 1990)). Petitioners argue (Pet. 19) that FIRREA's jurisdictional limitations should likewise apply to assignees. But even the cases that petitioners cite indicate that assignees do not receive the benefit of all of the FIRREA provisions that apply to the FDIC. See, *e.g.*, *Cadle Co.* v. *1007 Joint Venture*, 82 F.3d 102, 105 (5th Cir. 1996) (six-year statute of limitations does not apply to suit brought by assignee of note formerly owned by FDIC receivership when claim had not accrued before the FDIC assignment). Petitioners cite no case that has applied the jurisdictional limits in Sections 1821(j) and 1821(d)(13)(D) to private parties, and it would not be appropriate to do so for the reasons explained above.

10

quently and there is no conflict among the courts of appeals, this Court's review of the issue is not warranted.

2.  Petitioners also contend (Pet. 20-24, 28-30) that the court of appeals erroneously dismissed their breach of contract claim against the FDIC receivership.  The court of appeals correctly affirmed the dismissal of that claim, and its determination does not warrant further review.

Any claim against an FDIC receivership generally must be submitted to the receiver for determination by the date specified in the FDIC notice to creditors to present their claims, 12 U.S.C. 1821(d)(3)(B), or the claim "shall be disallowed and such disallowance shall be final," 12 U.S.C. 1821(d)(5)(C)(i).  There is a limited exception for claims that could not have been filed before that date, but those claims still must be "filed in time to permit payment." 12 U.S.C. 1821(d)(5)(C)(ii)(II).  Because the FDIC's liability for claims against a receivership is limited to the assets of the receivership, 12 U.S.C. 1821(i)(2); *Maher* v. *FDIC*, 441 F.3d 522, 525-526 (7th Cir. 2006), cert. denied, 127 S. Ct. 1357 (2007); *First Ind. Fed. Sav. Bank* v. *FDIC*, 964 F.2d 503, 507 (5th Cir. 1992), claims filed after the receivership has terminated and its assets have been distributed are not "filed in time to permit payment," 12 U.S.C. 1821(d)(5)(C)(ii)(II).  Petitioners did not file their claim until more than three years after the Capital Bank receivership had distributed all the failed bank's assets and been terminated.  Accordingly, petitioners' claim was "disallowed" by operation of law, 12 U.S.C. 1821(d)(5)(C)(i), and it was correctly dismissed.

Moreover, as the court of appeals observed, petitioners "may look only to the assets of the Capital Bank receivership to satisfy" their claim against the receiver-

11

ship, and "[n]o assets remain in the receivership to satisfy [petitioners'] late-filed claim." Pet. App. 10a-11a (citing, *inter alia*, *Maher*, *supra*, and *First Ind. Sav. Bank*, *supra*). The court of appeals therefore concluded that petitioners' alleged injury cannot be "redressed by a favorable judicial decision," and their claim is moot. *Ibid.* As petitioners concede (Pet. 24), that conclusion accords with decisions of four other courts of appeals that have considered similar issues. See Pet. App. 10a-11a (citing cases). Because there is no conflict among the courts of appeals on the issue, this Court's review is not warranted.

Relying on 12 U.S.C. 1821(d)(20) and now-repealed 12 U.S.C. 1821(a)(7)(C)(i) (2000), petitioners contend (Pet. 20-23) that their claim should not have been dismissed because it is an administrative expense of the receiver payable out of the FDIC's Bank Insurance Fund. Petitioners did not raise that contention until they filed their reply brief in the court of appeals. The court of appeals did not address the issue, which was not timely raised under Ninth Circuit rules. See, *e.g.*, *Cedano-Viera* v. *Ashcroft*, 324 F.3d 1062, 1066 n.5 (2003); *Martinez-Serrano* v. *INS*, 94 F.3d 1256, 1259 (1996). Accordingly, this Court also should not consider the issue. See *National Collegiate Athletic Ass'n* v. *Smith*, 525 U.S. 459, 470 (1999) (Court does not ordinarily address issues not passed on below).

In any event, petitioners' reliance on those provisions is mistaken. Section 1821(d)(20) provides that a "final" judgment for a receiver's breach of a contract "shall be paid as an administrative expense of the receiver." 12 U.S.C. 1821(d)(20). That provision classifies those judgments as administrative expenses to clarify the order of priority in which they should be paid when receiv-

12

ership assets are distributed. See, *e.g.*, Cal. Fin. Code
§ 3119.5(a)(1) (West 1999).[3] But the classification of a
"final" judgment for breach of contract as an "administrative
expense" does not override the statutory command
that a claim (including one for breach of contract)
"shall be disallowed" if it is submitted after the receivership
has been terminated and its assets distributed. 18
U.S.C. 1821(d)(5)(C)(i).

Petitioners' reliance on former 12 U.S.C.
1821(a)(7)(C)(i) (2000) is also misplaced. To begin with,
petitioners inaccurately quote the provision as referencing
the FDIC's responsibilities as "receiver." Pet.
21 (purporting to quote 12 U.S.C. 1821(a)(7)(C)(i)
(2000)). The provision actually stated that "[a]ny personnel,
administrative, or other overhead expenses *of
the Corporation* shall be allocated—(i) fully to the Bank
Insurance Fund, if the expense was incurred directly as
a result of the Corporation's responsibilities solely
with respect to Bank Insurance Fund members." 12
U.S.C. 1821(a)(7)(C)(i) (2000) (emphasis added). Section
1821(a)(7)(C)(i) was an accounting provision that
directed how the Corporation's overhead expenses
should be allocated, for bookkeeping purposes, between
the FDIC's two insurance funds, the Bank Insurance
Fund and the Savings Association Insurance Fund. The
provision's limited role is confirmed by the fact that
Congress repealed the provision in 2006, when the
two funds were merged. See Federal Deposit Insurance

---

[3] The California statutory priority schedule governed the distribution
of assets in the Capital Bank receivership because Capital Bank
was chartered by the State of California. FIRREA, Pub. L. No. 101-73,
§ 212(a), 103 Stat. 242 (12 U.S.C. 1821(g)(4)); *Goldblatt* v. *FDIC*, 105
F.3d 1325, 1328, n.1 (9th Cir. 1997). Under that schedule, liquidation
expenses, *i.e.* administrative expenses, of the receiver were paid first.

13

Reform Conforming Amendments of 2005, Pub. L. No. 109-173, § 8(a)(11)(C) and (b), 119 Stat. 3612, 3616. The provision did not alter the statutory command that "[t]he maximum liability of the Corporation, acting as receiver or in any other capacity, to any person having a claim against the receiver or [a failed financial institution] shall equal the amount such claimant would have received if the Corporation had liquidated the assets and liabilities of such institution." 12 U.S.C. 1821(i)(2). As discussed above, petitioners received nothing (and were entitled to nothing) when the FDIC terminated the Capital Bank receivership and liquidated the assets and liabilities of the bank, because petitioners had not filed a timely claim. Nothing in now-repealed Section 1821(a)(7)(C)(i) changes that fact.

3. Petitioners also incorrectly argue (Pet. 24-26) that the state court decision reforming the FDIC Settlement Agreement constitutes an unconstitutional taking of the Balboa lien by the federal government. That claim was not included in petitioners' complaint, and petitioners raised it for the first time in their petition for rehearing before the court of appeals. Accordingly, the court of appeals did not address the claim. See *United States* v. *Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (court will not consider issues raised for the first time on appeal); *United States* v. *Lewis*, 787 F.2d 1318, 1323 n.6 (9th Cir. 1986) (court does not consider issues raised for the first time in a rehearing petition).

In any event, petitioners' taking claim lacks merit. The state court decision could not have effected a taking by the federal government because neither the FDIC nor any other component of the federal government participated in the state court litigation or obtained any property interest as a result of the state court decision.

14

Nor did the FDIC appropriate any of petitioners' property or enact any regulations depriving them of their property at any other time. See generally *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321-327 (2002) (a taking can occur by the appropriation of private property through direct governmental action or through governmental regulation).

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

PAUL D. CLEMENT
*Solicitor General*

SARA A. KELSEY
  *General Counsel*
RICHARD J. OSTERMAN, JR.
  *Acting Deputy General*
    *Counsel*
COLLEEN J. BOLES
  *Acting Assistant General*
    *Counsel*
KATHLEEN. GUNNING
  *Counsel*
  *Federal Deposit Insurance*
    *Corporation*

OCTOBER 2007

B72