IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> WASHINGTON MUTUAL, INC., et al., <br><br> Debtors. | : Chapter 11 <br> : <br> : Case No. 08-12229 (MFW) <br> : <br> : |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver, <br><br> Appellant, <br><br> v. <br><br> WASHINGTON MUTUAL, INC., et al., <br><br> Appellees. | : Consolidated Case <br> : No. 1:09-cv-0615-GMS <br> : <br> : (Filed with respect to constituent cases: <br> : No. 1:09-cv-0616-GMS <br> : No. 1:09-cv-0617-GMS) <br> : |

**REPLY BRIEF ON APPEAL OF APPELLANT
FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR WASHINGTON MUTUAL BANK**

M. Blake Cleary (Bar No. 3614)
Jaime N. Luton (Bar No. 4936)
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mbcleary@ycst.com
jluton@ycst.com

Attorneys for Appellant
 Federal Deposit Insurance Corporation, as
 Receiver for Washington Mutual Bank

Dated: October 29, 2009

(Additional counsel listed on signature page)

**Table of Contents**

Page

Table of Authorities ...................................................................................................................... ii

I. THIS COURT HAS APPELLATE JURISDICTION ........................................................ 1

    A. The Orders Are Appealable Collateral Orders ...................................................... 1

    B. In the Alternative, the Orders Clearly Satisfy the
        Standard for Permissive Appeal ............................................................................ 2

II. THE JURISDICTIONAL BAR DEPRIVES THE BANKRUPTCY COURT OF
SUBJECT MATTER JURISDICTION ............................................................................. 3

III. THE BANKRUPTCY COURT'S APPLICATION OF THE FIRST-FILED
RULE WAS AN ABUSE OF DISCRETION ................................................................... 9

CONCLUSION .............................................................................................................................. 10

## Table of Authorities

Page

### Cases

*Amsave Credit Corp. v. R.T.C. (In re Am. Mortgage & Inv. Servs.)*,
   141 B.R. 578 (Bankr. D.N.J. 1992) ........................................................................5

*Auction Co. of Amer. v. F.D.I.C.*,
   141 F.3d 1198 (D.C. Cir. 1998) ..........................................................................8, 9

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
   511 U.S. 863 (1994) ..................................................................................................2

*Freeman v. F.D.I.C.*,
   56 F.3d 1394 (D.C. Cir. 1995) ................................................................................8

*Galli v. New Jersey Meadowlands Comm'n*,
   490 F.3d 265 (3d Cir. 2007) ....................................................................................6

*Henrichs v. Valley Development*,
   474 F.3d 609 (9th Cir. 2007) ..............................................................................7, 8

*Hudson v. Chase Manhattan Bank*,
   43 F.3d 843 (3d Cir. 1994) .............................................................................. *passim*

*Landmark Land Co. v. O.T.S.*,
   948 F.2d 910 (5th Cir. 1991) ...................................................................................9

*Lauro Lines S.R.L. v. Chasser*,
   490 U.S. 495 (1989) ...............................................................................................1, 2

*Merican, Inc. v. Caterpillar Tractor Co.*,
   713 F.2d 958 (3d Cir. 1983) ....................................................................................9

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ..................................................................................................1

*National Union Fire Ins. Co. v. City Sav., F.S.B.*,
   28 F.3d 376 (3d Cir. 1994) ..........................................................................2, 3, 5, 8

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
   506 U.S. 139 (1992) ..................................................................................................1

*Rosa v. R.T.C.*,
   938 F.2d 383 (3d Cir. 1991) ............................................................................ *passim*

|  | Page |
|---|---|
| *Village of Oakwood v. State Bank & Tr. Co.,* 539 F.3d 373 (6th Cir. 2008) | 6 |
| *Washington Mutual, Inc. v. F.D.I.C.,* No. 1:09-cv-0533 (RMC) (D.D.C.) | 10 |

### Statutes

| | |
|---|---|
| 12 U.S.C. § 1821(d)(5)(A) | 5 |
| 12 U.S.C. § 1821(d)(6)(A) | 5, 8 |
| 12 U.S.C. § 1821(d)(13)(D) | *passim* |
| 28 U.S.C. § 158(a) | 1, 2 |

The Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this reply brief in further support of its appeals from two Orders of the United States Bankruptcy Court for the District of Delaware (Walrath, J.), entered on July 6, 2009 (the "Orders").

I. **THIS COURT HAS APPELLATE JURISDICTION**

A. **The Orders Are Appealable Collateral Orders**

The Orders are immediately appealable as of right pursuant to 28 U.S.C. § 158(a)(1) and the collateral order doctrine. The bankruptcy court's legal error in refusing to apply the plain language of 12 U.S.C. § 1821(d)(13)(D) will be effectively unreviewable on appeal after final judgment. The bankruptcy court's Orders deprive the FDIC-Receiver of an important statutory protection that will be lost by subjecting it to collateral litigation in the bankruptcy court of issues that are subject to FIRREA's exclusive receivership claims process. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1992); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).[1]

In challenging the applicability of the collateral order doctrine to the Orders here, the Debtors mistakenly analogize FIRREA's statutory jurisdictional bar to a contractual forum selection clause. The Supreme Court has held that such a contractual provision, which merely specifies where a dispute will be litigated, does not create the type of "immunity from suit" that would justify application of the collateral order doctrine if denied by a court. Debtors' Br. at 4 (citing *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 501 (1989)). The Supreme Court itself later recognized that there are "sound reasons" for treating privately negotiated rights, such as the contractual forum selection clause at issue in *Lauro Lines*, differently from "rights originating in

---

[1] The Debtors do not challenge, and therefore concede, that the other elements of the collateral order doctrine are satisfied. *See* Debtors' Br. at 3-5.

the Constitution or statutes." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994). The jurisdictional bar, of course, is one such statutory provision.

Further, unlike the contractual provision in *Lauro Lines*, the jurisdictional bar provided under 12 U.S.C. § 1821(d)(13)(D) is not a "forum selection" provision. The Third Circuit has recognized that the provision imposes a "statutory exhaustion requirement" that is "explicitly jurisdictional." *Rosa v. R.T.C.*, 938 F.2d 938 F.2d 383, 395 (3d Cir. 1991); *see also Hudson v. Chase Manhattan Bank*, 43 F.3d 843, 849 (3d Cir. 1994) ("we have characterized the jurisdictional restriction contained in § 1821(d)(13)(D) as a statutory exhaustion requirement").

Protecting the FDIC-Receiver from collateral litigation of disputes that only can be pursued through FIRREA's exclusive claims process was exactly the reason that Congress enacted the jurisdictional bar. *See Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388 (3d Cir. 1994). The Orders are immediately appealable to permit the FDIC-Receiver to obtain judicial vindication of this important statutory right.[2]

### B. In the Alternative, the Orders Clearly Satisfy the Standard for Permissive Appeal

Even if the Court were to conclude that the collateral order doctrine does not apply, this Court should grant the FDIC-Receiver leave to appeal pursuant to 28 U.S.C. § 158(a)(3) for the reasons previously set forth in support of the FDIC-Receiver's motion, in the alternative, for leave to appeal. Additionally, the FDIC-Receiver continues to believe that a direct appeal to the Third Circuit is the most appropriate method for resolving the issues presented by the Orders, for the reasons stated in its request for certification.

---

[2] The bankruptcy court's recent conclusion, in a different context, that JPMC's appeals to this Court are somehow "frivolous," *see* Debtors' Br. at 3, notwithstanding the incontrovertible existence of a Sixth Circuit decision and other substantial authority that directly contradicts the lower court's reasoning, only makes more apparent the need for immediate appellate review of the Orders.

## II. THE JURISDICTIONAL BAR DEPRIVES THE BANKRUPTCY COURT OF SUBJECT MATTER JURISDICTION

In their efforts to justify the bankruptcy court's erroneous Orders, the Debtors continue to ignore the plain language of 12 U.S.C. § 1821(d)(13)(D) and to mischaracterize the decisions of the Third Circuit they rely upon. The Third Circuit's decisions in *Rosa*, *National Union* and *Hudson* show that application of the jurisdictional bar requires a court to evaluate the "claim" or "action" presented in a given case and determine whether such a "claim" or "action" falls within the literal terms of section 1821(d)(13)(D). The Debtors' arguments bear no relation to this statutory analysis. Instead, the Debtors posit an unsupportable "rule" that application of the jurisdictional bar somehow ends with the consummation of a purchase and assumption agreement when a failed bank's assets are in the hands of an assuming bank. This argument, of necessity, requires the actual language of the statute to be disregarded or modified by implication, contrary to basic principles of statutory construction and the express instructions of the Third Circuit. *See Nat'l Union*, 28 F.3d at 388-89.

As the Third Circuit itself has explained, the plain language of section 1821(d)(13)(D) "bars jurisdiction over four categories of actions: (1) claims for *payment from assets* of any depository institution for which the RTC has been appointed receiver; (2) actions for payment from assets of such depository institution; (3) *actions seeking a determination of rights with respect to assets* of such depository institution; and (4) *a claim relating to any act or omission of such institution or the [FDIC] as receiver*." *Nat'l Union*, 28 F.3d at 393 (emphasis added); *see also Rosa*, 938 F.2d at 391. The Debtors' claims against JPMC fall squarely within the third and fourth of the Third Circuit's categories: they plainly seek " a determination of rights with respect to assets of" WMB and also obviously "relat[e] to . . . act[s] or omission[s] of the" FDIC as receiver for WMB. Their appellate brief essentially admits this on several occasions.

In *Rosa*, three different failed banks were subject to an injunction directing them to make contributions to an underfunded pension plan. Although there had been purchase and assumption transactions between the successive banks, that fact was not at issue in the Third Circuit's analysis. Instead, the court of appeals examined the claims that were asserted against each of the three banks and considered whether each was a "claim" or "action" that fell within the plain language of the bar. The first two banks were in receivership. As a result, "no court" had jurisdiction to order those banks to pay underfunded pension liabilities. Such an order would require "payment from . . . the assets of [a] depository institution for which the Corporation ha[d] been appointed receiver," in violation of section 1821(d)(13)(D)(i). *Rosa*, 938 F.2d at 393-94. The third bank was not in receivership, however, and an order requiring that bank to contribute funds to cure a pension plan's underfunded liabilities would not require "payment from . . . the assets" of a bank in receivership. The jurisdictional bar therefore did not apply. *Rosa*, 938 2d at 394.

No one has argued that the Debtors' claims against JPMC in this case are barred because they require "payment from the assets" of a failed bank. In contrast with the action for an injunction in *Rosa*, however, the Debtors' claims here *do* seek "a determination of rights with respect to" the assets of a depository institution for which the FDIC has been appointed receiver, that is, Washington Mutual Bank. *See Rosa*, 938 F.2d at 394 (concluding that ERISA claims at issue in *Rosa* were not ones seeking a "determination of rights" with respect to failed bank assets). The Debtors have admitted as much in their brief. *See* Debtors' Br. at 7 (Debtors have asserted claims against JPMC "for assets that the Debtors contend are rightfully the Debtors"); *id.* at 13 n.14 (assets at issue in claims against JPMC "were either the subject of the P&A Agreement and thus sold to JPMC, or they were not"); *id.* at 14 n.15 ("The Debtors assert

avoidance actions under the Bankruptcy Code for assets that were transferred to JPMC . . .").[3]
The Debtors' assertion that the assets of the third bank in *Rosa* "were undeniably the former assets of the [two] failed depository institutions," Debtors' Br. at 21, is another example of the central fallacy of their argument. Application of the jurisdictional bar turns on the nature of the "claim" or "action" at issue, not on who holds the assets, and in *Rosa* the jurisdictional bar did not apply because there was no "claim" subject to the literal terms of the statute.

In *Rosa*, unlike this case, no one claimed ownership of an asset that had been sold by the receiver to a successor bank under a purchase and assumption agreement. *Rosa*, *National Union* and the other Third Circuit decisions cited in the FDIC-Receiver's opening brief make it clear that there is only one permissible way to assert such claims against anyone: file a timely receivership claim with the FDIC-Receiver and, if that claim is disallowed, file an action in one of two specified federal district courts seeking a judicial determination with respect to it. 12 U.S.C. § 1821(d)(6)(A); *see* FDIC-Receiver Br. at 8. Other than as thus provided, "no court shall have jurisdiction" with respect to those claims. 12 U.S.C. § 1821(d)(13)(D)(i); *see Nat'l Union*, 28 F.3d at 383 ("we have characterized the jurisdictional restriction contained in § 1821(d)(13)(D) as a statutory exhaustion requirement: in order to obtain jurisdiction to bring a claim in federal court, one must exhaust administrative remedies by submitting the claim to the

---

[3] The balances in the disputed deposit accounts at issue in the Debtors' turnover proceeding are inextricably intertwined with these disputes about ownership of assets. The Debtors themselves included claims for the deposit balances in their receivership proof of claim and in their district court complaint against the FDIC-Receiver. By the Debtors' own admission, the disputed deposit balances include at least hundreds of millions of dollars in tax refunds, the majority of which the FDIC-Receiver and JPMC contend are WMB's property. The Debtors' assertion that a portion of the deposit balances was never part of the WMB receivership is a question of fact that is for the D.C. district court to address, not the bankruptcy court. *See Amsave Credit Corp. v. R.T.C. (In re Am. Mortgage & Inv. Servs.)*, 141 B.R. 578, 583 (Bankr. D.N.J. 1992) (jurisdictional bar prevents bankruptcy court from exercising subject matter jurisdiction to determine if the statute applies).

receiver in accordance with the administrative scheme for adjudicating claims detailed in § 1821(d)"); *Rosa*, 938 F.2d at 391-92 (same).[4]

The Debtors' reliance on *Rosa* to evade application of the "act or omission" subprovision of the jurisdictional bar is similarly misguided. As their own statements again illustrate, the Debtors' claims against JPMC here directly "relat[e] to . . . act[s] or omission[s]" of the FDIC-Receiver, namely, the sale by the FDIC-Receiver to JPMC of assets that the Debtors contend were their property rather than WMB's. *See* Debtors' Br. at 7 (Debtors claims against JPMC include claims for "assets that the Debtors contend are rightfully the Debtors and therefore were not transferred to JPMC under the P&A Agreement"); *id.* at 14 n.15 (claims against JPMC "assert ownership interests in assets that the Debtors claim were never the subject of the P&A Agreement (because they were never WMB assets)"). No similar claim was asserted against the third bank in *Rosa*, which was sued under ERISA for unfunded pension liabilities.[5]

---

[4] The same result is dictated by *Hudson*. *See Hudson*, 43 F.3d at 849 ("the purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs . . . to file their claims under FIRREA's administrative claims procedures before filing them in federal court"). The Debtors are simply wrong to assert that the footnote dicta they rely upon from *Hudson* is "binding" on this Court. While the Third Circuit and courts within it should accord dicta by the Third Circuit "respect consistent with their persuasive value," *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007), the dicta in *Hudson* is not "persuasive" given that it was unnecessary to the decision and misstated the *Rosa* holding it purported to summarize. *See Rosa*, 938 F.2d at 393 ("Thus the bar embodied in clause (i) reaches (1) claims for payment from the assets of City Federal or City Savings Bank, (2) actions for payment from those assets and (3) actions *for a determination of rights with respect to those assets*.") (emphasis added).

[5] The Debtors search in vain for assistance in the *Rosa* court's construction of the "relating to" language of section 1821(d)(13)(D)(ii) to refer to "claims against the very institution whose acts are challenged, which must be an institution for which the RTC has been appointed receiver." *Rosa*, 983 F.2d at 394. In *Rosa*, the third bank was not in receivership and the claims against it to pay unfunded pension liabilities did not relate to acts or omissions of the RTC as receiver. Here, in contrast, WMB is in receivership and the Debtors' claims against JPMC plainly relate to alleged acts or omissions of the FDIC as WMB's receiver, *i.e.*, the alleged sale of the Debtors' assets to JPMC.

The claims at issue here, then, are indistinguishable from those that the Sixth Circuit found to be barred in *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373 (6th Cir. 2008), a decision that the Debtors characterize as having involved an alleged "breach of duty by the receiver . . ." Debtors' Br. at 15. If assets were sold by the FDIC-Receiver to JPMC that actually belonged to the Debtors, then the exclusive remedy available to the Debtors is provided by FIRREA's receivership claims process, not by bringing bankruptcy court litigation against JPMC challenging the scope of the P&A Agreement. *See Hudson*, 43 F.3d at 849 (claims relating to acts or omissions of FDIC as receiver are subject to FIRREA claims process and jurisdictional bar).

The Debtors' remaining arguments are similarly unavailing. *First*, the FDIC's brief in opposition to certiorari in *Henrichs v. Valley Development*, 474 F.3d 609 (9th Cir. 2007), does not support the Debtors' reading of section 1821(d)(13)(D). The Debtors starkly admit that their claims against JPMC assert rights to assets that JPMC purchased from the FDIC-Receiver under the P&A Agreement and assert that the FDIC-Receiver sold assets pursuant to that agreement that belonged to the Debtors rather than WMB. See Debtors Br. at 7, 13 n.14, 14 n.15. The purely private dispute in *Henrichs*, in contrast, did not take issue with, or even implicate, a failed bank receivership. The only connection between the receivership there and the private dispute at issue was that the assets held by the private party who attempted to use the jurisdictional bar in litigation against another private party had been acquired from the FDIC in the past. The FDIC's position in *Henrichs* that the private party's ability to invoke the jurisdictional bar did not travel with the assets is entirely consistent with applying section 1821(d)(13)(D) based on an analysis of the "claim" or "action" in question, as the plain language requires, rather than based on who holds the assets.

*Second*, application of section 1821(d)(13)(D) to bar the Debtors' claims against JPMC here will not render superfluous any part of the statutory language. Section 1821(d)(13)(D)(i) includes the phrase "including assets which the Corporation may acquire from itself as such receiver." This provision extends the protection of the jurisdictional bar to the FDIC in its corporate capacity when it acquires assets from a receivership, but by making that clear Congress did not exclude the application of the jurisdictional bar to claims or actions putatively asserted against an assuming bank when such claims or actions are otherwise subject to the statutory bar. It is accurate, as the FDIC explained in its *Henrichs* certiorari brief, that section 1821(d)(13)(D)(i) does not "generally" apply to assets that the receivership has assigned to others. Debtors' Br. at 20 (quoting FDIC brief). However, when, as here, an action against an assuming bank seeks a "determination of rights with respect to assets" of a failed bank receivership, section 1821(d)(13)(D)(i) applies by its literal terms. Application of those literal provisions does not require the creation of any federal common law. *See* Debtors' Br. at 25.

*Third*, there is no merit to the Debtors' contention that application of section 1821(d)(13)(D) literally to bar their claims against JPMC would somehow affect the Debtors' Due Process rights. *See* Debtors' Br. at 22-24. The Debtors' receivership proof of claim shows their understanding that the claims they are asserting are subject to the FDIC-Receiver's exclusive claims process, even if the Debtors now prefer to style them (impermissibly) as claims against JPMC. [*See* D.I. 25, 29] Under FIRREA, Debtors were provided an express avenue to seek a judicial determination of any of their claims that were disallowed in that claims process, *see* 12 U.S.C. § 1821(d)(6)(A), and Debtors availed themselves of that procedure when they sued the FDIC-Receiver. The Constitution requires no more. *See Nat'l Union*, 28 F.3d at 389-90; *see also Freeman v. F.D.I.C.*, 56 F.3d 1394, 1403 (D.C. Cir. 1995); *Rosa*, 938 F.2d at 397 ("RTC

argues that the claims procedure does not violate Article III because it gives a claimant the opportunity to sue in a *de novo* court action a maximum of six months after it files its claim. We agree.").[6]

*Finally*, whether or not the bankruptcy court has "exclusive jurisdiction to deal with the property of the bankruptcy estate," as the Debtors assert, *see* Debtors' Br. at 26, there is no question that the bankruptcy court shares jurisdiction with other courts to determine what is property of that estate. The Debtors do not point to a single authority that contradicts the decisions on this issue that were cited in the appellants' opening briefs. There is, therefore, no possible conflict between FIRREA's express jurisdictional bar and the bankruptcy jurisdiction provisions in title 28 of the United States Code. Even if there were such a conflict, however, the more specific provision in section 1821(d)(13)(D) would govern over the more general bankruptcy jurisdiction provisions. *See Landmark Land Co. v. O.T.S.*, 948 F.2d 910, 912 (5th Cir. 1991).

### III. THE BANKRUPTCY COURT'S APPLICATION OF THE FIRST-FILED RULE WAS AN ABUSE OF DISCRETION

The bankruptcy court's denial of the FDIC-Receiver's motion to stay the two adversary proceedings under the well recognized first-filed rule was an abuse of discretion that itself justifies reversal.[7] The criteria for application of the rule have been met. The Debtors' D.C. action against the FDIC-Receiver unquestionably was filed first and concerns the same facts as

---

[6] The decision in *Auction Co. of Amer. v. F.D.I.C.*, 141 F.3d 1198 (D.C. Cir. 1998), provides no support to the Debtors. The contract with the FDIC that was at issue there "related to the assets of an unspecified number of unnamed depositories," not any specific failed bank, and claims for breach of that contract therefore fell outside the scope of section 1821(d)(13)(D). *Id.* at 1201-02. The facts here are obviously different.

[7] Because this Court has appellate jurisdiction, it may consider all grounds which might require reversal of the Orders. *See Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 962 n.7 (3d Cir. 1983).

are at issue in the two adversary proceedings. The proceedings are at essentially identical stages, with little discovery having occurred in the adversary proceedings to date, all of which by stipulation may be used in the D.C. litigation. Ironically, it is the Debtors themselves who have resisted efforts by the FDIC-Receiver and JPMC to establish a discovery schedule in that action, which the Debtors themselves commenced, and the Debtors therefore cannot resist application of the first-filed rule on the ground that proceedings in D.C. have in any way lagged the proceedings pending before the bankruptcy court.

## CONCLUSION

The Orders should be reversed and the two adversary proceedings should be dismissed for lack of subject matter jurisdiction or stayed until entry of judgment in *Washington Mutual, Inc. v. F.D.I.C.*, No. 1:09-cv-0533 (RMC) (D.D.C.).

Dated: Wilmington, Delaware
       October 29, 2009

Of Counsel:

COLLEEN J. BOLES
Assistant General Counsel
LAWRENCE H. RICHMOND
Senior Counsel
BARBARA SARSHIK
Counsel
FEDERAL DEPOSIT INSURANCE
CORPORATION
Legal Division
3501 Fairfax Drive, VS-D-7014
Arlington, VA 22226
(703) 562-2309

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

M. Blake Cleary (Bar No. 3614)
Jaime N. Luton (Bar No. 4936)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mbcleary@ycst.com
jluton@ycst.com

Attorneys for Appellant
Federal Deposit Insurance Corporation, as
Receiver for Washington Mutual Bank